# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZUMA PRESS, INC., ACTION SPORTS PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE MEDIA CO. LITD., MANNY FLORES, ANDREW DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ, CHARLES BAUS, DUNCAN WILLIAMS, ROBERT BACKMAN, JOHN MIDDLEBROOK, and ANTHONY BARHAM,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GETTY IMAGES (US), INC.<br><br>                    Defendant. | Case No.: 1:16-cv-06110 (AKH) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF PLEADED FACTS .........................................................................2

ARGUMENT .................................................................................................................7

I.    THE COPYRIGHT INFRINGEMENT CLAIMS AND THE CLAIMS FOR
      FALSIFICATION, REMOVAL, AND/OR ALTERATION OF COPYRIGHT
      MANAGEMENT INFORMATION MUST BE DISMISSED .........................................8

      A.    Plaintiffs Fail To Properly Plead Direct Infringement.............................................8

            1.    *Plaintiffs Have Not Specified Coherently Which Works Are The Subject Of Their
                  Infringement Claims*……...………………………………………………………9

            2.    *Plaintiffs Do Not Own The Vast Majority Of The Copyrights They Attempt To
                  Place At Issue*……………………………………………………………………12

            3.    *Claims Based On Unregistered Copyrights Must Be Dismissed*…………… …14

      B.    Plaintiffs Fail To Properly Plead Contributory Infringement ................................17

      C.    Plaintiffs' Section 1202 Claims Also Must Be Dismissed ....................................18

II.   THE LANHAM ACT CLAIMS MUST BE DISMISSED................................................19

III.  THE N.Y.G.B.L. § 349 CLAIMS MUST BE DISMISSED............................................21

IV.   THE STATE UNFAIR COMPETITION CLAIMS MUST BE DISMISSED.................23

CONCLUSION...................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
    No. 12 CIV 1343 ALC, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ..................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................2, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................8

*Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*,
    No. 3:13-cv-00297 (JAM), 2016 WL 4275576 (D. Conn. Aug. 12, 2016) ...........................13

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
    87 F. Supp. 3d 499 (S.D.N.Y. 2015)......................................................................................15

*Chevrestt v. Am. Media, Inc.*,
    No 16 Civ. 55557 (LLS), 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) ..............................16

*Christians of Cal., Inc. v. Clive Christian N.Y., LLP*,
    No. 13 Civ. 275, 2014 WL 2465273 (S.D.N.Y. May 30, 2014), *reconsideration
    granted on other grounds*, 2014 WL 3605526 (S.D.N.Y. July 18, 2014) ..............................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)............................................................................................................20, 21

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007)..................................................................................................12, 13

*DO Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009).....................................................................................16

*E. R. Squibb & Sons, Inc. v. Cooper Labs., Inc.*,
    536 F. Supp. 523 (S.D.N.Y. 1982)..........................................................................................24

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)......................................................................................................19

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010).....................................................................................21

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)..................................................................................................17

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003)..................................................................22

*Gurvey v. Cowan, Liebowitz, & Latman, PC*,
   No. 06 Civ. 1202(BSJ), 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009),
   *aff'd in part, rev'd in part on other grounds*, 462 F. App'x 26 (2d Cir. 2012) ......21

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
   476 F. Supp. 2d 291 (S.D.N.Y. 2007)..................................................................25

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
   58 F.3d 27 (2d Cir. 1995) ...................................................................................23

*John Wiley & Sons, Inc. v. DRK Photo*,
   998 F. Supp. 2d 262 (S.D.N.Y. 2014), *appeal filed*, Case No. 15-1134
   (2d Cir. Apr. 9, 2015)..........................................................................................13

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994)
   (unpublished table decision) .......................................................................9, 12, 14

*Kregos v. Associated Press*,
   795 F. Supp. 1325 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d Cir. 1993)...................24

*LBB Corp. v. Lucas Distribution, Inc.*,
   No. 08 CIV. 4320 (SAS), 2008 WL 2743751 (S.D.N.Y. July 14, 2008) .........21, 22

*Lipton v. Nature Company*,
   71 F.3d 464 (2d Cir. 1995)............................................................................20, 21

*Manhattan Review LLC v. Yun*, No. 16 CIV. 0102(LAK)(JCF),
   2016 WL 6330474 (S.D.N.Y. Aug. 15, 2016),
   *adopted by Manhattan Review LLC v. Tracy Yun*, No. 16-CV-0102 (LAK), 2016 WL
   6330409 (S.D.N.Y. Oct. 26, 2016) ......................................................................15

*Marvullo v. Gruner & Jahr*,
   105 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................17, 18, 20, 21

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
   No. 09 CV 2669 LAP, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ...................16

*Palmer Kane LLC v. Scholastic Corp.*,
   No 12 Civ. 3890 (TPG), 2014 WL 1303135 (S.D.N.Y Mar. 31, 2014) ..........3, 6, 9, 12

*Plunket v. Estate of Doyle*,
   No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ..........9, 11, 12

*Poindexter v. EMI Record Grp. Inc.*,
   No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..........................3

*Psihoyos v. John Wiley & Sons, Inc.*,
   748 F.3d 120 (2d Cir. 2014)..............................................................................................16

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010)...........................................................................................................14

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
   No. 2:05-cv-01217-JS-MLO, 2006 WL 8423836 (E.D.N.Y. Mar. 30, 2006) ..................22, 23

*Senisi v. John Wiley & Sons, Inc.*,
   No. 13CV3314-LTS-AJP, 2016 WL 1045560 (S.D.N.Y. Mar. 15, 2016) .......................14, 15

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
   No. 96 Civ. 5150, 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) .............................................22

*Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*,
   No. 06 Civ. 14212(RMB), 2007 WL 2193964 (S.D.N.Y. July 27, 2007).........................21, 24

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd*, 569 F. App'x 51 (2d Cir. 2014).................17, 18

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ..........................................................................................................21

15 U.S.C. § 1125(a)(1)(B) .................................................................................................. *passim*

17 U.S.C. § 201(d)(2) .................................................................................................................13

17 U.S.C. § 411.................................................................................................10, 14, 15, 16

17 U.S.C. § 501(b) ...........................................................................................................13, 14, 15

17 U.S.C. § 1202 ........................................................................................................... *passim*

N.Y.G.B.L. § 349................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. Rule 8 ...................................................................................................... *passim*

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................................1, 14

Defendant Getty Images (US), Inc. ("Getty Images") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs' First Amended Complaint (Dkt. 21) (the "Amended Complaint" or "FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Rather than defend its first complaint, plaintiff Zuma Press, Inc. ("Zuma") chose to file an amended complaint in an effort to address the numerous flaws Getty Images identified in the original pleading, including the failure to allege copyright registration of any of the photographs and the failure adequately to allege that Zuma had standing to sue. Now joined by eleven other plaintiffs (nine photographers and two other photo licensing agencies) (together with Zuma, the "Plaintiffs"), Zuma has significantly expanded the scope of the allegations and padded its new pleading with Lanham Act and state law claims directed to precisely the same conduct for which Plaintiffs also seek relief under the Copyright Act. Plaintiffs, however, still fail to state a claim upon which relief can be granted.

The Amended Complaint is a hopelessly confusing pleading that leaves in doubt whether the claims are based on a few dozen works, tens of thousands of works, or as many as 200,000 works. The resulting uncertainty represents a failure to comply with Rule 8 of the Federal Rules of Civil Procedure and requires dismissal of all claims. The claims are also marred by a number of additional fatal defects. With respect to copyright infringement, Plaintiffs fail to allege ownership or registration of a large number of the photographs in question—both of which are required to state a claim upon which relief may be granted. Moreover, because Zuma's license agreements—examples of which with photographers alleged to own works at issue are incorporated by reference in and appended to the Amended Complaint—authorize it to sue only

1

in the photographer's name, not in its own name as it has done here, Zuma still fails to establish standing to sue.

The contributory infringement claim, which references an opaque list of purported transactions between Getty Images and unnamed third parties, is also deficient. Plaintiffs fail to link the third-party transactions to any of the photographs apparently at issue or even to allege that any third-party uses were infringing. Thus, in addition to the flaws discussed above, direct infringement—a prerequisite to a contributory infringement claim—is not adequately pled. Even if it were, Plaintiffs' conclusory recitation of the elements of contributory infringement does not pass muster under Rule 8.

The newly added claims brought by the photo agency plaintiffs for false advertising under Section 43(a)(1)(B) of the Lanham Act, violation of Section 349 of New York's General Business Law (deceptive trade practices), and state common law unfair competition also fail. They are based entirely on the same conduct as the claims asserted under Section 1202 of the Copyright Act for falsification, removal, and/or alteration of copyright management information ("CMI"), and the relevant jurisprudence is clear that alleged misattribution of a copyrighted work is not actionable under the Lanham Act, Section 349 of the General Business Law, or common law unfair competition.

For all these reasons, the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF PLEADED FACTS

The facts alleged in the Amended Complaint are accepted as true solely for purposes of this motion and subject to two exceptions. First, that rule does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, to the extent Plaintiffs have attempted to present legal conclusions as factual allegations, they are not accepted as true.

Second, when documents relied upon in or attached as exhibits to the Amended Complaint contradict allegations made in the Amended Complaint, the court "cannot accept as true the contradictory allegations in deciding a motion to dismiss—the court must rely on the documents." *Palmer Kane LLC v. Scholastic Corp.*, No 12 Civ. 3890 (TPG), 2014 WL 1303135, *3 (S.D.N.Y Mar. 31, 2014) (citations omitted); *see also Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, controls, and the court need not accept the allegations in the complaint as true.").

**Plaintiffs and the Photographs They Claim To Own or Have the Right To License**

Zuma:  Zuma claims to be one of the world's largest independent press agencies and wire services and the owner and operator of a website at www.zumapress.com.  FAC ¶ 7.  Zuma asserts that it has a collection of sports photography (the "Sports Photographs") consisting of around 200,000 images.  *Id.* ¶ 21.  Zuma concedes that it does not own the copyrights in any of the 200,000 Sports Photographs, but it alleges that it is the exclusive licensee of at least some of the rights assertedly at issue here.  *Id.* ¶¶ 24-27.  Zuma does not have exclusive relationships with all of the sports photographers it represents; it claims the photographers are "largely represented exclusively by Zuma" and "[t]ypically . . . do not work with any other agency, licensee, or entity."  *Id.*  ¶¶ 21, 24.  Exhibit B to the Amended Complaint contains a "sampling" of agreements between sports photographers and Zuma.  FAC ¶ 25 & Ex. B.  Exhibits C1-C2 contain copies of the "Sports Photographs by Sports Photographers that have an exclusive arrangement with Zuma, which are the subjects of this litigation, with their copyright management information, their exclusive agreements with Zuma, and their respective copyright registration number or pending registration number."  FAC ¶ 29 & Exs. C1-C2; *see also id.* ¶ 68

(alleging that "at least four Sports Photographers whose photographs are included in the 47,048" have an exclusive agreement with Zuma).  Of the approximately 200,000 photographs defined by Plaintiffs as Zuma's "Sports Photographs," only four are identified as subjects of Zuma's claims in Exhibits C1-C2, and only two of those are the subject of a valid copyright registration.  *See* FAC Exs. C1-C2.  Notably, none of the agreements in Exhibits B, C1, and C2 conveys to Zuma the right to bring an enforcement action in its own name; rather, each expressly limits Zuma to suing in the photographer's name.  FAC Exs. B, C1-C2.

Action Sports and OSports:  Action Sports is a "full-service photography firm specializing in sports photography."  FAC ¶ 8.  OSports is a Chinese sports photography agency. *Id.* ¶ 9.  Unlike Zuma, Action Sports and OSports allege ownership of the copyrights in the photographs they offer.  *Id.* ¶¶ 31, 33.  Exhibits D and E to the Amended Complaint contain copies of the Action Sports and OSports photos "which are the subjects of this litigation."  *Id.* ¶¶ 32, 34 & Exs. D-E.  Exhibit D contains only three Action Sports photographs, none of which is the subject of a valid copyright registration.  *Id.* Ex. D.  Exhibit E contains only two OSports photographs, only one of which is the subject of a valid registration.  *Id.* Ex. E.

The Photographer Plaintiffs:  Plaintiffs Flores, Dieb, Szagola, Lopez, Baus, Williams, Backman, Middlebrook, and Barham (the "Photographer Plaintiffs") are professional sports photographers.  FAC ¶¶ 10-18.  Each alleges that he owns the copyrights in those of his photographs that "are subjects to this litigation" (sic).  *Id.* ¶¶ 35-52.  Exhibits F through N contain copies of the Photographer Plaintiffs' photos "which are the subjects of this litigation."  *Id.* ¶¶ 35-52 & Exs. F-N.  Collectively, these exhibits contain fifteen photos, only ten of which are the subject of a valid copyright registration.  Lopez, Williams, and Middlebrook do not allege

they own registered copyrights in any of their photographs identified as subjects of this litigation. *Id.* ¶¶ 42, 46, 50 & Exs. I, K, M.

**Getty Images and the Conduct at Issue**

Plaintiffs allege that Getty Images, one of the world's leading creators and distributors of premium digital content, "makes available to license and sell, and distributes millions of images through and on its Website." FAC ¶ 55. Getty Images assertedly is "a direct competitor" of Zuma, Action Sports, and OSports. *Id.*

Plaintiffs allege, upon information and belief, that in April 2016 Getty Images "improperly copied at least forty-seven thousand forty-eight (47,048) Sports Photographs (the 'Photographs'), displayed them publicly on the Getty Website, and made them available for licensing and sale." FAC ¶ 56. On or around May 4, 2016, Zuma "searched for ZUMA PRESS in the search bar of the Getty Website and found the Photographs on the Getty Website." *Id.* ¶ 57. That same day, Zuma asked Getty Images to remove these photographs from its website, *id.* ¶ 58, and on May 19, 2016, Getty Images informed Zuma that the photographs had been removed. *Id.* ¶ 60. Plaintiffs allege that Getty Images did not license any of these photographs from them or otherwise have their consent to publish the photographs on Getty Images' website. *Id.* ¶ 65.

Plaintiffs allege on information and belief that Getty Images "removed, altered, and falsified" CMI identifying the copyright owner and Zuma as the licensee of these photographs and "replaced" it with a "Getty Images" watermark, which Plaintiffs assert "gives the impression to the public that Getty Images is the licensee" of the photographs. FAC ¶ 92; *see also id.* ¶¶ 94-

106.[1]  Plaintiffs also allege on information and belief that on its website "next to the Sports Photographs,"[2] Getty Images placed a first byline stating "Credit Image: ?? the copyright owner of the Photograph/ZUMAPRESS.com" and a second byline stating "Photo by Les Walker/Corbis via Getty Images." *Id.* ¶ 108; *see also id.* ¶¶ 109-19.  Getty Images allegedly did not have permission from Plaintiffs or from the copyright owners to remove, alter, or falsify any CMI of the "Sports Photographs." *Id.* ¶¶ 120-21.  Again solely on information and belief, Plaintiffs allege that "the falsification, alteration and/or removal of said copyright management information was made by Defendant intentionally, knowingly and/or having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement." *Id* ¶ 138.

**Alleged Consumer Confusion and Marketplace Harm**

Plaintiffs allege that by adding a Getty Images watermark and the byline "Photo by Les Corbis/Corbis via Getty Images (sic)" to certain photographs, and notwithstanding the admission that all photographs identified to Getty Images by Zuma Press in connection with this dispute were removed promptly in May 2016, *see* FAC ¶ 60, Getty Images "is knowingly and intentionally misrepresenting the nature, characteristics, and qualities of the Photographs it offers, so as to create a likelihood of confusion by the public as to the nature, characteristics and qualities of its images." *Id.* ¶ 154.  Zuma, Action Sports, and OSports contend they have been injured by this conduct—indeed, without alleging how or why, they contend they are *continuing*

---

[1] To the extent Plaintiffs allege "removal" and "replacement" of copyright management information, as opposed to alteration or addition of such information, their allegations are contradicted by the documents appended as exhibits to the Amended Complaint and thus cannot be accepted as true.  *See, e.g., Palmer Kane*, 2014 WL 1303135, at *3.

[2] The "Sports Photographs" are defined by Plaintiffs to include "around 200,000 images" licensed by Zuma, FAC ¶ 21, but a far smaller number is alleged to have been found by Zuma on the Getty Images website.  *See* FAC ¶ 56 & Exs. A1-A41.  It is not clear whether Plaintiffs are alleging the addition of a second byline to the approximately 200,000 "Sports Photographs."

to be injured—but they offer only non-specific or implausible references to "actual confusion and negative consequences for Plaintiffs in the marketplace." *Id.* ¶¶ 155, 157.  Plaintiffs allege that Getty Images "has been promoting and advertising itself as the rightful licensee of Zuma's, Action Sports', and OSports' photographs," *id.* ¶ 163; that Getty Images users "will be and have actually been, under the mistaken belief that they need a license from Getty to reproduce the Zuma's, Action Sports' and OSports Photographs (sic)," *id.* ¶ 164; and that "[c]onsumers, competitors, and the public at large are caused to believe that previously independently-owned photo agencies have been taken over by Getty and that either a take over (sic) is inevitable, in case of competitors, or that Getty is a monopoly and hence the only option for consumers," *id.* ¶ 176.  The Amended Complaint is devoid of any allegations describing or referring to any Getty Images' promotional or advertising materials, let alone promotional or advertising materials incorporating either the allegedly unlawful watermark or byline, and it does not identify any facts concerning the beliefs of Getty Images users or of the general public.

**The Causes of Action**

Plaintiffs assert six causes of action.  All Plaintiffs assert claims for direct copyright infringement, contributory copyright infringement, and the falsification, removal, and/or alteration of copyright management information.  FAC ¶¶ 1, 123-51.  Zuma, Action Sports, and OSports also assert claims for false advertising under Section 43(a)(1)(B) of the Lanham Act, deceptive acts or practices under New York General Business Law § 349, and common law unfair competition.  *Id.* ¶¶ 1, 152-88.

## ARGUMENT

Zuma has failed to state a claim upon which relief may be granted.  A complaint must contain allegations "showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" rather than merely possible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The required "facial plausibility" exists only if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations must "raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Because Plaintiffs have failed to meet this standard with respect to any of the asserted causes of action, the Amended Complaint must be dismissed.

I.     **THE COPYRIGHT INFRINGEMENT CLAIMS AND THE CLAIMS FOR FALSIFICATION, REMOVAL, AND/OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION MUST BE DISMISSED**

The claims Plaintiffs have asserted under the Copyright Act are facially deficient in multiple respects. The copyright infringement claims must be dismissed because Plaintiffs fail to allege with sufficient clarity and specificity the works that are the subject of their claims. They purport to assert claims concerning tens of thousands of copyrights that none of them even claim to own, and many of the copyrights they apparently are attempting to place at issue are not registered. *See* Point I.A. Zuma's infringement claims fail for the additional reason that, under the agreements with photographers alleged to own the works on which Zuma purports to sue, Zuma lacks standing to sue in its own name. *See id.* Plaintiffs' claims for contributory copyright infringement fail for all of the same reasons and as a result of Plaintiffs' failure to identify any acts of direct infringement by third parties that can be tied to works properly at issue here. *See* Point I.B. Finally, Plaintiffs' claims under Section 1202 of the Copyright Act are doomed by the same lack of specificity that dooms their infringement claims. *See* Point I.C.

A.  **Plaintiffs Fail To Properly Plead Direct Infringement**

To properly plead copyright infringement, the plaintiff must allege (1) which specific works are the subject of the claim; (2) that plaintiff owns the copyrights in those works; (3) that

the copyrights have been registered; and (4) by what acts during what time the defendant

infringed the copyright.  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d

398 (2d Cir. 1994) (unpublished table decision).  Plaintiffs' attempt to draw into this case tens of

thousands of separate copyrights held by different owners, many of whom are not parties to this

action, fails to satisfy the first three *Kelly* requirements.

> 1.  *Plaintiffs Have Not Specified Coherently Which Works Are The Subject Of Their
>      Infringement Claims*

As noted, a copyright infringement complaint must allege "which specific original works

are the subject of the copyright claim."  *Kelly*, 145 F.R.D. at 36; *see also Palmer Kane*, 2014 WL

1303135, at *3 (the complaint must "properly specify which photographs are at issue" in the

case); *Plunket v. Estate of Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y.

Feb. 22, 2001).  In *Palmer Kane*, a copyright infringement and breach of contract action against

a photo licensing agency, Corbis, and a publisher, Scholastic, in which Scholastic allegedly

exceeded the scope of its licenses to use the plaintiff's photos, the complaint attached a list

describing 146 photographs, but the plaintiff alleged that it was not an exhaustive list of the

copyrighted works that had been infringed.  The court held, accordingly, that the plaintiff had

failed to satisfy the first *Kelly* requirement.  *Palmer Kane*, 2014 WL 1303135, at *4.  In *Plunket*,

similarly, the plaintiff attached a "multi-page schedule" listing plaintiff's original works and

identifying copyright registration numbers for nine works, but she represented that her claims

were "not limited to these works."  2001 WL 175252 at *4.  "As a result," the court held,

"plaintiff has not provided a list of the works potentially at issue in this case."  *Id.*  Notably, the

court did not find that the plaintiff had stated claims as to the nine works for which she provided

registration numbers; it held instead that the complaint was deficient under Rule 8 because the

plaintiff had "fail[ed] to specify which works [were] at issue."  *Id.*

The lack of clarity in the Amended Complaint as to the specific works at issue here is even more confounding.  *A fortiori*, Plaintiffs fail to satisfy Rule 8.  To wit:

- In Paragraph 29 and Exhibits C1-C2, Plaintiffs identify the "Sports Photographs" by photographers with an exclusive agreement with Zuma "which are the subjects of this litigation," together with copyright registration information.  Of the alleged approximately 200,000 Sports Photographs, Paragraph 29 and Exhibits C1-C2 relate to only four copyrights, only two of which are registered.

- In Paragraphs 32 and 34 and Exhibits D and E, Plaintiffs identify the Action Sports photographs and OSports photographs "within the Sports Photographs . . . which are the subjects of this litigation" together with copyright registration information.  Of the alleged approximately 200,000 Sports Photographs, paragraphs 32 and 34 and Exhibits D and E relate to only five copyrights, only one of which is registered.

- In Paragraphs 36, 38, 40, 42, 44, 48, 48, 50, and 52 and Exhibits F through N, Plaintiffs identify the Photographer Plaintiffs' photographs "within the Sports Photographs . . .  which are the subjects of this litigation" together with copyright registration information.  Of the alleged approximately 200,000 Sports Photographs, paragraphs 36, 38, 40, 42, 44, 48, 48, 50, and 52 and Exhibits F through N relate to fifteen copyrights, only ten of which are registered.

- Thus, in total, there are specific allegations relating to at most twenty-four photographs allegedly owned or exclusively licensed by one of the Plaintiffs, and only thirteen of those are registered.

- However, Plaintiffs attach to the Amended Complaint a voluminous document ostensibly showing the "at least forty-seven thousand forty-eight (47,048) Sports Photographs" that Getty Images allegedly "improperly copied."  FAC ¶ 56 & Exs. A1-A41.  In paragraph 63, Plaintiffs allege that "at least" these 47,048 photographs (defined unhelpfully as the "Photographs") also "are the subjects of this litigation," *id.* ¶ 63, even though (i) they have not identified the owners of those additional works; (ii) Zuma has conceded that not all of its relationships with photographers are exclusive; and (iii) there is no way to tell which or how many of these additional photographs are linked to a valid registration that satisfies the statutory precondition to an infringement claim under Section 411(a) of the Copyright Act.

- Even though Zuma alleges it has had access to its list of 47,048 photographs since May 4, 2016, *id.* ¶ 57, and Zuma licenses photographs on behalf of "thousands of photographers," *id.* ¶ 7, it has identified only four photographers with whom it allegedly has an exclusive relationship whose photographs are included in the 47,048 that are claimed in Paragraph 63 to be "the subjects of this litigation."  *Id.* ¶ 68.  Exhibit Q identifies only a single photograph for each of these four photographers.  *Id.* Ex. Q.

10

- Compounding Plaintiffs' failure to provide Getty Images with fair notice of the specific works allegedly at issue, Zuma contends that it "does not know, at this time, whether the [47,048] Photographs represent an exhaustive list of its images improperly exploited by Getty." *Id.* ¶ 64. Plaintiffs thus interlace the Amended Complaint with additional allegations relating to the entirety of the approximately 200,000 "Sports Photographs" that are asserted to be within Zuma's collection. Indeed, each of the Plaintiffs other than Zuma alleges that it or he has thousands of additional "Sports Photographs" without clearly alleging whether any of those additional thousands of photographs are actually in suit. *See id.* ¶¶ 71, 73, 75, 77, 79, 81, 83, 85, 87, 89, 91.[3]

As should be evident from the foregoing, the factual allegations as to how many and which works are at issue in this case are at best extremely confusing and at worst incomprehensible. Plaintiffs cite a not necessarily exhaustive universe of 47,048 images (the "Photographs") that they claim are at issue, see FAC ¶ 63 (stating that the 47,048 photographs "are the subjects of this litigation"), but they then appear to contradict this by specifying and providing exhibits depicting only a handful of images owned by each Plaintiff that are said to be among the Photographs. Plaintiffs' attempts to preserve the ability to assert claims for tens of thousands or even hundreds of thousands of works on the ground that they have identified "at

---

[3] The confusion is exacerbated by Exhibit O, which allegedly provides a copyright registration or pending copyright registration for each of the approximately 200,000 "Sports Photographs" licensed by Zuma. FAC ¶ 53 & Ex. O. Exhibit O is a multipage, six-column spreadsheet listing over 1300 copyright registrations or pending registration application numbers under the following (unexplained) column headers: "Pending # A," "Registration # A," "Pending # B," "Registration # B," "Pending # C," and "Registration # C." In addition to the fact that the exhibit suggests that Plaintiffs are trying to put at issue some 200,000 photographs without any factual basis to do so, it is impossible to determine from this document which registrations and pending registrations cover photos included in the 47,048 "Photographs" set forth in Exhibits A1-41. *See Plunket*, 2001 WL 175252, at *4 (finding multi-page schedule of allegedly copyrighted works insufficient to identify the works at issue). Making matters worse, each of the registrations cited in Exhibit O is a group registration covering multiple published photographs, some of them by non-plaintiff photographers other than the four on whose behalf Zuma purports to sue. As but one example, the first two entries under the column labeled "Registration # A" reflect group registrations of, respectively, 57 and 539 published photographs owned by (non-plaintiff) Hector Acevedo.

11

least" a handful of specific works at issue fail the pleading standards of Rule 8 and require dismissal. *See Plunket*, 2001 WL 175252, at *4 (finding works at issue not adequately specified where plaintiff's claims expressly were not limited to works for which copyright registration numbers were provided).

In sum, the infringement claims should be dismissed on the ground that the Amended Complaint fails to identify with sufficient clarity the photographs at issue.

2.   *Plaintiffs Do Not Own The Vast Majority Of The Copyrights They Attempt To Place At Issue*

Another defect fatal to the claims as to most of the photographs Plaintiffs attempt to place at issue is the failure to allege ownership of the copyrights. *See Kelly*, 145 F.R.D. at 36.  The Amended Complaint, together with the annexed agreements between Zuma and four photographers, makes plain that the vast majority of both the 47,048 "Photographs" described in Paragraph 56 and the approximately 200,000 "Sports Photographs" described in Paragraph 21 are owned by entities other than Plaintiffs.  Some of those photographs are not licensed through Zuma on an exclusive basis. *See, e.g.*, FAC ¶¶ 21, 24 (alleging that Zuma "[t]ypically" has an exclusive relationship with its photographers).  To the extent Zuma purports to sue for infringement of any non-exclusively licensed photographs, it lacks standing. *See Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (nonexclusive licensee "may not sue others for infringement").  Even for those works for which Zuma alleges it has exclusive rights and hence standing to sue, those allegations are contradicted by the documents attached to and incorporated by reference in the Amended Complaint, *see, e.g., Palmer Kane*, 2014 WL 1303135, at *3, which state expressly that Zuma does not have the contractual right to sue in its own name for infringement of any of the Photographs. *See* FAC Exs. B, C1-C2.

12

Section 501(b) of the Copyright Act provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  Where the plaintiff is not the author of the work, it may sue for infringement only if it has acquired ownership of the copyright or an exclusive license to the work.  *See Davis*, 505 F.3d at 99, 101; *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 276 (S.D.N.Y. 2014), *appeal filed*, Case No. 15-1134 (2d Cir. Apr. 9, 2015); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.02[B][1].[4]  However, an exclusive licensee's right to enforce a copyright extends only to the particular rights granted, and the rights of a licensee are defined by the license agreement.  *See, e.g.*, *Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*, No. 3:13-cv-00297 (JAM), 2016 WL 4275576, *5 (D. Conn. Aug. 12, 2016) (holding that plaintiff lacked standing to sue where exclusive license authorized plaintiff to use certain intellectual property rights owned by third party GSL "solely to the extent necessary or desirable for [plaintiffs] to fulfill its obligations under the Contracts," which "did not confer . . . the right to sue to enforce the contractual and intellectual property rights now owned by GSL"); *see also* 17 U.S.C. § 201(d)(2) (providing that owner of particular exclusive right is entitled "*to the extent of that right*, to all of the protection and remedies accorded to the copyright owner by this title") (emphasis added).

Zuma acknowledges that its role as purported "exclusive agent" for the Sports Photographers is "as stated and defined by their exclusive agreements with Zuma," FAC ¶ 25, and, in addition to making clear that copyright ownership "remain[s] exclusively with Photographer," the agreements specifically grant Zuma the right to make claims or institute

---

[4] Exclusive licenses "are recognized as a type of an ownership interest."  *Davis*, 505 F.3d at 100 n.10.

proceedings only "in Photographer's name."  FAC Ex. B at 2; *id.* Ex. C1 at 9; *id.* Ex. C2 at 4.

Although Zuma apparently has done this with respect to the nine Photographer Plaintiffs who

were added to the Amended Complaint, Zuma has *not* done so with respect to any of the

photographers who own the works that are subject to the claims that Zuma is asserting in its *own*

name.  Because Zuma's right to sue is expressly limited, and because Zuma did not comply with

that limitation by suing in its own name, Zuma does not have standing and must be dismissed

from this action.

### 3.  *Claims Based On Unregistered Copyrights Must Be Dismissed*

The third *Kelly* requirement is that the copyrights in the works at issue be registered.  *See*

*Kelly*, 145 F.R.D. at 36.  This requirement is codified in Section 411(a) of the Copyright Act,

which provides that "no civil action for infringement of the copyright . . . shall be instituted until

preregistration or registration of the copyright claim has been made in accordance with this title."

17 U.S.C. § 411(a).  There is an exception—not applicable here—where "the deposit,

application, and fee required for registration have been delivered to the Copyright Office in

proper form and registration has been refused."  17 U.S.C. § 411(a).

Failure to comply with Section 411(a) requires dismissal of an infringement claim

pursuant to Rule 12(b)(6).  *See, e.g., Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)

(stating that Section 411(a) "imposes a precondition to filing a claim"); *Senisi v. John Wiley &*

*Sons, Inc.*, No. 13CV3314-LTS-AJP, 2016 WL 1045560, at *3 (S.D.N.Y. Mar. 15, 2016) ("the

'absence of a valid copyright registration . . . [bars] a plaintiff *from bringing* a viable copyright

infringement action,' and . . . does not permit the adjudication of the merits of such an action")

(emphasis in original) (citation omitted); *Accurate Grading Quality Assur., Inc. v. Thorpe*, No.

12 CIV 1343 ALC, 2013 WL 1234836, at *7 (S.D.N.Y. Mar. 26, 2013) ("[S]ection § 411(a) . . .

requires copyright registration as a precondition to a copyright claim[].");  *see also* 17 U.S.C. §

501(b) (providing that the legal or beneficial owner of an exclusive right under a copyright "is

entitled, *subject to the requirements of section 411*, to institute an action for any infringement of

that particular right") (emphasis added).

Following Getty Images' motion to dismiss the original complaint in this action,

Plaintiffs flooded the Copyright Office with registration applications in a belated effort to

remedy this glaring defect in their claims,[5] but to no avail: a large number of the copyrights

Plaintiffs purport to place at issue remain unregistered, and the "overwhelming majority" of

courts in this District have held that a pending application "does not constitute 'registration'

sufficient to allow suit for copyright infringement under 17 U.S.C. § 411(a)." *BWP Media USA,*

*Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 503-04 (S.D.N.Y. 2015); *see also Senisi*,

2016 WL 1045560, at *3 n.2 ("'It remains the law in this Circuit that § 411(a) imposes a bar to

copyright infringement claims where a plaintiff has not either received or been denied a

copyright registration at the time such a claim is interposed.'") (citation omitted); *Manhattan*

*Review LLC v. Yun*, No. 16 CIV. 0102(LAK)(JCF), 2016 WL 6330474, at *5 (S.D.N.Y. Aug. 15,

2016), *adopted by Manhattan Review LLC v. Tracy Yun*, No. 16-CV-0102 (LAK), 2016 WL

6330409 (S.D.N.Y. Oct. 26, 2016) ("Copyright registration is a precondition to bringing an

infringement action in federal court, and a majority of courts in the Second Circuit have

concluded that a pending application does not satisfy that precondition."); *Christians of Cal., Inc.*

*v. Clive Christian N.Y., LLP*, No. 13 Civ. 275, 2014 WL 2465273, at *4 & n.1 (S.D.N.Y. May

30, 2014) (collecting cases) ("The consensus among courts in the Second Circuit clearly favors

the registration approach, under which . . . application for copyright registration cannot sustain a

claim for infringement prior to its approval or rejection . . . . The consensus is, in fact,

---

[5] The Amended Complaint cites over 900 pending registrations.  *See* FAC ¶¶ 31-53 & Exs. C1-
C2, D-F, I, K, M, and O.

overwhelming."), *reconsideration granted on other grounds*, 2014 WL 3605526 (S.D.N.Y. July

18, 2014); *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 CV 2669

LAP, 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012) (a plaintiff must "either hold a valid

copyright registration outright or have applied and been refused a registration *prior* to filing a

civil claim") (emphasis in original); *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403,

406-07 (S.D.N.Y. 2009) (finding that the "mere[]" delivery of the deposit, application and fee

cannot constitute having been either "registered" with or "refused" by the Copyright Office).[6]

Although one court in this District found recently that mere application for registration

was sufficient, *see Chevrestt v. Am. Media, Inc.*, No 16 Civ. 55557 (LLS), 2016 WL 4557318

(S.D.N.Y. Aug. 31, 2016), others have explained more persuasively that the plain language of

the Copyright Act forecloses that interpretation of Section 411(a).  For example, as the court in

*DO Denim* explained:

> The language, "required for registration," as used in the phrase, "the
> deposit, application, and fee required for registration," suggests strongly
> that the deposit, application and fee are prerequisites to registration and do
> not themselves constitute registration. Moreover, to construe "registration"
> having "been made" as meaning merely that "the deposit, application and
> fee have been delivered," without more, would render the subsequent
> alternative condition—that the deposit, application and fee be delivered
> and registration be refused—superfluous. The plain language of the statute
> compels dismissal of Plaintiff's copyright claims for lack of subject matter
> jurisdiction.

634 F. Supp. 2d at 406-07 (quoting 17 U.S.C. 411(a)).  In light of the plain language of Section

411(a) and the great weight of authority within this District, the copyright infringement claims

based on unregistered copyrights should be dismissed.

---

[6] The Second Circuit has not ruled on whether Section 411(a) requires that a registration
certificate have been issued (or registration rejected) by the Copyright Office or whether having
applied for registration is sufficient.  *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125
(2d Cir. 2014).

### B.  Plaintiffs Fail To Properly Plead Contributory Infringement

A contributory infringement claim lies against one who "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another."  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  The defendant must have "acted in concert [with the direct infringers] to infringe upon the Plaintiff's rights."  *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750-51 (S.D.N.Y. 2012), *aff'd*, 569 F. App'x 51 (2d Cir. 2014), and the defendant must have acted with "actual or constructive knowledge of specific and identifiable infringements," not just "a general awareness that there are infringements." *Id.* at 751 (internal quotation marks and citations omitted).   To adequately plead contributory infringement, the plaintiff "must initially plead a direct infringement."  *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 229 (S.D.N.Y. 2000).

Plaintiffs' contributory infringement claims must be dismissed for at least three reasons.  First, the claims have not been pled with the specificity required by Rule 8.  *See supra* Point I.A.  Plaintiffs allege that Getty Images "intentionally induced, encouraged, and materially contributed to the reproduction and distribution of the Photographs by third parties by licensing the Photographs on the Getty Website," and they attach to the Amended Complaint a list of what purports to be "*some of* the Defendant's unauthorized activities involving the Photographs and third parties."  FAC ¶ 146 (emphasis added) & Ex. CC.  In addition to the fact that Plaintiffs do not purport to present a complete list of the transactions on which the contributory infringement claims are based, Exhibit CC does not tie any of the listed transactions to any photographs specifically identified by Plaintiffs.  The Image Numbers in Exhibit CC do not correspond to any of the photographs specifically identified in Exhibits C1-N or Q-BB.  This disconnect again calls into question the universe of works Plaintiffs are attempting to place at issue in this case, warranting dismissal for the reasons discussed above.  *See supra* Point I.A.

17

Second, even if the photographs identified on Exhibit CC were among those at issue, that exhibit (the source of which is not explained) fails to specify the users (only some of them located in the United States) or uses of any of the photos, and—crucially—Plaintiffs do not even allege that any of the third-party uses was infringing.  This omission is fatal.  The mere fact that Getty Images may have licensed the images to third parties does not establish that any of the third parties committed copyright infringement.  By failing to adequately plead direct infringement by third parties, Plaintiffs have failed to adequately plead contributory infringement against Getty Images.

Third, the contributory infringement allegations are conclusory.  That Getty Images "intentionally induced, encouraged, and materially contributed to the reproduction and distribution of the Photographs by third parties by licensing the Photographs on the Getty Website," *id.* ¶ 146, is not a sustainable factual allegation of actionable conduct.  *See, e.g.*, *Marvullo*, 105 F. Supp. 2d at 230 (dismissing contributory infringement claim for failure to allege "any facts from which a trier of fact could conclude that Stern induced, caused or materially contributed to Gruner & Jahr's conduct").   Plaintiffs also fail to allege that Getty Images acted with knowledge of "specific and identifiable infringements."  *Wolk*, 840 F. Supp. 2d at 751.

For these reasons, the contributory infringement claims must be dismissed.

**C.  Plaintiffs' Section 1202 Claims Also Must Be Dismissed**

Like the direct infringement claims, Plaintiffs' claims under Section 1202 of the Copyright Act, 17 U.S.C. § 1202, for falsification, removal, and/or alteration of CMI also must be dismissed for failure adequately to specify the works at issue.  Getty Images is confronted with the same dilemma with respect to the Section 1202 claims in terms of understanding the scope of the claims because the Amended Complaint is so hopelessly convoluted in terms of

identifying the relevant photographs.  Particularly because small variations in the CMI appearing
on or in connection with each photo on the Getty Images website could be legally significant,
and Getty Images would present evidence that its use of any works was authorized, clear
specification of the works at issue is necessary to enable Getty Images to respond and defend
against those claims.

## II.     THE LANHAM ACT CLAIMS MUST BE DISMISSED

Zuma, Action Sports, and OSports (the "Agency Plaintiffs") also attempt to state claims
under Section 43(a)(1)(B) of the Lanham Act, which prohibits misrepresentations "in
commercial advertising or promotion" as to "the nature, characteristics, qualities, or geographic
origin" of another person's goods, services, or commercial activities.  15 U.S.C. § 1125(a)(1)(B).
These claims are based entirely on the allegation that Getty Images added its own watermark and
the byline "Photo by Les Corbis (sic)/Corbis via Getty Images" to photographs belonging to the
Agency Plaintiffs.  FAC ¶ 154.  In doing so, the Agency Plaintiffs contend, Getty Images
"knowingly and intentionally misrepresent[ed] the nature, characteristics, and qualities of the
Photographs," *id.* ¶ 154, and created "a likelihood of confusion by the public as to the nature,
characteristics and qualities of its images," *id.*, "with the intent to trade on the reputation and
goodwill of Zuma, Osports (sic), and Action Sports." *Id.* ¶ 155.  The Lanham Act claims fail on
multiple grounds.

First, the Amended Complaint does not contain any allegations about Getty Images' use
of the CMI at issue in commercial advertising or promotion; allegations concerning merely the
removal or alteration of CMI do not suffice.  The Second Circuit has held that "the touchstone of
whether a defendant's actions may be considered 'commercial advertising or promotion' under
the Lanham Act" is that the contested representations "are part of an organized campaign to
penetrate the relevant market" and that "[p]roof of widespread dissemination within the relevant

industry is a normal concomitant of meeting this requirement." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002)). Alteration of CMI to indicate the source of a photograph is not the kind of consumer-oriented selling practice that is properly the subject of a Lanham Act claim. Hence, because the alleged manipulation of CMI does not constitute commercial advertising or promotion, the Section 43(a)(1)(B) claims fail as a matter of law.

Second, the alleged alteration of CMI is fully addressed by the Section 1202 claims. Notwithstanding the added gloss of implausible consumer confusion allegations, the Lanham Act claims rest on precisely the same alleged conduct by Getty Images as the CMI claims and thus are impermissibly duplicative. For this reason, it is well established that photo credits—even if inaccurate—do not give rise to a Lanham Act claim. *See, e.g.*, *Lipton v. Nature Company*, 71 F.3d 464, 473 (2d Cir. 1995) ("a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act"); *Marvullo*, 105 F. Supp. 2d at 232 ("plaintiff's Lanham Act claim is based on no more than an alleged copyright violation and is impermissibly duplicative of his claim for relief under the Copyright Act").

Third, and relatedly, the Agency Plaintiffs' attempt to distinguish the Lanham Act claims from the Section 1202 claims by alleging that the Section 43(a)(1)(B) claims concern "the nature, characteristics, qualities, or geographic origin" of the Photographs, *see* FAC ¶ 162, has no merit. In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), the Supreme Court stated that statements concerning the *content* of a communicative product can give rise to a Lanham Act claim, *see* 539 U.S. at 38, but claims directed to the *authorship* of such a product cannot, *see id.* at 32 ("as used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that

20

'goods' embody or contain").  The Lanham Act claims here are not actionable under *Dastar* because they have nothing to do with the nature, characteristics, qualities, or geographic origin of any of the photographs at issue.  Rather, they are based on the alleged addition of the byline "Photo by Les Walker/Corbis via Getty Images" to the author/Zuma byline, which squarely implicates *authorship*.   Consistent with *Lipton* and *Marvullo*, *Dastar* thus forecloses a Section 43(a) claim based on alleged misattribution of the authorship of a communicative product.  Numerous courts in this District have so held.  *See, e.g.*, *Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 Civ. 14212(RMB), 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007) ("[A] failure to attribute authorship to Plaintiff does not amount to misrepresentation of the nature, characteristics, qualities, or geographic origin of Defendant's goods."); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 234 (S.D.N.Y. 2010) ("Because misrepresentation of authorship lies at the heart of this action, the plaintiffs' Lanham Act claim is barred by *Dastar*."); *Gurvey v. Cowan, Liebowitz, & Latman, PC*, No. 06 Civ. 1202(BSJ), 2009 WL 1117278, at *4 (S.D.N.Y. Apr. 24, 2009) (same), *aff'd in part, rev'd in part on other grounds*, 462 F. App'x 26 (2d Cir. 2012)).[7]

For all these reasons, the Lanham Act claims must be dismissed.

## III.   THE N.Y.G.B.L. § 349 CLAIMS MUST BE DISMISSED

Section 349(a) of the New York General Business Law proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service"

---

[7] In addition, to the extent the Lanham Act claims are based on alleged consumer confusion as to the affiliation of the Agency Plaintiffs with Getty Images, *see, e.g.*, FAC ¶ 157 ("the perceived affiliation with the Defendant has adversely impacted Zuma's existing and potential business relationships"), they are not actionable under Section 43(a)(1)(B); Section 43(a)(1)(*A*), not Section 43(a)(1)(B), covers confusion as to "the affiliation, connection, or association of [the plaintiff] with another person."  15 U.S.C. § 1125(a)(1)(A).   Plaintiffs have not asserted any violation of Section 43(a)(1)(A).

in New York.  The gravamen of a Section 349 violation is "consumer injury or harm to the

public interest."  *LBB Corp. v. Lucas Distribution, Inc.*, No. 08 CIV. 4320 (SAS), 2008 WL

2743751, at *2 (S.D.N.Y. July 14, 2008).  Conduct actionable under Section 349 must not only

harm the plaintiff but also have "significant ramifications for the public at large[.]"  *S&L*

*Vitamins, Inc. v. Australian Gold, Inc.,* No. 2:05-cv-01217-JS-MLO, 2006 WL 8423836, at *7

(E.D.N.Y. Mar. 30, 2006) (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d

269, 273 (S.D.N.Y. 2003)).[8]  By contrast, claims that "arise out of a trademark infringement

action, and disputes between competitors where the core of the claim is harm to another business

as opposed to consumers" involve public harm that is "too insubstantial to satisfy the pleading

requirements of § 349."  *Gucci,* 277 F. Supp. 2d at 273.

The Agency Plaintiffs try to frame their CMI-related allegations as Section 349 claims

by alleging that Getty Images misled consumers by "holding itself out falsely as the agent" of the

Agency Plaintiffs, FAC ¶ 174, which caused consumers, competitors, and the public at large "to

believe that previously independently-owned photo agencies have been taken over by [Getty

Images] and that either a take over (sic) is inevitable . . . or that [Getty Images] is a monopoly

and hence the only option for consumers."  *Id.* ¶ 176.  The CMI alterations allegedly caused

"direct harm to the marketplace" and "a specific and substantial injury to the public interest."  *Id.*

This attempt to pass off a Section 1202 copyright claim as a Section 349 claim fails

because the requisite harm to the public is not, and cannot be, alleged.  *See, e.g.*, *LBB Corp.*,

2008 WL 2743751, at *2-3 (dismissing Section 349 claim where the only harm alleged was

---

[8] Harms that satisfy this standard include "potential danger to the public health or safety."
*Gucci*, 277 F. Supp. 2d at 273; *see also Sports Traveler, Inc. v. Advance Magazine Publishers,*
*Inc.,* No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("[F]ederal courts
have interpreted the statute's scope as limited to the types of offenses to the public interest that
would trigger Federal Trade Commission intervention . . . such as potential danger to the public
health or safety.").

"actual confusion amongst consumers whereby the public is deceived and confused into believing that the Defendants' film is produced, provided, endorsed or authorized by Plaintiff").

In *S&L Vitamins* the court reviewed a Section 349 counterclaim brought by Australian Gold (AG), the manufacturer and exclusive distributor of specified tanning products against another distributer, S&L, which allegedly sold the products without AG's authorization.  Among AG's allegations was that S&L's website "falsely draws an association and affiliation between the Products [of the two companies]" by "superimposing the name of the 'BodySourceOnLine.com' [one of S&L's websites] over the photographs of the Products."  The court dismissed the claim, stating:

> Commercial claimants under § 349 must allege conduct that has "significant ramifications for the public at large" in order to properly state a claim.' . . . Here, AG fails to allege any significant harm to consumers in general.   While S&L's alleged failure to furnish purchasers with instruction or otherwise adhere to AG's quality controls may tarnish the goodwill associated with the Products and the Marks, it does not constitute the type of significant ramifications for the public at large to justify AG's consumer protection claims.

2006 WL 8423836, at *3 (citations omitted).

As in *S&L*, the core of the Agency Plaintiffs' Section 349 claims is alleged harm to their businesses, not a threat to public health or safety, arising in part out of the claimed misleading labeling of photographs.  *See, e.g.*, FAC ¶ 174.  Such alleged consumer confusion does not give rise to a claim cognizable under Section 349.

## IV.    THE STATE UNFAIR COMPETITION CLAIMS MUST BE DISMISSED

The essence of an unfair competition claim under New York common law "is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995).  Courts in this Circuit have held that New York common

law unfair competition claims are virtually congruent with Lanham Act claims and that dismissal

of the latter warrants dismissal of the former.  *See, e.g., Kregos v. Associated Press*, 795 F. Supp.

1325, 1336 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d Cir. 1993) ("[T]he standards for § 43(a)

claims under the Lanham Act and unfair competition claims under New York law are virtually

the same."); *E. R. Squibb & Sons, Inc. v. Cooper Labs., Inc.*, 536 F. Supp. 523, 526 (S.D.N.Y.

1982) ("The standard for unfair competition under the Lanham Act differs very little from that

under New York law.").  This is because "[t]he essence of both causes of action is the likelihood

that the public will be confused as to the source of the allegedly infringing product."  *Kregos*,

795 F. Supp. at 1336.

The Agency Plaintiffs allege that Getty Images "misappropriated Plaintiffs' labor, skill,

and expenditures in bad faith and for its own gain" and caused "confusion as to the association or

relationship" between Getty Images and the Agency Plaintiffs.  FAC ¶ 184.  This "bad faith

misappropriation of a commercial advantage which belonged exclusively to the Plaintiffs," who

had "exclusive proprietary interests in the photographs," allegedly caused "actual confusion in

the marketplace" and "adversely effected" (sic) the Agency Plaintiffs' reputations and

businesses.  *Id.* ¶ 185.  Because these allegations are simply a restatement of the Lanham Act

claims, they should be dismissed for the same reasons under the cases cited above.

In addition, to the extent the unfair competition claims rest on the misappropriation of the

Agency Plaintiffs' "exclusive proprietary interests in the photographs," FAC ¶ 185, they are

preempted by the Copyright Act.  *See Thomas Publ'g Co., LLC,*  2007 WL 2193964, at *4

(holding that unfair competition claim based on allegations that the defendant misappropriated

the plaintiff's "labor and know-how" and misrepresented itself as the developer, originator, and

rights-holder of the plaintiff's intellectual property did not contain "extra element" necessary to

avoid preemption); *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 296-97 (S.D.N.Y. 2007) (holding unfair competition claim was synonymous with reverse passing off and preempted by the Copyright Act).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the First Amended Complaint in its entirety.

Dated:  New York, New York
       January 30, 2017

Respectfully submitted,

By: /s/ Benjamin E. Marks
    Benjamin E. Marks
    Jonathan Bloom

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007

*Attorneys for Defendant Getty Images (US), Inc.*

25