**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ZUMA PRESS, INC., ACTION SPORTS
PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE
MEDIA CO. LTD., MANNY FLORES, ANDREW
DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ,
CHARLES BAUS, DUNCAN WILLIAMS, ROBERT
BACKMAN, JOHN MIDDLEBROOK, and ANTHONY
BARHAM,

                  Plaintiffs,

   - against -

GETTY IMAGES (US), INC.

                  Defendant.

Case No. 1:16-cv-06110 (AKH)

**PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………………………………...1

BACKGROUND…………………………………………………………………………3

ARGUMENT…………………………………………………………………………...5

I.    LEGAL STANDARD FOR MOTION TO DISMISS………………………………...5

II.   PLAINTIFFS' FIRST AMENDED COMPLAINT IS LEGALLY SUFFICEINT…...7

    A. FAC Plausibly States a Claim Arising Out of Copyright Infringement…………..7

        1.  *Plaintiffs Have Adequately Specified Which Original Works Are The Subjects Of Their Litigation*……………………………………………………….........8

        2.  *Plaintiffs own all of the copyrights or are exclusive agents for copyright owners of all of the photographs*…………………………………………….12

        3.  *The Infringed Works Have Been Substantially in Compliance with Section 411(a) of the Copyright Act*……………………………………………………16

    B. FAC Adequately Pleads Contributory Infringement…………………………….19

III.  FAC SUFFICIENTLY PLEADS A DMCA CLAIM RELATING TO COPYRIGHT MANAGEMENT INFORMATION……………………………………………….22

    A. FAC Sets Forth a Plausible Set of Facts………………………………………….22

    B. The Defendant's Argument that Intent and Knowledge Have Not Been Established Are Premature…………………………………………………….........23

IV.  FAC ADEQUATELY PLEADS THE LANHAM ACT CLAIMS…………………24

V.   FAC ADEQUATELY PLEADS N.Y.G.B.L. SECTION 349 CLAIMS……………28

VI.  FAC ADEQUATELY PLEADS NEW YORK STATE UNFAIR COMPETITION CLAIMS………………………………………………………………………...30

CONCLUSION……………………………………………………………………….32

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                  **Page(s)**

*A Star Group, Inc. v. Manitoba Hydro*, 621 Fed. Appx. 681(2d Cir. July 27, 2015)……………18

*Agence France Presse v. Morel*, 769 F.Supp.2d 295 (S.D.N.Y. Jan. 14 2011)……………........ 22

*Apotex Inc. v. Acorda Therapeutics, Inc.*, No. 11 CIV. 8803 AT, 2014 WL 5462547 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 823 F.3d 51 (2d Cir. 2016)………………………………………………..25

*Arista Records, LLC v. Doe 3*, 2010 WL 1729107 (2d Cir. 2010)……………………..…..7, 20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)……………………………………………………………6

*BanxCorp. v Costco Wholesale Corporation*, 723 F.Supp.2d 596 (S.D.N.Y. July 2010)…..........23

*Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424 (S.D.N.Y. 2014)……………….........26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………………………6

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296 (2d Cir. 2004)………………..30, 31

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342 (S.D.N.Y. 2014)…….20

*Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013)…………………..20

*Chevrestt v. Am. Media, Inc*., No. 16 CIV 5557 (LLS), 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) …………………………………………………………………………………………...16, 17

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693 (2d Cir. 1992)…………………….30, 31

*DO Denim, LLC v. Fried Denim, Inc.,* 634 F.Supp.2d 403 (S.D.N.Y.2009)………………...28, 29

*David Young-Wolff v. McGraw Hill Companies*, 2014 WL 349711 (Jan. 14, 2014) …………7,8

*Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003)……………………………………………………………………………………...26, 27

*Dye v. Kate Spade & Co. et al*, No. 1:16-cv-05759 AKH, (S.D.N.Y.  November 20, 2016)......10

*Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982).........................12, 13

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016)…………………………………………………………………………………………..24

*Fashion Boutique Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,  314 F.3d 48 (2d Cir. 2002)………………………………………………………………………………………….25

*Franklin Elec. Publishers, Inc. v. Unisonic Products Corp.,* 763 F.Supp. 1 (S.D.N.Y.1991)……8

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215 (S.D.N.Y. 2010)…………………………………………………………………………………………..28

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159 (2d Cir.1971)…….19, 20

*Great American Fun Corp. v. Hosung New York Trading Inc.,* 935 F.Supp. 488 (S.D.N.Y.1996)………………………………………………………………………………….8

*Gmurzynska v. Hutton*, 355 F.3d 206 (2d Cir.2004)…………………………………………..24

*Gurvey v. Cowan, Liebowitz & Latman, PC.*, No. 06 CIV. 1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009), *aff'd in part, vacated in part sub nom. Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26 (2d Cir. 2012)……………………………………………………………28

*In re DDAVP Direct Purchaser Antitrust Litig.,*585 F.3d 677 (2d Cir.2009)…………………...24

*In re Foreign Exch. Benchmark Rates Antitrust Litig.,* 74 F. Supp. 3d 581 (S.D.N.Y. 2015), *appeal withdrawn* (Apr. 27, 2015)…………………………………………………………….6

*Haven v. Time Warner, Inc.*, 896 F. Supp. 141 (S.D.N.Y. Aug. 17, 1995)……………………...17

*Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, No. 11 CIV. 01794 LTS, 2011 WL 6600267, (S.D.N.Y. Dec. 22, 2011), *aff'd*, 507 F. App'x 74 (2d Cir. 2013)………………………………..30

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27 (2d Cir. 1995)…………………30

*John Wiley & Sons, Inc. v. DRK Photo,* 11 CIV. 5454 KPF, 2014 WL 684829 (S.D.N.Y. Feb. 21, 2014)…………………………………………………………………………………..13

*Krasselt v. Joseph E. Seagram & Sons, Inc.*, No. 01 CV 2821 (RCC), 2002 WL 1997926 (S.D.N.Y. Aug. 29, 2002)………………………………………………………………..8, 10

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,* 23 F. Supp. 3d 344 (S.D.N.Y. 2014).9, 10

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995)…………………………………………25-26

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, No. 14 CIV. 4869 (PAE), 2016 WL 4784004 (S.D.N.Y. Sept. 13, 2016)…………………………………………………………..32

*Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355 (S.D.N.Y. 2003)……..…32

*Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000)……………………………27

*Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 CIV. 1094 AKH, 2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014), *order suspended*, No. 12 CIV. 1094 AKH, 2015 WL 6917260 (S.D.N.Y. Apr. 30, 2015)…………………………………………………………………13

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,*709 F.3d 129 (2d Cir.2013)………..7

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015)…………...15, 16

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109 (2d Cir. 2013)……………………………………………………………………………………7

*Oban US, LLC v. Nautilus, Inc.*, 2014 WL 2854539 (D. Conn. Jun. 23, 2014)……………..17, 18

*Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir. 2015)…………………………………………28

*Palmer Kane LLC v. Scholastic Corp.,* No. 12 CIV. 3890 TPG, 2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014)……………………………………………………………………9, 10

*Pearson Educ., Inc. v. Boundless Learning, Inc.*, 919 F. Supp. 2d 434 (S.D.N.Y. 2013)……….27

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705 (2d Cir. 2013)…………………………………………………..5

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57 (2d Cir.2010)……………6

*Plunket v. Doyle,* No. 99 CIV. 11006(KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001)……..9

*Psihoyos v. John Wiley & Sons, Inc.,* 748 F.3d 120 (2d Cir. 2014)……………………………...18

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015)…………………………………………………………...29

*Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010)………………………………………….19

*Ruotolo v. City of N.Y.,* 514 F.3d 184 (2d Cir. 2008)…………………………………………...5

*Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir.1988)……………………………………………...9

*Schneider v. Pearson Educ., Inc*., No. 12 CIV. 6392 JPO, 2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013)…………………………………………………………………………………………..10

*Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir.1995)…………………………29

*Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.,* 118 F.3d 955 (2d Cir.1997), *cert. denied,* 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998)………………………………26

*Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015)…………………………14

*Swierkiewicz v. Sorema* N.A., 534 U.S. 506 (2002)…………………………………………….6

*Thomas Publ'g Co., LLC v. Tech. Evaluation Centers, Inc.,* No. 06 CIV.14212 RMB, 2007 WL 2193964 (S.D.N.Y. July 27, 2007)………………………………………………………….27

*Tin Pan Apple v. Miller Brewing Co.,* 737 F.Supp. 826 (S.D.N.Y.1990)………………………..8

*TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553 (S.D.N.Y. Mar. 9, 2016), *on reconsideration in part*, No. 12-CV-3529 (AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016)……………………………………………………………………………………14

*Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 CIV 8324 JGK DF, 2005 WL 2414452, (S.D.N.Y. Sept. 30, 2005)………………………………………………………………..25

*Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610 (S.D.N.Y. 2013)………………….....10

*Weight Watchers Intern., Inc. v. Stouffer Corp.,* 744 F.Supp. 1259 (S.D.N.Y.1990)…………...28

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,* 210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003)…………….17

*Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015)……………………………………………………………………………………20

**Statutes**

Lanham Act 43 (a) – 15 U.S.C. 1125(a)(1) (A)/(B)………………………………………….27, 28

17 U.S.C. §§ 102 and 103……………………………………………………………………..30

17 U.S.C. §§106 ………………………………………………………………………*passim*

17 U.S.C. § 201(d)(2)…………………………………………………………………………15

17 U.S.C. § 301(a)……………………………………………………………………………30

17 U .S.C. § 410(d)……………………………………………………………………………17

17 U.S.C. §411(a)…………………………………………………………...…..16, 17, 18

17 U.S.C. § 501(b))………………………………………………………………..7, 13, 15

17 U.S.C. §1202(b)………………………………………………………………………*passim*

NY GBL 349………………………………………………………………………………..28

**Rules**

Fed. R. Civ. P. Rule 8(a)……………………………………………………………….*passim*

Fed. R. Civ. P. Rule 9(b)……………………………………………………………....24

Fed. R. Civ. P. 12(b)(6)……………………………………………………………….*passim*

**Secondary Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357…………………5

2 Nimmer on Copyright § 7.16[B][3] [b]. § 12.02[B][1]…………………………15, 16, 17, 18

2 Roger M. Milgram, *Milgram on Licensing* § 15.08………………………………………15

1 Roger M. Milgrim, *Milgrim on Trade Secrets* § 2.06A[3](1992)……………………...31

Plaintiffs ("Plaintiffs") respectfully submit this opposition to Defendant Getty Images (US), Inc.'s ("Getty") motion to dismiss the Plaintiffs' First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Instead of answering the Amended Complaint, the Defendant refiles a substantially similar motion to dismiss that asks the Court to impose a heightened pleading standard.  This premature motion is based on an erroneous reading of Federal Rules of Civil Procedure Rule 8(a) and puts into dispute matters that go to the merits of claims, and not to whether a plausible and valid claim has been pled.   The arguments supporting this motion are without merit and must be rejected.

First, without distinguishing the ample precedent in this Circuit holding that an imprecise, non-exhaustive list of infringements can survive a motion to dismiss, Defendant simply concludes that the FAC has insufficiently pled which works are the subject of this litigation. Second, Defendant conflates the pleading requirements of Rule 8(a) with Plaintiffs' standing to sue, asserting that a deficiency in one area necessitates a failure in the other.  On both accounts, however, Defendant's arguments fall short.

Having received ample and fair notice of its infringement, Defendant fails to challenge the first prong of the pleading requirement. In the instant case, Plaintiffs are either copyright owners or, in the case of Zuma, exclusive agents possessing three of the six exclusive rights enumerated under the Copyright Act. Insofar as the Defendant attacks Zuma's standing, it misunderstands that an assignment of a right to sue has never been a necessary condition of standing in a copyright case. The lack of such an assignment in Agency Agreements between Zuma and its photographers therefore does not strip Plaintiff Zuma of standing.  On the contrary,

the Agency Agreements are replete with indicia of exclusivity – affording Plaintiff Zuma the right to sue.  In a final push to undermine Plaintiffs' copyright infringement claim, Defendant challenges the very remedial measure Plaintiffs undertook in response to its first motion to dismiss.

Failing to demonstrate that Plaintiffs lack jurisdiction, the Defendant feebly revisits the application versus registration debate.   It is not clear why this issue is not also moot, given that Plaintiffs have not only applied for but received almost all of their copyrights involved in this case.  Additionally, a recent decision in this District has tipped the scales decidedly in favor of the application approach.

Without convincingly challenging the direct copyright infringement claim, Defendant tries to undermine Plaintiffs' contributory infringement claim.  In doing so, Defendant fails to acknowledge that the FAC sufficiently pleads that the Defendant knew, should have known or was willfully blind as to the downstream infringement.  Not only did the Defendant provide the means to infringe, it was the sole instrumentality in the infringement scheme and directly benefited from the exploits.

The Defendant does not even properly challenge the pleading of the DMCA §1202(b) claim.  The Defendant neglects to note that attaching an actual example of infringing activity is sufficient to adequately plead the requisite scienter.

Turning to Lanham Act claims, the Defendant disingenuously reduces these claims to watered-down 1202 claims.  In doing so, it fails to account for the fact the falsification of copyright management information ("CMI") was then accompanied by unauthorized licensing of the images on the Defendant's website.  Not only is this allegation sufficient to survive a motion

to dismiss, but these claims are made on behalf of Agency Plaintiffs only and do not involve issues of authorship.  Plaintiffs' Lanham Act claims should survive a motion to dismiss.

Finally, the Defendant mistakenly assails the two state law claims.   First, it curiously argues that the public interest is not sufficiently involved in this case to warrant the New York General Business Law Section 349.   As allegations have already shown and discovery will likely make clear, the public interest is sufficiently implicated in this case to ground this claim. Case law that requires only some public harm has not been distinguished by the Defendant. Second, its assault on state common law claim of unfair competition misguidedly mirrors its thwarted attempt to challenge the Lanham Act claims.  The Defendant denies the applicability of the extra element in assessing preemption.  Additionally, it fails to note that evidence of actual confusion would only be available after expert discovery is complete – making a pre-answer motion to dismiss this claim particularly premature.

The Defendant's substantive arguments are meritless and procedurally premature.  The FAC, as Plaintiffs show below, is legally sufficient and plausible on its face.  Therefore, the motion to dismiss should be denied in its entirety.  Due to the drastic relief sought, Plaintiffs alternatively request leave to file a Second Amended Complaint.

## BACKGROUND

At its heart, this case is simple and straightforward.   Getty, an industry behemoth growing at a dizzying rate of expansion and acquisition, neglected to conduct its due diligence and disregarded the rights of others.  FAC ¶ 160.  Having improperly acquired a portfolio of photographs belonging to another agency, Defendant displayed and licensed these ill-gotten images and pocketed the profits. FA ¶56 & Ex. A1-A41.  Eventually, photographers who, at great expense to themselves heretofore avoided working with the industry giant, found their own

images being licensed on the Defendant's site.   Angry and confused, they called their exclusive agent, Plaintiff Zuma, in hopes of figuring out how and why this happened.   FAC ¶ 157.

Plaintiff Zuma initiated an investigation and promptly contacted the Defendant in an attempt to resolve the issue.   FAC ¶¶57, 58.  Defendant did not immediately respond, though it was put on notice.   FAC ¶ 59.  Meanwhile, the calls and inquiries continued.   Plaintiff Zuma attempted to collect evidence of the infringement and was able to identify 47,048 images on the Defendant's public-facing website.   FAC ¶¶61, 63.  Plaintiff Zuma also collected several individual photographs by selecting these on the Defendant's site.  Once 'clicked,' more specific information on each photograph became available.   FAC ¶¶68 & Ex. Q, 70 & Ex. R, 72 & Ex. S, 74 & Ex. T, 76 & Ex. U, 78 & Ex.V, 80 & Ex. W, 82 & Ex. X, 84 & Ex. Y, 86 & Z, 88 & Ex. AA, 90 & Ex. BB.   Plaintiff Zuma was in the middle of collecting such specific information when the Defendant removed the photographs in question from its public-facing site.  FAC ¶ 61.

From that point on, the Defendant has exclusive possession, control of or access to the evidence of the infraction.  FAC ¶¶62. Plaintiff Zuma continued in its attempts to resolve the matter, corresponding with various Defendant employees, including editors, risk managers and the like.   FAC ¶¶58, 59, 60.  Some of these employees provided information, others would revise that information, still others would contradict the former.   FAC ¶¶ 60, 61 & Ex. CC. Defendant became unreliable and reticent.  Plaintiff Zuma's attempt to get answers as to the scope and breadth of the infraction came to an end.

The Defendant's motion to dismiss is based largely on the argument that not enough facts are alleged to sustain the action.  However, the Plaintiffs are only required to plead Defendant's exclusive possession, control of and access to the evidence of the infraction.   FAC ¶ ¶67. Plaintiffs have alleged as much as is practicable and reasonable after a currently limited

investigation.  Discovery is the proper vehicle for providing the information the Defendant finds

so lacking in the pleadings. The following facts are incontrovertible:

- Defendant had fair notice of Plaintiffs' claim of infringement; FAC ¶¶ 58, 59.
- Plaintiffs either own the copyrights at issue or are exclusive licensees of the copyright holders and therefore have standing to sue;  FAC ¶¶22, 24 – 28, 31, 33 & Ex. B.
- Plaintiffs cured any jurisdictional deficiency by registering the images with U.S. Copyright Office;  FAC ¶ 29 & Ex. C1-C2.
- Defendants removed or altered the Plaintiffs' CMI and replaced it with their own, false CMI   FAC ¶¶92, 94-104, 108-119 & Ex. Q – Ex. BB.
- Defendants further caused third-parties to infringe Plaintiffs' photographs by licensing the photographs despite lacking the right to issue such licenses; .   FAC ¶¶ 144, 145, 149 & Ex. CC.
- Defendant's actions caused widespread marketplace confusion: downstream from photo editors, to photographers, and finally to consumers.   FAC ¶ ¶157, 160. The record, of course, will be better developed through discovery, but the Plaintiffs have alleged enough to survive the motion to dismiss.

## ARGUMENT

## I. LEGAL STANDARD FOR MOTION TO DISMISS

The Courts strongly disfavor and rarely grant motions to dismiss pursuant to Fed. R. Civ.

P. Rule 12(b)(6). 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*

1357, at 598**.**  In determining whether the Complaint adequately pled a cause of action, the

Court must presume that all allegations contained therein are true and draw all reasonable

inferences in the Plaintiffs' favor.  *Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir. 2008).   In

fact, the Court must construe the motion to dismiss in a light most favorable to the non-moving

party.  *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan*

*Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 732 (2d Cir. 2013).   Furthermore, the Court may refer to

judicial experience and common sense when deciding whether a set of alleged facts constitute a plausible claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). "The court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir.2010) (internal quotation and citation omitted).

In order to survive a motion to dismiss pursuant to FRCP Rule 12 (b)(6), the plaintiff must have plead a set of factual allegations that, if true, plausibly state a valid claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even after the tightening of the pleading standard in *Twombly* and *Iqbal*, the Supreme Court recognizes that the question is not whether the claim will eventually prevail, "but whether his complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1280, 1296 (2011), citing *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002). The Court further clarifies that "a complaint need not pin plaintiff's claim for relief to a precise legal theory," but rather requires only a plausible "short and plain" statement of the plaintiff's claim. *Id*. To be certain, FRCP 8(a) (2) does not require an exposition of the legal argument. Nor does *Iqbal* and *Twombly* usher in a heightened pleading standard, requiring specific factual allegations.

In this Circuit, the Court of Appeals has repeatedly held that the tightened pleading standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence" of culpable conduct. *In re Foreign Exch. Benchmark Rates Antitrust Litig*., 74 F. Supp. 3d 581, 591 (S.D.N.Y. 2015), *appeal withdrawn* (Apr. 27, 2015) (internal citations omitted).

Furthermore, the Second Circuit, in particular, has made it clear that *Iqbal* and *Twombly* do not stand for the proposition that the Plaintiff may no longer plead "upon information and belief".   This is especially true "[1]where the facts are peculiarly within the possession and control of the defendant, or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 2010 WL 1729107, *8 (2d Cir. 2010).   In other words, the pleading may properly rely on facts to which only the defendant has access and on beliefs based on those facts.   In *David Young-Wolff v. McGraw Hill Companies*, 2014 WL 349711 (Jan. 14, 2014), the Court specified that "[t]his standard 'does not impose a *probability* requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at *2  (citing *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir.2013) (quoting *Twombly,* 550 U.S. at 556)) (internal citations omitted).   In fact, *Twombly* opines that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." 550 U.S. at 556, 127 S.Ct. 1955 (internal quotations omitted).  *See also New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 125 (2d Cir. 2013).  As the Plaintiffs establish herein FAC goes above and beyond a well-pled FAC.

## II. PLAINTIFFS' FIRST AMENDED COMPLAINT IS LEGALLY SUFFICIENT

### A.  FAC Plausibly States a Claim Arising Out of Copyright Infringement

In order to properly plead a claim for copyright infringement, pursuant to 17 U.S.C. §§106 and 501, the Plaintiff "must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the

defendant infringed the copyright." *Young-Wolff*, at \*2. These four elements, as enumerated by the above, have been properly pled by the Plaintiffs.

1. *Plaintiffs Have Adequately Specified Which Original Works Are The Subjects Of Their Litigation.*

While it is patently untrue that the Plaintiffs have not "coherently" specified the particular photographs that are at issue, at this stage of the litigation, the Defendant must merely be put on fair notice of the claims against it.  *Krasselt v. Joseph E. Seagram & Sons, Inc.*, No. 01 CV 2821 (RCC), 2002 WL 1997926, at \*2 (S.D.N.Y. Aug. 29, 2002).  Several Courts in this District have rejected motions to dismiss based on the failure to plead the first element with sufficient specificity.   In *Krasselt*, the Court made it clear that "[a]t this stage of litigation, Plaintiff is not required to specify exactly which individual elements of the [works] are original in order to put Defendants on fair notice of the claims against them; nor is it necessary that Plaintiff state exactly which of the … [works] were infringed.  *Id.  See Great American Fun Corp. v. Hosung New York Trading Inc.,* 935 F.Supp. 488, 489 (S.D.N.Y.1996) (denying motion to dismiss even though plaintiff did not allege which of defendant's works infringed plaintiff's copyrights if "it is apparent on its face that the plaintiff has a colorable claim of infringement as to a number of defendant's products"); *Franklin Elec. Publishers, Inc. v. Unisonic Products Corp.,* 763 F.Supp. 1, 3–4 (S.D.N.Y.1991) (deciding that the complaint met Rule 8's requirement for specificity, where complaint alleged that defendant's product contained "portions copied and/or derived from [plaintiff's] copyrighted works."); and *Tin Pan Apple v. Miller Brewing Co.,* 737 F.Supp. 826, 828 (S.D.N.Y.1990) (denying motion to dismiss where the ambiguity as to the number of infringements "may be explored on discovery ...").

Here, the Defendant cannot argue in good faith that it does not have fair notice of the claims against it because "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988).  Though FAC reflects the complicated and extensive nature of this infringement in size and scope – it is by no means lacking in specificity nor sufficiency in factual allegations.   FAC ¶¶ 56, 58, 59, 63 & Ex. A1-A41, P1-P5.  The first prong is met.

The Defendant primarily relies on *Plunket v. Doyle*, where the plaintiff completely failed to specify the works in issue so as to provide fair notice.  *Plunket v. Doyle,* No. 99 CIV. 11006(KMW), 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001).  In that case, as *Krassell* points out in distinguishing its facts, no specific allegations of copyright infringement were made at all.   The present case is clearly distinguishable from *Plunket* since the Plaintiffs have attached an FAC Exhibits A1-A41, P1-P5 with 47,048 specific and unique infringements.   The Defendant's reliance on *Palmer Kane LLC v. Scholastic Corp.* is similarly misguided.  *Palmer Kane LLC v. Scholastic Corp.,* No. 12 CIV. 3890 TPG, 2014 WL 1303135, at *3 (S.D.N.Y. Mar. 31, 2014).   In that case, the plaintiff also did not properly specify which photographs were infringed.  Unlike the Plaintiffs in the instant case, the plaintiff in *Palmer Kane* did not provide any support for the allegation that the defendant concealed and prevented it from knowing the full scope of the infringement.  FAC ¶¶ 62, 67.

Moreover, some Courts in this District have distinguished *Palmer Kane* in dismissing the complaint only to the extent that it implies infringements beyond those specifically alleged. "While it is true that the court in *Palmer Kane* faulted the plaintiff there for not limiting its claims to the works listed, … the Court has already dismissed Plaintiff's claim with respect to works not identified in the Lefkowitz Chart. Even had it not, this similarity with the present case

9

does not render the FAC inadequate."  *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,*
23 F. Supp. 3d 344, 355 (S.D.N.Y. 2014);  *Schneider v. Pearson Educ., Inc*., No. 12 CIV. 6392
JPO, 2013 WL 1386968, at *3 n. 3(S.D.N.Y. Apr. 5, 2013) ("To the extent, however, that ...
other district court opinions set forth [a rule under which a plaintiff fails to state a claim for
copyright infringement where the plaintiff provides a non-exhaustive list of infringed works,]
this Court takes a different course."); *Warren v. John Wiley & Sons, Inc*., 952 F. Supp. 2d 610,
617 (S.D.N.Y. 2013)("The inclusion of a list of additional photographs in Exhibit One does not
create any ambiguity as to the alleged infringement at issue.")   Similarly, even if the Court finds
that the Plaintiffs have failed to limit the alleged infringement to the images found in FAC
Exhibits A1-A41, P1-P5, the Court may simply limit the FAC to those specifically alleged
47,048 images.

Here, the Plaintiffs provide a detailed account of discovering the infringement, notifying
the Defendant in an attempt to resolve this issue and being thwarted by the Defendant in the
wake of giving notice of the infringement.   FAC ¶¶ 57-64.  Put simply, the Defendant not only
had fair notice of the photographs that are the subject of this litigation but is in sole possession,
control of or access to them.   Plaintiffs provided as much information as is practically possible
prior to discovery.   This case, therefore, is distinguishable from *Palmer Kane* and is more akin
to *Krasselt*.

In a recent order denying a Motion for Judgment on the Pleadings, this Court relied on
much less information in the proffered exhibits to satisfy Fed. R. Civ. P. Rule 8 requirements.
"Not all infringements have to be alleged."  *Dye v. Kate Spade & Co. et al*, No. 1:16-cv-05759,
Dkt. 41, (S.D.N.Y.  November 20, 2016) (Hon. A.K. Hellerstein).    In that case, first the Court
*sua sponte* denied a pre-answer motion to dismiss citing that defendants' motion "ignores dates

that could be gleaned from the exhibits." *Id.* Dkt. 18.  Later in that case, after an answer was

interposed, the defendants filed a motion on the pleadings.   This Court, again denied the latter

motion, finding that a better factual record is needed and that proper vehicle to achieve that goal

is discovery.   *Id.* Dkt. 41.   In that case, the exhibits contained advertisements for items

featuring the infringement and copyright notices of 2015 and 2016.  This Court found those

copyright notice on the bottom of only two of the exhibits to be sufficient for the purposes for

Rule 8.

In this case, the exhibits contain much more than a couple of copyright notices on

advertisements.   The exhibits here contain all of the infringed photographs that are the subjects

of this litigation.   The Amended Complaint also alleges a time frame of the infringement.

Additionally, the Amended Complaint alleges that the Plaintiffs are the copyright owners of the

infringed works and Plaintiff Zuma is an exclusive agent with exclusive rights.   The Amended

Complaint alleges all the required elements of a copyright infringement claim.     Therefore, the

motion to dismiss must be denied.

Specifically, the Defendant cannot reasonably argue that it did not have fair notice.  FAC

¶58 adequately alleges that the Defendant was contacted by Plaintiff Zuma as soon as Zuma

learned of the infringement.  As stated above, Plaintiff Zuma had a limited opportunity to collect

evidence of the infringement.  In the weeks between the discovery of the infringement and the

moment the Defendant removed the infringing photographs from its public-facing website, the

Plaintiff was able to collect the 47,048 infringing images proffered in Exhibit A1-A41, P1-P5.

Additionally, the Plaintiff was able to get more detailed information on those photographs that it

had the opportunity to "click on" and select while they were still available on the Defendant's

website.   Once a photograph is selected on the Defendant's site, much more pertinent

information becomes available, such as the name of the Photographer and/or exclusive agent. FAC ¶ 68 & Ex. Q, 70 & Ex. R, 72 & Ex. S, 74 & Ex. T, 76 & Ex. U, 78 & Ex.V, 80 & Ex. W, 82 & Ex. X, 84 & Ex. Y, 86 & Z, 88 & Ex. AA, 90 & Ex. BB.   The Plaintiff had a limited opportunity to "click on" and select infringed images that would be representative of the 47,048. For those images selected, the Plaintiff is able and did make much stronger allegations. Unfortunately, due to the Defendant's exclusive possession, control of and access to the infringed images as they appeared on its website, the Plaintiff was not able to "click on" and select all of the infringed images.   To be sure, the Defendant was on notice of the infringement and any informational deficiencies in the Complaint have been caused by the Defendant. Discovery is the proper vehicle through which information deficiencies should be addressed in this case.   Therefore, the motion to dismiss should be denied.

2. *Plaintiffs own all of the copyrights or are exclusive agents for copyright owners of all of the photographs.*

Several named Plaintiffs are individual photographers who are copyright owners and are listed as such.  FAC ¶¶ 35, 37, 39, 41, 43, 45, 47, 49, 51.   In addition to those individual photographers who own their respective copyrights in the images, Plaintiffs also include photo agencies.   Among these photo agencies are Action Sports and OSports that aren't just agencies, but they own the copyrights of their photographers.  FAC ¶¶ 31, 33.   Clearly, FAC specifically alleges that individually named photographers and exclusive agencies Action Sports and OSports are indeed copyright owners.   These allegations of copyright ownership suffice.

Having failed in challenging the Plaintiffs' allegations of copyright ownership, the Defendant assails Plaintiff Zuma's standing as an exclusive agent.  It is well established that the

Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir.1982). Section 501(b) of the Copyright Act provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).  This Court has properly recognized the rights of the exclusive licensee in *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 CIV. 1094 AKH, 2014 WL 5334698, at *11 (S.D.N.Y. Aug. 19, 2014), *order suspended*, No. 12 CIV. 1094 AKH, 2015 WL 6917260 (S.D.N.Y. Apr. 30, 2015);  *see also John Wiley & Sons, Inc. v. DRK Photo,* 11 CIV. 5454 KPF, 2014 WL 684829, at *9 (S.D.N.Y. Feb. 21, 2014) ("The "exclusive rights" referenced in Section 501(b) are set out in Section 106 of the Copyright Act ...").

In *Mayimba*, this Court also examined how to determine whether a licensee has exclusive rights and therefore a right to sue.  *Mayimba Music, Inc. v. Sony Corp. of Am.*, 2014 WL 5334698, at *11.   This Court has made it clear that mere contractual labels are insufficient in determining whether a licensee or an agent is exclusive.   *Mayimb*a firmly stands for the proposition that the Court's determination is "not based on mere labels found in the agreement, but on substantive elements of such agreements."  *Id.* (quoting *John Wiley & Sons, Inc. v. DRK Photo,* 2014 WL 684829, at *4-5).  In this case, the Agreements that Plaintiff Zuma attaches to the FAC as Exhibit B, clearly show that beyond mere labels, the substantive elements of these Agreements reveal an exclusive relationship.   "Far from the illusory interest" the Agreements convey exclusive rights to Plaintiff Zuma.  *Mayimba Music, Inc. v. Sony Corp. of Am.,* 2014 WL 5334698, at *12.  In addition to the fact that Agreements are titled Exclusive, Plaintiff Zuma has

the "exclusive right world-wide to market, distribute, licenses, sell, reproduce, broadcast, display, publish, transmit and negotiate the reproduction rights in and to images provided to Zuma." FAC ¶ 26.  Furthermore, Plaintiff Zuma secured press credentials for its photographers, without which they would have not have access to sports venues and events.  FAC ¶¶ 24-28.  *See Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 98 (S.D.N.Y. 2015) ("the photographer has granted AP an exclusive license for NFL Event Photos taken by him at an NFL event where AP directly or indirectly arranges for the photographer to be credentialed for the event.")

Upon consideration of several allegations found in FAC, taken in conjunction with the language found in the Agreements attached thereto, a picture of an exclusive agent or licensee emerges.  In the light most favorable to the non-moving party, taking all factual allegations as true, the Court must conclude that Plaintiff Zuma is an exclusive agent with standing to sue.

Under the Copyright Act, holders of an exclusive license may sue for copyright infringement, while holders of a nonexclusive license may not. *See Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d, 32-33 & n.3.  The Defendant inaccurately argues that if an agreement does not convey the right to sue to plaintiff, that plaintiff has no standing.  Courts in this Circuit, however, have never held that a transfer of a right to sue is either a necessary nor a sufficient condition to support standing.   In fact, conveying a bare right to sue has repeatedly been held insufficient to substantiate standing. *TufAmerica Inc. v. Diamond*, No. 12-CV-3529 (AJN), 2016 WL 1029553, at *2 (S.D.N.Y. Mar. 9, 2016), *on reconsideration in part*, No. 12-CV-3529 (AJN), 2016 WL 3866578 (S.D.N.Y. July 12, 2016).  In the present case, however, the contractual language in the Agreements, taken together with the factual allegations in FAC concerning the relationship between Plaintiff Zuma and its photographers – describe an exclusive

relationship.  Therefore, Plaintiff Zuma has standing to sue on behalf of those photographers with whom it has exclusive Agreements.

Recently, the Ninth Circuit rejected a similar argument to the one advanced by the Defendant.  In that case, the Court rejected the notion that if an agreement does not convey the right to sue, or even more broadly does not assign the photographer's copyrights to the agency and even allows the photographer to license his or her images independently, that the photo agency lacks standing.  *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1004 (9th Cir. 2015).   In *Minden*, the Court found that "the divisibility principle embodied by the 1976 Act, and to the bulk of the case law and commentary in this field" leads to the conclusion that one could not only divide, but sub-divide the enumerated, exclusive rights among different parties.  17 U.S.C. § 201(d)(2).   "Thus a party granted an exclusive license to display a work may bring an infringement action challenging the unauthorized display of that work by another party, even though the licensee does not hold legal title to the work."  *Id.; see also Nimmer, supra,* at § 12.02[B][1] ("As the owner of 'an exclusive right under a copyright,' an exclusive licensee is 'entitled ... to institute an action for any infringement....' " (quoting 17 U.S.C. § 501(b)).  *Id.* at 1003.   *Minden* further held that "when a licensee has been granted rights vis-à-vis the world—even if he or she shares those rights with another party, including the owner of the copyright" —we see nothing in the Copyright Act that requires us to deem such an arrangement a mere 'nonexclusive license' insufficient to give rise to standing to sue."  *Id.* at 1004.   Therefore, the test for standing is not whether the right to sue has been assigned, but whether the photo agency has rights vis-à-vis the world and the right to exclude others from using the copyrighted work, even if that right is shared with the owner or another party.   In this case, Plaintiff Zuma clearly has that right.  FAC ¶27.

*Minden* relies on a prominent treatise that, "one who takes an 'exclusive' license subject to a preexisting license may lack true exclusivity, but nonetheless possesses the legal right to exclude third parties (other than the existing licensee) ... and, thus, has ... standing to sue for infringement." *Id.* at 1005 (quoting 2 Roger M. Milgram, *Milgram on Licensing* § 15.08.)  In analyzing the agency agreements, that Court found that even if the photographers "have retained some limited degree of authority to grant licenses themselves does not eliminate *Minden*'s interest in the copyright as the sole entity to act as the photographers' licensing agent. It merely means that *both Minden* and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them. To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act." *Id.*  In this case, the photographers retain their copyrights but Plaintiff Zuma is their exclusive agent with the right to license, distribute, display their works.   It follows that Zuma can prevent third parties from using these photographs and therefore has standing to sue for their respective infringement.   This is the essence of an exclusive agent or licensee that *Minden* has in mind. Plaintiff Zuma is the quintessential exclusive agent and hence has standing to bring this claim.

3. *The Infringed Works Have Been Substantially in Compliance with Section 411(a) of the Copyright Act.*

Unable to effectively challenge standing, the Defendant feebly turns to a technical requirement of registration.  In a recent case in this District, the Court opined that if the plaintiff's "application is approved, all agree he can proceed with his claim. If his application is rejected, 17 U.S.C. § 411(a) unequivocally allows him to proceed as well. It is hard to see what public, private, or statutory interest is served or harmed by requiring him to wait, and re-file his action after his application is approved or denied, when he has already done everything he can to

16

obtain that result." *Chevrestt v. Am. Media, Inc.*, No. 16 CIV. 5557 (LLS), 2016 WL 4557318, at

*2 (S.D.N.Y. Aug. 31, 2016).   The Court in *Chevrestt* looked to 2 Nimmer on Copyright §

7.16[B][3][b][ii], at 7-170.2 to 7-171:

> Given that the claimant who has submitted an application that has yet to be acted upon at
> that juncture has done all that she can do, and will ultimately be allowed to proceed
> regardless of how the Copyright Office treats her application, it makes little sense to
> create a period of "legal limbo" in which suit is barred.  Similarly here, whatever
> applications are still pending – the Plaintiffs will be able to sue for infringement
> regardless of the result of these applications.

In the Second Circuit, several District Courts have held that a pending registration is

sufficient for the purposes of filing a copyright infringement claim.   It is considered a

jurisdictional prerequisite, not a substantive element of the claim -- as the Defendant

misclassifies it in its motion to dismiss.  See *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210

F. Supp. 2d 147, 157 (E.D.N.Y. 2002), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Int'l*

*Corp.*, 354 F.3d 112 (2d Cir. 2003) ("Actual certification by the Copyright Office is not

necessary. A copyright holder may commence an action for infringement as soon as the

Copyright Office has received a proper application, fee and deposit.")   "In order to bring suit for

copyright infringement, it is not necessary to prove possession of a registration certificate. One

need only prove payment of the required fee, deposit of the work in question, and receipt by the

Copyright Office of a registration application."  *Haven v. Time Warner, Inc.*, 896 F. Supp. 141,

143 (S.D.N.Y. Aug. 17, 1995).

In *Oban US, LLC v. Nautilus, Inc.*, 2014 WL 2854539 (D. Conn. Jun. 23, 2014), the

Court also acknowledged that the registration requirement is a formality that is satisfied by a

pending application.   The application approach, according the *Oban*, recognizes that while 17

U.S .C. § 411(a) makes registration a prerequisite to suit, 17 U .S.C. § 410(d) provides that the

"effective date of a copyright registration is the day on which an application, deposit, and fee …

have all been received by the Copyright Office." *Id*. at *6.   The Court in *Oban* further reasoned that if a "court of competent jurisdiction can adjudicate the adequacy of the submission to the Copyright Office," then the submission of an application is sufficient to bring suit. *Id. See* 2 Nimmer on Copyright § 7.16[B][3] [b].

Even more convincingly, "[a]s the leading treatise on copyright explains, the registration approach thus creates a strange scheme: '[G]iven that the claimant ... will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred."  *Oban*, at *6 quoting 2 Nimmer on Copyright § 7.16[B][1][a][i] (internal citations omitted).  Instead, the Court in Oban opts for "[t]he application approach avoids this legal limbo—and avoids prolonging the period of infringement—by allowing a litigant to proceed with an infringement suit as soon as he has taken all of the necessary steps to register the copyright at issue." *Oban,* at *7 (internal punctuation omitted).   *Oban* concludes that courts that adopt "the application approach best effectuate the interests of justice and promote judicial economy." *Id*.   Even some courts following the registration approach, *Oban* admonishes, "have noted that it "leads to an inefficient and peculiar result." *Id.* (internal quotation marks omitted).

The Second Circuit had ample opportunity to resolve the District Court split on the question of registration vs. application approaches and chose to punt both times.  "[O]ur Court has not yet determined, however, whether a merely pending application for registration satisfies the Act's requirement that a work be registered before a related infringement suit is filed." *A Star Group, Inc. v. Manitoba Hydro*, 621 Fed. Appx. 681(2d Cir. July 27, 2015).  Similarly, in *Psihoyos v. John Wiley & Sons, Inc.*, the Second Circuit acknowledged that the Courts of Appeal were divided as to whether a pending application satisfied Section 411(a)'s requirement of

copyright registration as a prerequisite for litigation. Nonetheless, the Court determined that "[w]e need not resolve the dispute or otherwise embroil ourselves in this circuit split…" 748 F.3d 120 (2d Cir. 2014).

Even the Supreme Court of the United States chose to abstain from ruling on this issue in *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 171 (2010) ("We ... decline to address whether § 411(a)'s registration requirement is a mandatory precondition to suit that ... district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works.").

A split within and outside of the Circuit on the approach better tailored to the statutory language, Congressional intent and notions of judicial expediency and fairness should be resolved in the favor of the application approach.

In this case, the U.S. Copyright Office has already approved and issued registration numbers for almost all of the images involved in this suit.  Those numbers were already provided in FAC Exhibit C1-C2.  Since the filing of FAC, however, even more approvals and registration numbers were secured.  Currently, there are only a few pending registration applications outstanding.  For any cognizable purpose, the Plaintiffs have met the jurisdictional prerequisite.

**B.   FAC Adequately Pleads Contributory Infringement**

Having failed to challenge a claim for direct infringement, the Defendant turns to the contributory infringement claim.  Contributory infringement occurs where "one ... with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971).   The knowledge standard is an objective one; contributory infringement liability is imposed on persons who "know *or have reason to know*" of the direct infringement.

*Arista Records, LLC v. Doe 3*, 604 F.3d 118.  Evidence of such actual and constructive knowledge may be found in "cease-and-desist letters, officer and employee statements, promotional materials, and industry experience." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 658 (S.D.N.Y. 2013).  *Arista Records, LLC v. Doe 3*, 604 F.3d 118 ("willful blindness is knowledge").  In fact, the " 'resolution of the issue ... depends upon a determination of the function that [the alleged infringer] plays in the total [reproduction] process.' " *Gershwin*, 443 F.2d at 1162 n. 8.  That is to say, what role does the Defendant have in the whole process of the infringement? *See Arista Records, LLC v. Doe 3*, 604 F.3d 118.

Several Courts in this Circuit have found much weaker, sparser allegations sufficient to survive a motion to dismiss.  In a complaint that merely alleged that defendants "have knowledge or have reason to know of the dummy webmaster's [sic] theft of Plaintiffs' photographs" and "know that the most conspicuous use of the websites is the display [of] Plaintiff's [sic] stolen photographs[,]" the Court found that "[a]ll told, the complaint's allegations of knowledge are somewhat vague, but they are sufficient to survive dismissal." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 356 (S.D.N.Y. 2014).  In that case, the plaintiffs sued six companies and two individuals for allegedly operating a network of websites dedicated to celebrities that, as part of its business model, posted copyrighted photographs. Plaintiffs alleged that defendants' "entire business" was sustained by displaying improperly licensed photographs.  While it is not necessary to allege that the sole function of the defendant is to induce or cause infringement, the alleged "participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts." *Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *14 (S.D.N.Y. Sept. 10, 2015).

In this case, Plaintiffs allege that the Defendant knew or should have known that it had obtained, displayed, and was licensing and distributing copyrighted materials. FAC ¶¶ 30, 92-119, & Ex. Q-Ex. BB.   Beyond what should have been known as a result of industry experience, the Plaintiffs notified the Defendant of the infringement and yet the conduct continued for weeks after notice.  FAC ¶ 59.   FAC sufficiently alleges downstream infringement as a direct result of the Defendant's website.  FAC ¶ 144 & Ex. CC. As far as evaluating the role of the Defendant in the process of the infringement – it is *the sine qua non* of the downstream, third-party infringement.  Without the Defendant's website offering to license and distributing unauthorized materials to its customers, there would be no infringement.

The Defendant again attempts to challenge the pleading based on informational deficiencies stemming from its exclusive possession, control of, and access to the relevant facts. It curiously objects to the information its own employee, Dave Wojtczak, provided in his official capacity.   FAC ¶ 146 & Ex. CC.   Plaintiffs can only presume that this list is incomplete and provides a partial accounting, prior to discovery.   That is to say, only the Plaintiffs lack access to the information the Defendant is decrying as missing.   The Defendant has possession of, control of and access to the full extent of the infringement, the full accounting of its reproduction and distribution to third parties.  The proper means to address this informational deficit is through discovery, not a motion to dismiss.

Second, the Defendant wrongly argues that FAC does not allege third-party infringements.  It is not a difficult leap from an allegation that a Defendant which has obtained, displayed and is licensing copyrighted materials on its website, to conclude that it is causing and inducing its customers to infringe.  Since one cannot convey more rights than one has, and the Defendant had none, any unauthorized licensing of the images will necessarily result in

infringement by its customers.   The third-party infringement was sufficiently alleged in FAC ¶¶ 144, 145, 149, 156 & Ex. CC.  It is both incumbent on the industry and business model of the Defendant that any infringement is passed down to its customer.    Therefore, beyond actual allegations of third-party use being infringing, Defendant's own infringement is imputed onto the third parties.   To be sure, Defendant caused and induced its own customers to infringe by displaying and licensing the Plaintiffs' images.

Finally, the Defendant finds the allegations conclusory and insufficient.  Plaintiffs believe that FAC contains enough factual allegations to infer that the Defendant knew, should have known or was willfully blind as to its own and hence its customers' infringement, and that its website induced, caused and materially contributed to the infringing conduct of its customers. This case is not about a peer-to-peer site, nor a payment service, but rather the very instrument of infringement.  The critical fact is not that Defendant's website is capable of non-infringing use, but that its participation in this infringement was total and culpable.   The motion to dismiss a claim for contributory infringement must be denied.

### III.   FAC SUFFICIENTLY PLEADS A DMCA CLAIM RELATING TO COPYRIGHT MANAGEMENT INFORMATION

#### A. FAC Sets Forth a Plausible Set of Facts

In order to properly plead a 17 U.S.C. §1202(b) claim, the Plaintiff must allege that 1) the Defendant intentionally removed or altered the existing CMI, 2) without the authority of the copyright owner or the law, and 3) that the Defendant knew or should have known that that it will induce, enable, facilitate, or conceal an infringement. *Agence France Presse v. Morel*, 769 F.Supp.2d 295, 305 (S.D.N.Y. Jan. 14 2011). To be sure, a properly pled complaint must include a scienter.  However, the Plaintiff's pleadings do not have to be detailed and factually specific as to the scienter requirement beyond a "plain and short statement".   "Courts have applied this

statute in a straightforward manner such that Plaintiffs here need only allege (1) the existence of CMI…; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *BanxCorp. v Costco Wholesale Corporation*, 723 F.Supp.2d 596, 609 (S.D.N.Y. July 2010).

The Complaint adequately sets forth factual allegations that the Defendant, without knowledge or consent altered the CMI by adding its watermark to the photographs, and that it was done intentionally and knowingly.  FAC ¶¶132-139.  Beyond a "plain and short statement", in *BanxCorp* the Court held that if an actual example of the infringement is proffered as it is in FAC Exhibit A1-A41, then the requisite scienter has been sufficiently pled.  *BanxCorp* at 610. Even *Morel* cites *BanxCorp*, 723 F.Supp.2d at 610 ("[p]roviding an actual example of the allegedly infringing ad is obviously more than a conclusory allegation") to stand for the proposition that attaching exhibits of infringement is sufficient to survive a motion to dismiss. The Defendant has called Plaintiffs' factual allegation conclusory, but the Second Circuit recognizes it as a well-pled requisite scienter.  Here, the FAC adequately pleads the scienter by attaching an actual example of the infringing activity.

**B. The Defendant's Argument that Intent and Knowledge Have Not Been Established Are Premature**

Even if the Court determines that the scienter requirement has not been fully fleshed out, the Courts in *Morel* and *BanxCorp* have ruled that these issues are best addressed at later stages of the litigation. The Courts have held that "at summary judgment, Defendants will have an opportunity to present evidence that ... the CMI…was sufficiently removed to demonstrate that Defendants lacked the intent required to show a violation of the DMCA.") *BanxCorp* at 601. *BanxCorp* further established that in the Second Circuit the Court has resolved that scienter issues are more appropriately determined by a trier of fact.

23

In *Morel*, the Court similarly relies on *In re DDAVP Direct Purchaser Antitrust Litig.,* 585 F.3d 677, 693 (2d Cir.2009) (courts must be "lenient in allowing scienter issues ... to survive motions to dismiss") in reviewing whether a scienter requirement is properly pled. In fact, *In re DDAVP* the District Court's grant of a motion to dismiss was reversed because "scienter issues ... are appropriate for resolution by the trier of fact"….," despite applying the heightened pleading standard of FRCP Rule 9(b) (internal quotation marks omitted).  Even in cases involving a heightened pleading standard, which this is not, the Second Circuit has resolved that scienter issue are premature for a motion to dismiss.   The Defendant here insists that the DMCA claim has not been sufficiently pled.  The Plaintiff has already shown that attaching the exhibit of the actual infringement in conjunction with a plain and short statement as to "knowing and intent" is sufficient, but even if the Court finds it lacking –the Second Circuit has relegated issues pertaining to the scienter requirement to the trier of fact, more appropriate at summary judgment and deserving of a liberal inference in the Plaintiff's favor.  The Defendant's motion to dismiss as to the insufficiency of the DMCA claim must be denied as both premature and meritless.

## IV.  FAC ADEQUATELY PLEADS THE LANHAM ACT CLAIMS

In this Circuit, "to constitute 'commercial advertising or promotion' ... a statement must be: (1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services, and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public." *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir.2004) (collecting cases) (additional internal quotation marks and citations omitted); *accord Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 293 (S.D.N.Y. 2016).   In this case, FAC

¶¶ 94-105 & Ex. Q-Ex.BB allege that the Defendant altered the information about the source and origin of the photographs.  That altered information appeared on the Defendant's public-facing website through which customers could and did, in fact, license those photographs.   To the extent practicable, the Plaintiffs pled that commercial speech (online offers to license featuring the falsified CMI), made for the purpose of enticing the consumers to license these photographs, and were disseminated widely since Defendant's website is preeminent in the industry.  At this early stage of the litigation, the Plaintiffs have pled the Lanham Act claim with sufficient specificity.

A Court in this District noted that while the Second Circuit upheld a summary judgment motion in *Fashion Boutique Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,  314 F.3d 48 (2d Cir. 2002), "[h]ere, in contrast, the Court is only considering the adequacy … proposed pleading".   *Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 CIV. 8324 JGK DF, 2005 WL 2414452, at *11 (S.D.N.Y. Sept. 30, 2005).  Similarly, another Court distinguished the finding in *Fashion Boutique*, "[here], based on the evidence submitted, a reasonable juror could find that Defendant's sales representatives' statements were "part of an organized campaign to penetrate the relevant market."  *Apotex Inc. v. Acorda Therapeutics, Inc.*, No. 11 CIV. 8803 AT, 2014 WL 5462547, at *5 (S.D.N.Y. Oct. 23, 2014), *aff'd*, 823 F.3d 51 (2d Cir. 2016).  That is to say *Fashion Boutique* and *Apotex* were decided on consideration of a well-developed evidentiary record, and not on a premature motion to dismiss.

The Defendant then attempts to shoehorn this case to fit the mold of *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995).  That case, however, does not defeat the Plaintiffs' claim under the Lanham Act.  *Lipton* merely held that a false copyright notice alone is not enough to ground

a 43 (a) claim. *Id.* ("…[We] found that the 'reproduction of a work with a false representation as to its creator' could support a finding of false designation origin.")   As the Second Circuit clarified in a later case, some additional element beyond a copyright notice must be present in order to make out a Lanham Act claim.  *Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.,* 118 F.3d 955, 971 (2d Cir.1997), *cert. denied,* 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998) ("a requirement of some additional misrepresentation of originality beyond mere use of a copyright symbol.") (internal quotation marks omitted); *United States Media Corp. v. Edde Entertainment Inc.,* 40 U.S.P.Q.2d 1581, 1588 (S.D.N.Y.1996) (noting that although a copyright notice is insufficient under *Lipton* to support a claim of false designation of origin, "[s]uch a claim may be supported ... by further acts on the part of the infringer falsely representing itself as the owner of the work").  In this case, beyond the fact that the original notices were removed, the Defendant replaced copyright notations and watermarks, and offered the photographs for sale and licensing through its website.  As shown already FAC contains several allegations regarding source and origin of the photographs that go well beyond the narrow holding in *Lipton.*

Finally, no assault on a Lanham Act claim would be complete without the predictable and unavailing misappropriation of *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).  The Defendant relies on *Dastar* for the proposition that it is redundant to make 43(a) claims for an authorship claim.  Some Courts in this District have found it inapposite.  In <u>*Dastar*</u>, the Supreme Court held that the unauthorized use of a copyrightable television series, considered alone, cannot support a reverse "passing-off" claim under § 43(a). *Id.* at 539 U.S. at 37–38, 123 S.Ct. 2041.  *See Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 454 (S.D.N.Y. 2014) ("*Dastar* does not address whether a defendant's

unauthorized use of copyrighted works, when occurring in conjunction with the defendant's unauthorized use of protected marks, can support a § 43(a) claim of an implied endorsement.");

*Pearson Educ., Inc. v. Boundless Learning, Inc.*, 919 F. Supp. 2d 434, 438 (S.D.N.Y. 2013)

("The Court's holding in *Dastar* addressed only the applicability of section 43(a)(1)(A) to reverse passing off claims, which occurs when a producer misrepresents someone else's goods as his or her goods.")  Therefore, *Dastar* explicitly left intact the possibility that some false authorship claims could arise out of section 43(a)(1)(B)'s prohibition on false advertising.   To be sure, *Dastar* does not preclude a Lanham Act claim based on deceptive and confusing advertising of the tangible product in which the creative content is embodied.  *Id*.

Crucially, the Agency Plaintiffs, namely Zuma, Action Sports and Osports plead the Lanham Act claim without reference to authorship.  These agencies are not authors of the images misrepresented, and therefore the essence of the claim cannot be based in misattribution of authorship.   Unlike the cases the Defendant cites, this case is not about duplicating copyright claims or even 1202 claims but rather an attempt to redress the harm to Agency Plaintiffs as a result of Defendant's misrepresentation at to the nature, characteristics and qualities in its advertising or promotion.   To distinguish Defendant's cases on this point, in *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 232 (S.D.N.Y. 2000), the photographer plaintiff did not even allege that defendant falsely represented itself as the creator of the photographs or the owner of their copyrights; rather he asserted that defendant wrongly credited another photographer for all of his photographs. Similarly, the plaintiff in *Thomas Publ'g Co., LLC v. Tech. Evaluation Centers, Inc.,* No. 06 CIV.14212 RMB, 2007 WL 2193964, at *3 (S.D.N.Y. July 27, 2007) asserts that defendants used his research and data that he originated without properly attributing the source of the research and data. Again, the dismissed Lanham Act claim centers around authorship as

plaintiff asserts that defendants passed off his research as their own.   In *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 713 F. Supp. 2d 215, 234 (S.D.N.Y. 2010), the plaintiff again is the author asserting precisely the misrepresentation of ideas embodied in the products based on his authorship.   In *Gurvey v. Cowan, Liebowitz & Latman, PC.*, No. 06 CIV. 1202, 2009 WL 1117278, at *4 (S.D.N.Y. Apr. 24, 2009), *aff'd in part, vacated in part sub nom. Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 462 F. App'x 26 (2d Cir. 2012), a pro-se plaintiff sued for failure to attribute the authorship of an idea which "simply does not amount to the misrepresentation of the "nature characteristics, qualities, or geographic origin of ... goods, services, or commercial activities" as required under section 43(a) of the Lanham Act."  *Id.*

In this case, Agency Plaintiffs are not authors, but more akin to producers, and their Lanham Act claims do not stem from a misrepresentation of authorship.  Therefore, the Agency Plaintiffs have adequately pled the Lanham Act 43(a) claim and the motion to dismiss should be denied.

## V. FAC ADEQUATELY PLEADS N.Y.G.B.L. SECTION 349 CLAIMS

To successfully assert a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.,* 802 F.3d 289, 300 (2d Cir. 2015).  While it is true that the Courts have somewhat narrowed the primary focus of Section 349 to the protection of the consuming public, it is also true that the Courts have held that competitors have standing to challenge deceptive practices under Sections 349 so long as "some harm to the public at large is at issue." *Weight Watchers Intern., Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1284 (S.D.N.Y.1990).  Not only may corporate competitors bring a claim under this statute, but only a showing of "some harm to the public at

large" is required. *DO Denim, LLC v. Fried Denim, Inc.,* 634 F.Supp.2d 403, 408

(S.D.N.Y.2009) (quoting *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d

Cir.1995)). Indeed, "[t]he critical question ... is whether the matter affects the public interest in

New York, not whether the suit is brought by a consumer or a competitor." *Securitron*

*Magnalock,* 65 F.3d at 264. *See also RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No.

14CV6294-LTS-HBP, 2015 WL 5008762, at *3 (S.D.N.Y. Aug. 24, 2015).

Agency Plaintiffs in this case have alleged that the preeminent leader among photo

agencies is engaged in widespread culpable conduct.  If the Plaintiffs are allowed to proceed with

their claims and establish what they have alleged, the resulting harm to the public at large will be

self-evident.   The Defendant has engaged in systematic, widespread violation and disregard of

the rights of others.  This conduct jeopardizes existing licensing regimes, introduces instability

and uncertainty into the larger marketplace for photography and fosters large-scale infringement

in the downstream market.  This harm goes well beyond the specific rights of the copyright

owners and Agency Plaintiffs to include the public interest in New York.  As the national center

for media, publishing and other content creators and consumers, the New York public is in a

particularly vulnerable position.   Public interest in predictable, liable licensing regimes, and in

industry leaders that perform due diligence upon acquiring ever-increasing market shares – is

undeniable.  Therefore, Agency Plaintiffs believe that they have sufficiently pled the Section 349

claim for the purposes of surviving a motion to dismiss.   FAC ¶¶ 173-176.  Finally, Agency

Plaintiffs insist that once a record is developed, the scope and effect of the violation will make

the public harm more apparent.  At this early stage of litigation, before an answer is even

interposed, the Agency Plaintiffs have sufficiently pointed to some public harm.  The motion to

dismiss should be denied.

## VI. FAC ADEQUATELY PLEADS NEW YORK STATE UNFAIR COMPETITION CLAIMS

"In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief. Additionally, there must be some showing of bad faith." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 35 (2d Cir. 1995) (internal citations omitted).  Courts in this District have found that New York State unfair competition claim tracks Lanham Act claims closely, but has two additional elements of requiring a showing of actual confusion and bad faith on behalf of the defendant.  *See Heptagon Creations, Ltd. v. Core Grp. Mktg. LLC*, No. 11 CIV. 01794 LTS, 2011 WL 6600267, at *9 (S.D.N.Y. Dec. 22, 2011), *aff'd,* 507 F. App'x 74 (2d Cir. 2013) (collecting cases).

The Copyright Act preempts state law if the following requirements are met: (1) the particular work to which the state law claim applies falls within the type of works protected by the Copyright Act in 17 U.S.C. §§ 102 and 103; and (2) the state law claims seeks to vindicate "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C. § ] 106." *See* 17 U.S.C. § 301(a); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305 (2d Cir. 2004).  The Defendant does not establish that either the subject matter requirement or the general scope requirement has been satisfied in this case.   The Defendant merely concludes that reverse passing-off is preempted by the Copyright Act without acknowledging that the claim has two additional elements.   To determine whether a claim has an extra element that precludes preemption, the Court must determine "what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982

F.2d 693, 716–17 (2d Cir. 1992) (quotiong 1 Roger M. Milgrim, *Milgrim on Trade Secrets* \*717 § 2.06A[3], at 2–150 (1992).  Even with the Second Circuit's "restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim," there is sufficient room on these facts to view preemption with skepticism.  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,* 373 F.3d 296, 306 (2d Cir. 2004).  FAC describes that much more than mere copyright infringement was inflicted upon the Agency Plaintiffs.  Their labor, efforts, reputation, expenditures were misappropriated by the Defendant in bad faith.  The resulting confusion and deception to the consumers is also made very clear.  The Defendant does not make a clear case that the two extra elements of actual confusion and Defendant's bad faith do not go well beyond a mere copyright claim to make it qualitatively different.  To be sure, while intent may not be considered an extra element, an extra element of actual consumer confusion should preclude preemption.  *Id.*

This additional element is critical in two respects.  First, it saves the New York state common law claim from being preempted by the Copyright Act nor merely mirroring the Lanham Act claim.   The Defendant cites cases where the respective plaintiffs are the creators of the respective works, unlike the Agency Plaintiffs.   Second, the additional element of consumer confusion asks for a showing that is typically made through expert discovery, surveys and other evidence only available in the later stages of the litigation.   At the pre-answer motion to dismiss stage, it is unreasonable and unlikely that any plaintiff would be able to produce evidence of actual confusion or bad faith.  Yet, despite how early in the litigation process it is, the Agency Plaintiffs do make a strong showing of actual consumer confusion and Defendant's bad faith alike.  FAC ¶¶59, 61, 182-186.  The Agency Plaintiffs sufficiently pled a volume of inquiries and

phone calls from their respective clients regarding the misappropriation.  These allegations should suffice at this early stage in the litigation.

Courts in this District have previously determined the sufficiency of the state common law unfair competition claims well after expert testimony was available.  *Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F. Supp. 2d 355, 364 (S.D.N.Y. 2003). ("Plaintiff's expert's "personal opinion concerning his taste preference [was] insufficient to create a question of fact regarding the quality of defendant's product," where he "submitted no survey, or any other information, concerning consumers' perceptions of a quality differential."); see *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, No. 14 CIV. 4869 (PAE), 2016 WL 4784004, at *43 (S.D.N.Y. Sept. 13, 2016).  The motion to dismiss this claim is therefore premature and should be dismissed.

## CONCLUSION

The FAC is legally sufficient as it sets out factual allegations that plausibly state causes of action.  Therefore, the Defendant's motion to dismiss must be denied.  In the alternative, and due to the drastic relief sought, the Plaintiffs request leave to amend the FAC.

Dated: March 6, 2017                                    Respectfully Submitted,
      Valley Stream, New York

                                            /s/Yekaterina Tsyvkin_____
                                          Yekaterina Tsyvkin
                                          Richard P. Liebowitz
                                          LIEBOWITZ LAW FIRM, PLLC
                                          11 Sunrise Plaza, Suite 305
                                          Valley Stream, New York 11580
                                          (T): 516-233-1660
                                          KT@LiebowitzLawFirm.com
                                          RL@LiebowitzLawFirm.com

                                          *Attorneys for Plaintiffs*