Ex 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ZUMA PRESS, INC., ACTION SPORTS PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE MEDIA CO. LTD., MANNY FLORES, ANDREW DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ, CHARLES BAUS, DUNCAN WILLIAMS, ROBERT BACKMAN, JOHN MIDDLEBROOK, and ANTHONY BARHAM,

Plaintiffs,

v.

GETTY IMAGES (US), INC.

Defendant.

Case No.: 1:16-cv-06110 (AKH)

**DECLARATION OF LES WALKER**

I, Les Walker, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are based on my own personal knowledge.

2. I currently live in Anchorage, Alaska. Until mid-2016, I was the President of NewSport, a photographic agency that licensed the rights to a large catalog of sports-related photography. I became a director of NewSport in 2004, and I became the President of NewSport in 2006. I am a photographer myself, and I also work as a pottery artist and a truck driver.

3. I received a bachelor's degree from the Brooks Institute of Photography in 1987.

4. NewSport has licensed the use of the photographs in its collection in a variety of ways. It has licensed some uses directly. NewSport also has entered into "image

representation" or "contributor" agreements with larger photographic agencies to expand the potential audience for its photographs and secure additional licensing.

5. For many years, NewSport distributed its photographs through Corbis Corporation ("Corbis"). Until 2016, Corbis was one of the largest photographic agencies in the world.

6. The NewSport-Corbis relationship was governed by a series of image representation agreements. Certain terms of those agreements, such as the royalty percentage that NewSport would receive out of revenues generated by Corbis from its licensing of NewSport's photographs, varied over time, but the following terms were always elements of those contracts:

a. Royalties were paid to NewSport only if Corbis generated revenues from the sale or licensing of NewSport photographs from Corbis's customers;

b. Corbis had the sole discretion to set the commercial terms of licenses of NewSport photographs to Corbis's customers;

c. Corbis was authorized to reproduce, publicly display, and transmit NewSport photographs, including on its website and in catalogs and brochures worldwide, as part of its marketing efforts or for internal purposes, without separate compensation to NewSport;

d. NewSport was required to represent with respect to the photographs it submitted to Corbis that (i) it was the owner of the copyrights or had the rights needed from the copyright owners to grant Corbis the rights contained in the license agreements; and (ii) it was not a party to any other agreement that would limit its obligations to Corbis under the contract or

impose additional requirements on Corbis.

7. I have reviewed the document bearing the Bates number COR-00037-42, and I believe it is a true and correct copy of an image representation agreement between Corbis and NewSport with an effective date of January 1, 2005.

8. I have reviewed the document bearing the Bates number COR-00034-36, and I believe it is a true and correct copy of an amendment to the January 1, 2005 image representation agreement with an effective date of April 3, 2006.

9. I have reviewed the document bearing the Bates number COR-00017-24, and I believe it is a true and correct copy of a representation agreement between Corbis and NewSport with an effective date of April 9, 2012.

10. While the NewSport collection includes some of my own photographs, I also maintain a separate catalog of photographs that I took prior to joining NewSport. I entered into separate contracts with NewSport for those photographs. Those were tracked separately by Corbis, and I received separate royalty statements for those contracts.

11. I have reviewed the document bearing the Bates number COR-0001-07, and I believe it is a true and correct copy of an agreement between Corbis and me as an individual.

12. In 2011, I began considering a sale of the NewSport collection. I began speaking to other photographic agencies about buying the rights to the archive. As part of that process, I met Scott Mc Kiernan ("Mc Kiernan"), whom I understood to be the owner of Zuma Press.

13. We did not reach an agreement for sale of NewSport's archive of Zuma Press, but we reached another arrangement to work together.

14. I joined Zuma Press as its Sports Editor in late September 2011. While I largely stopped soliciting new images from contributing photographers at that time for NewSport, I continued to manage and license the NewSport collection and to add images to the collection on occasion. At the time, the NewSport collection was over 100,000 images and reflected contributions from over 400 photographers.

15. At the time I started working for Zuma Press, Zuma Press, like NewSport, distributed its photographs through Corbis. NewSport, however, had a more favorable royalty rate under its Corbis contract than Zuma Press had. Zuma Press wanted to benefit from NewSport's more favorable royalty rate. I agreed to facilitate that as part of my arrangement with Zuma Press.

16. Mc Kiernan and I reached an understanding pursuant to which Zuma Press would use NewSport's credentials and file transmission protocol ("FTP") to upload sports-related to photographs to Corbis, NewSport would treat those photographs as part of the NewSport collection, and NewSport would arrange for Zuma Press to receive the royalties earned from Corbis on those photographs.

17. The document bearing the Bates number ZUM00275 contains a true and correct copy of an October 3, 2011 email that I sent to Mc Kiernan and Ruaridh Stewart ("Stewart"), Zuma Press's News Director. That email contains the information Zuma Press needed to transmit its photographs to Corbis under the NewSport contract. Promptly thereafter, Zuma Press began transmitting photographs to Corbis using the NewSport credentials.

18. To facilitate the royalty payments, Mc Kiernan and I submitted a request to Corbis for redirection of royalty payments under NewSport's contract. The document bearing the Bates number COR 00025 is a true and correct copy of the request we submitted. The

request form was a standard form provided by Corbis. It required that we reaffirm to Corbis "that all images produced under [NewSport's contract] shall be personally created by NewSport, or that NewSport has the authority to grant all rights and licenses under the [NewSport's contract]." It directed that all royalties payments under that contract should be directed to the attention of Zuma Press, which pursuant to my agreement with Zuma Press would assume responsibility for distributing to individual rights holders their respective shares of the royalties received. I signed the request for NewSport, and Mc Kiernan signed the request for Zuma Press.

19. Under this arrangement, Zuma Press received the benefit of higher royalty payments from Corbis in exchange for NewSport receiving the authority to grant the rights and licenses to the additional photographs submitted to Corbis as part of the NewSport collection.

20. The photographs that Zuma Press submitted to Corbis under the NewSport contract and using the NewSport transmission protocols were displayed on the Corbis website as part of the NewSport collection.

21. In Spring 2012, Corbis and NewSport entered into a revised representation agreement with an effective date of April 9, 2012 (COR-00017-24). The new agreement contained a lower royalty rate for NewSport than had been available under the prior contract. Zuma Press continued to submit photographs to Corbis under the NewSport contract notwithstanding the revision of the terms and the lower royalty rate that NewSport, and in turn, Zuma Press, would receive. It was well known within the industry that Corbis was eliminating the premium contributor rate that NewSport and some others had previously received.

22. I worked for Zuma Press for one year and four months. By the beginning of 2013, I believed that my compensation from Zuma Press needed an upward adjustment. I informed Mc Kiernan and Julie Mason ("Mason"), Zuma Press's Chief Financial Officer, that I

would be charging a 5% increase for my services (approximately $160 per month) effective January 2013.

23. The document bearing the Bates number ZUM00317 contains a true and correct copy of an email chain between me and Mason dated January 7-8, 2013.

24. Zuma Press would not agree to my request for additional compensation.

25. The document bearing the Bates numbers ZUM00345-47 contains, in part, a true and correct copy of an email chain between me and Mc Kiernan dated January 8-9, 2013.

26. The document bearing the Bates number ZUM00337-38 contains a true and correct copy of an email chain between me and Mc Kiernan dated January 9, 2013.

27. I was hurt and disappointed that Zuma Press was rejecting what I thought was a very fair and modest request for an increase in pay. I told Mason that I would need to reconsider the arrangement whereby NewSport royalties were paid to Zuma Press for distribution instead of being directed to my attention for distribution. I then resigned.

28. The document bearing the Bates number ZUM00342 contains a true and correct copy of an email I sent to Mason, Stewart, and several other Zuma Press colleagues on January 9, 2013 to inform them of my departure.

29. Over the next several months, I had a series of discussions with former colleagues at Zuma Press concerning distribution of the NewSport collection. Because I had wound down the separate distribution platform for NewSport, I sought to negotiate a reasonable deal for Zuma Press to host that collection on its site (in addition to Corbis continuing to represent the collection). Stewart and I also had some discussions about whether to transfer photographs that Zuma Press had transmitted to Corbis under the NewSport contract out of the NewSport collection. I did not think the terms Zuma Press was offering were reasonable, and we

did not come to an agreement.

30. The document bearing the Bates number ZUM00290 contains a true and correct copy of an email chain between me and Mason dated January 29, 2013.

31. The document bearing the Bates number ZUM00292-98 contains, in part, a true and correct copy of an email chain between me and Stewart dated January 30-31, 2013.

32. The document bearing the Bates number ZUM00327-28 contains a true and correct copy of an email chain between me and Stewart dated February 11, 2013.

33. As part of the discussions concerning unwinding our prior arrangement, Stewart asked me several times to call Seth Greenberg ("Greenberg") at Corbis to instruct Corbis to switch the images fed by Zuma Press to Corbis under the NewSport contract out of the NewSport collection to the Zuma Press account.

34. At some point following the termination of my relationship with Zuma Press, I spoke to Greenberg by telephone to let him know that I was no longer associated with Zuma Press. We discussed removing photographs that Zuma Press had fed under the NewSport contract from the NewSport collection. I do not know if Corbis actually took steps to remove Zuma Press images from the NewSport archive. Zuma Press never reached out to me again to discuss the transition of Zuma Press-fed photographs out of the NewSport collection.

35. After the termination of my relationship with Zuma Press, I continued to license the NewSport collection through Corbis. The royalties were redirected to my attention.

36. In 2016, I became aware that Corbis was selling its image licensing business to an entity called VCG, and that pursuant to an arrangement with Getty Images, many Corbis contributors were being offered the opportunity to migrate their content from the Corbis platform to the Getty Images platform.

37. NewSport was offered the opportunity to migrate its content from Corbis to Getty Images and, in my capacity as President of NewSport, I was invited to sign a direct agreement with Getty Images concerning that content.

38. Getty Images' offer was attractive me, and I entered into a contributor agreement with Getty Images for the NewSport collection. The document bearing the Bates number GETT00051389-93 is a true and correct copy of that agreement.

39. After signing the contributor agreement, I followed up with both Getty Images and Corbis to make sure that the NewSport content was set to transfer. The document bearing the Bates number GETT00047900-02 is a true and correct copy of a chain of emails I sent or received between April 9 and April 12, 2016. The first email in time in the chain is from me to Getty Images. The next two are from Getty Images to me, and the last email in the chain is my response was to Getty Images and to Greenberg, who was a contact for the NewSport account at Corbis.

40. The document bearing the Bates number GETT00047204-06 is a true and correct copy of a chain of emails between me and various Getty Images employees, dated between April 4 and April 16, 2016. The last email in time in the chain reflects another attempt by me to follow up with Getty Images to make sure that the NewSport collection was all set for migration from Corbis to Getty Images.

41. At the time I signed the Getty Images' contributor agreement, the NewSport collection included more than 100,000 images and reflected the work of approximately 450 different photographers.

42. I hereby declare under the penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge, information, and belief.

Dated: Anchorage, Alaska
April 23, 2018

Respectfully submitted,

By: ______________________
Les Walker