**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ZUMA PRESS, INC., ACTION SPORTS
PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE
MEDIA CO. LTD., MANNY FLORES, ANDREW
DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ,
CHARLES BAUS, DUNCAN WILLIAMS, ROBERT
BACKMAN, JOHN MIDDLEBROOK, and ANTHONY
BARHAM

                          Plaintiffs,

   - against -

GETTY IMAGES (US), INC.

                         Defendant.

Case No. 1:16-cv-6110-AKH

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ............................................................................................... 1

UNCONTROVERTED FACTS ........................................................................... 3

LEGAL STANDARD ......................................................................................... 7

ARGUMENT ...................................................................................................... 9

**POINT I:   GETTY HAS FAILED TO PRODUCE ANY EVIDENCE SHOWING THAT IT WAS AUTHORIZED TO USE THE PHOTOGRAPHS ................................. 9**

  A.   BECAUSE GETTY'S LICENSE DEFENSE RELIES ON EXCLUSIVITY, IT CAN ONLY BE SUPPORTED BY EVIDENCE OF WRITTEN CONTRACTS ............................................ 10

  B.   GETTY NEVER ENTERED INTO A CONTRACT WITH NEWSPORT ........................... 11

    1.   The Getty-Walker Agreement Makes No Reference to Newsport ............................... 11

    2.   Les Walker Signed the Getty-Walker Agreement in *His Individual Capacity* ............. 12

    3.   Even if Les Walker Signed the Getty-Walker Agreement as a Purported Agent of Newsport, There is No Evidence That he Was Authorized to Do So As Of April 2016 ................................................................................................................. 17

    4.   The Getty-Walker Agreement's Merger Clause Bars the Introduction of Parole Evidence Which Seeks to Modify or Contradict the Express Terms of the Contract ... 19

  C.   GETTY ELECTED NOT TO ASSUME CORBIS' CONTRACTS WITH NEWSPORT ...................... 20

  D.   THE NOVEMBER 2011 ROYALTY REDIRECTION AGREEMENT PROVIDES FOR A TERM OF PAYMENT, NOT A GRANT OR ASSIGNMENT OF RIGHTS ........................................ 23

    1.   Getty Acquired No Rights Whatsoever By Means of the November 2011 .................. 23
Royalty Redirection Agreement ................................................................................. 23

    2.   In Any Event, The Royalty Redirection Agreement Was Terminated by Zuma After Les Walker Resigned his Position on January 9, 2013 ................................................ 24

  E.   EVEN IF GETTY ENTERED INTO A CONTRIBUTOR AGREEMENT WITH NEWSPORT (WHICH IT DID NOT), THE PHOTOGRAPHS AT ISSUE IN THIS LITIGATION WERE NOT INCLUDED IN THE NEWSPORT COLLECTION AS OF APRIL 2016 ....................................................... 31

  F.   THERE IS NO EVIDENCE THAT GETTY IS A SUB-LICENSEE OF NEWSPORT ...................... 33

G.   COPYRIGHT INFRINGEMENT IS A STRICT LIABILITY OFFENSE ............................................ 34

**POINT II:  GETTY'S ESTOPPEL DEFENSE FAILS AS A MATTER OF LAW ............. 34**

**POINT III:   A REASONABLE JURY COULD FIND THE REQUISITE INTENT TO ESTABLISH GETTY'S VIOLATION OF SECTION 1202 OF THE DMCA 43**

A.   ELEMENT #1: AS A MATTER OF LAW, A CREDIT BYLINE WHICH ATTRIBUTES THE NAME OF THE PHOTOGRAPHER QUALIFIES AS CMI .......................................................................... 44

B.   ELEMENT #2: GETTY DISTRIBUTED THE INFRINGING WORKS HAVING REASON TO KNOW THAT CMI WAS REMOVED OR ALTERED ........................................................................... 47

C.   ELEMENT #3: GETTY HAD REASONABLE GROUNDS TO KNOW THAT REMOVAL WOULD FACILITATE OR ENABLE COPYRIGHT INFRINGEMENT ......................................................... 56

**POINT IV: WITH RESPECT TO ANY PHOTOGRAPH THAT PLAINTIFFS HAVE NOT PRODUCED EVIDENCE OF OWNERSHIP AS PART OF THEIR PRINCIPAL BRIEF, PLAINTIFFS WITHDRAW SUCH CLAIMS WITHOUT PREJUDICE ........................................................................... 58**

CONCLUSION ......................................................................................................... 59

## **TABLE OF AUTHORITIES**

## **CASES**

*Agence France Presse v.  Morel*,
    769 F. Supp.2d 295, 305–06 (S.D.N.Y. 2011) ................................................................ passim

*Allstate Inc. Co. v. Horowitz*,
    118 Misc.2d 787, 461 N.Y.S.2d 218 (Civ.Ct. N.Y.1983) ........................................ 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................. 8, 9

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
    931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (Cote, J.) .................................... 10, 35

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
    821 F.3d 297, 307 (2d Cir. 2016)........................................................................ 17

*BanxCorp v. Costco Wholesale Corp.*,
    723 F.Supp.2d 596, 609 (S.D.N.Y. 2010) .......................................................... 43, 56

*Bourne v. Walt Disney Co.*,
    68 F.3d 621, 629 (2d Cir.1995)........................................................................... 19

*Brower v. Nydic, Inc.*,
    1 F. Supp. 2d 325, 327 (S.D.N.Y. 1998) ............................................................ 19

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121, 130 (2d Cir. 2008).......................................................................... 34

*Charles E. Beard, Inc. v. Cameronics Tech. Corp.*,
    729 F. Supp. 528, 531 (E.D. Tex. 1989), *aff'd sub nom. Charles E. Beard, Inc. v. McDonnell Douglas Corp.*, 939 F.2d 280 (5th Cir. 1991).......................................................... 17

*Cifra v. G.E. Co.*,
    252 F.3d 205, 216 (2d Cir. 2001).......................................................................... 9

*Citizens Banking Co. v. McKittrick*,
    No. 90 CIV. 2532 (JSM), 1991 WL 79153, at *2 (S.D.N.Y. May 6, 1991)........................... 19

*D'Amico v. City of N.Y.*,
    132 F.3d 145, 149 (2d Cir.1998)........................................................................ 8

**CASES** *(continued…)*

*Davis v. Blige,*
    505 F.3d 90, 100 (2d Cir. 2007)................................................................ 10

*DeCarlo v. Archie Comic Publ'ns, Inc.,*
    127 F.Supp.2d 497, 509 (S.D.N.Y.2001) ............................................... 34

*EMI Christian Music Group, Inc. v. MP3tunes, LLC,*
    844 F.3d 79, 89 (2d Cir. 2016)............................................................... 34

*Fischer v. Forrest,*
    No. 14 Civ. 1304 (PAE), 2015 WL 195822, at *9 (S.D.N.Y. Jan. 13, 2015).................... passim

*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.,*
    807 F.2d 1110, 1113 (2d Cir.1986).......................................................... 34

*Friedman v. Live Nation Merch., Inc.,*
    833 F.3d 1180, 1187 (9th Cir. 2016) ..................................................... passim

*Fujitsu Ltd. v. Fed. Express Corp.,*
    247 F.3d 423, 428 (2d Cir.2001)................................................................ 8

*Gattoni v. Tibi, LLC,*
    254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) ........................................... 43

*Graham v. James,*
    144 F.3d 229, 236 (2d Cir. 1998).............................................................. 10

*Hayes v. N.Y. City Dep't of Corr.,*
    84 F.3d 614, 619 (2d Cir.1996)................................................................... 8

*Hirsch v. CBS Broad. Inc.,*
    No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017) ...................... 46

*In re DDAVP Direct Purchaser Antitrust Litig.,*
    585 F.3d 677, 693 (2d Cir. 2009)........................................................... 44

*In re Tri-Star Techs. Co., Inc.,*
    260 B.R. 319, 327 (Bankr. D. Mass. 2001) ........................................... 12

*International Customs Associates, Inc. v. Ford Motor Co.,*
    893 F.Supp. 1251, 1256 n. 3 (S.D.N.Y.1995) ...................................... 18

**CASES** *(continued…)*

*Israel v. Chabra,*
 537 F.3d 86, 97 (2d Cir. 2008) .................................................................. 12

*Janik v. SMG Media, Inc.,*
 No. 16-civ-7308-JGK-AJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) ............. 43, 46

*Jeffreys v. City of New York,*
 426 F.3d 549, 553–54 (2d Cir. 2005) ........................................................... 7

*Keane Dealer Serv., Inc. v. Harts,*
 968 F.Supp. 944, 948 (S.D.N.Y. 1997) ......................................................... 35

*L.A. Printex Industries, Inc. v. G&G Multitex, Inc.,*
 No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010) .................... 33

*Leutwyler v. Royal Hashemite Court of Jordan,*
 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) .................................................... 19

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,*
 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014) ............................................... 46

*Marvel Characters, Inc. v. Simon,*
 310 F.3d 280, 292 (2d Cir.2002) ................................................................ 35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..................................... 8

*Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.),*
 585 F.3d 677, 692–93 (2d Cir.2009) ............................................................ 44

*Miller v. Glenn Miller Productions, Inc.,*
 454 F.3d 975, 988 (9th Cir. 2006) .............................................................. 33

*Moses v. Apple Hosp. REIT Inc.,*
 No. 14CV3131DLISMG, 2016 WL 8711089, at *6 (E.D.N.Y. Sept. 30, 2016) .................... 17

*Murphy v. Millennium Radio Grp. LLC,*
 650 F.3d 295, 305 (3d Cir. 2011) ............................................................... 46

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.,*
 315 F.3d 171, 175 (2d Cir. 2003) ............................................................... 7

*Pers. Keepsakes, Inc. v. Personaliziationmall.com, Inc.,*
 No. 11-CV-5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) ............................... 45

## CASES *(continued…)*

*Playboy Enterprises Int'l Inc. v. Mediatakeout.com LLC,*
   2016 WL 1023321, at *4 (S.D.N.Y. Mar. 8, 2016)." ............................................ 45

*Primex Int'l Corp. v. Wal-Mart Stores, Inc.,*
   89 N.Y.2d 594, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997)................................... 19

*Psihoyos v. Pearson Educ., Inc.,*
   855 F. Supp. 2d at 129 ........................................................................................ 35

*Republic of Ecuador v. Chevron Corp.,*
   638 F.3d 384, 400 (2d Cir.2011)......................................................................... 35

*Rule v. Brine, Inc.,*
   85 F.3d 1002, 1011 (2d Cir.1996)......................................................................... 8

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,*
   642 F.Supp.2d 167, 194 (S.D.N.Y.2009) .............................................................. 34

*Slater v. Emerson,*
   60 U.S. 224, 237, 15 L. Ed. 626 (1856)................................................................ 18

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,*
   211 F.3d 21, 25 (2d Cir. 2000)............................................................................. 10

*Trans Sport, Inc. v. Starter Sportswear, Inc.,*
   964 F.2d 186, 188 (2d Cir.1992)........................................................................... 8

*United States v. Rem,*
   38 F.3d 634, 644 (2d Cir.1994)............................................................................. 8

*Ward v. Nat'l Geographic Soc.,*
   208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002) .......................................................... 44

*Zalewski v. Cicero Builder Dev., Inc.,*
   754 F.3d 95, 107 (2d Cir. 2014)........................................................................... 43

## STATUTES

17 U.S.C. § 1202(a) ................................................................................................... 44

17 U.S.C. § 1202(b) .......................................................................................... passim

17 U.S.C. § 1202(c) ................................................................................................... 45

17 U.S.C. § 204(a) ..................................................................................................... 10

**OTHER AUTHORITIES**

S. REP. 105-190 at 35 (1998) ................................................................................... 46

**TREATISES**

*Nimmer on Copyright* § 10.08 (2001)) ....................................................................... 19

Plaintiffs respectfully submit this memorandum of law in opposition to Defendant Getty Images (US), Inc. ("Getty" or Defendant")'s motion for summary judgment. For the reasons set forth below, Getty's motion should be denied.

## INTRODUCTION

Getty primarily argues that it is immunized from liability for copyright infringement (and by extension, for any DMCA violation) because Getty was licensed to re-publish the photographs at issue in this litigation (the "Photographs").  Getty contends that "the claimed infringements in this case are not actionable because they were licensed."  More specifically, Getty claims that it "was authorized to ingest and license each of the 47,048 photographs at issue . . . because each of them was added by Zuma to the NewSport collection."  And as result of a "subsequent license transaction between NewSport and Getty Images for NewSport's entire collection, Getty Images lawfully came to possess the rights to display and license the images…." [D's Memo, Dkt. # 81, p. 6 of 50]

Here's the fatal problem with Getty's license defense: the record shows that Getty never entered into a licensing transaction with Newsport (or Newsport Photography, Inc.).  So its entire defense is merely a charade.  Moreover, when Getty acquired some of Corbis' assets via its transaction with third party United Glory International Ltd., it elected not to assume Corbis' contracts.  Instead, Getty opted to enter into novel agreements with direct contributors, such as Les Walker who maintains his own personal archive of photographs (separate and apart from Newsport).  As such, Getty cannot possibly rely on Corbis' contracts with NewSport to establish its license defense.  Having failed to "step into the shoes" of Corbis vis-à-vis Corbis' relationship

with Newsport, and having failed to contract with Newsport (or Zuma) directly, there is simply

no evidence to support Getty's argument that it was authorized to use the Photographs.

As a side-by-side comparison of signature lines demonstrates, in the Image

Representation Agreements between Corbis and NewSport, Les Walker signed the agreement on

behalf of NewSport.  But when it came time to sign the Getty Images Contributor Agreement,

Les Walker signed on behalf of himself, in *his individual capacity*, with the understanding that

Getty would be representing Walker's own personal collection of photographs.

**Amendment to Image Representation Agreement b/w Corbis and NewSport Photography, Inc. , dated April 3, 2006 [Dkt. #111-7]**

ACKNOWLEDGED AND AGREED,

CORBIS CORPORATION

By: _____

Print Name: _Ross Sutherland_

Title: _Chief Creative Officer_

Date: _May 20, 2006_

NEWSPORT PHOTOGRAPHY INC.

By: _____

Print Name: _Les Walker_

Title: _Director_

Date: _5/1/2006_

**Getty Images Contributor Agreement b/w Getty and Les Walker, dated April 4, 2016 [Dkt. #111-20]**

| COMMERCIAL TERMS | |
|---|---|
| Your name and address: | Les Walker located at United States |
| Your email address: | Walkerskyranch@gmail.com |

I have reviewed and agree to the terms of this Getty Images Contributor Agreement v. 5.1:

Les Walker

Authorized Representative signature (Digital Signature)

Les Walker

Print name of Authorized Representative

April 4, 2016

Date (day/month/year)

Print title or capacity signing in if applicable

With respect to Plaintiffs' DMCA claims for Getty's unlawful alteration of copyright management information ("CMI"), a reasonable jury can find the requisite intent to establish Getty's violations.  The record evidence makes clear that the original CMI displayed on Zuma's website was knowingly altered and that Getty had reasonable grounds to know that such alteration would enable or facilitate copyright infringement.  As such, Getty's motion to dismiss Plaintiffs' claims under the DMCA should be denied.



| Original CMI – Zuma | Altered CMI - Getty |
|---|---|

## UNCONTROVERTED FACTS

### Plaintiff Zuma Press, Inc. ("Zuma")

Plaintiff Zuma has exclusive relationships with the following photographers whose photographs are subjects of this litigation: Altaf Zargar, Andrew Gyopar, Aristidis Vafeiadakis, Brian Cahn, Bryan Smith, Craig Durling, Dan Anderson, David Becker, David Bukach, Erik Lesser, Gary Dwight Miller, Hector Acevedo, Howard Sayer, Jason Moore, Jed Conklin, Jeffrey Geller, Jeremy Breningstall, Jim Dedmon, Jonathan Alcorn, Mark Bialek, Mark Makela, Mark Sobhani, Marty Bicek, Mary Calvert, Matt Roberts, Mike Fuentes, Paul Kitagaki, Pete Marovich, Ralph Lauer, Rick Osentoski, Ricky Fitchett, Ringo Chiu, Ron Biljsma, Ruaridh Stewart, Scott

Mitchell, Sergei Bachalov, Theodore Liasi, Timothy Hale, Wally Nell, David Stephenson

[Plaintiffs' Statement Pursuant to Local Rule 56.1 (hereafter "56.1"), ¶¶ 49-246].

Zuma's exclusive relationships are characterized by Exclusive Agency Representation

Agreements, which name Zuma as the exclusive licensee. [56.1, ¶¶ 49, 54, 59, 65, 69, 74, 79, 84,

89, 94, 99, 104, 109, 114, 119, 124, 129, 134, 144, 149, 153, 158, 163, 168, 173, 178, 183, 188,

193, 198, 203, 208, 213, 218, 223, 227, 232, 237, 242].  In addition to the contractual language

that establishes an exclusive relationship between Zuma and its exclusive photographers, Zuma

also provides press credentials and exclusive access to events and venues. [*Id.*]  The clear

contractual language in combination with Zuma's overt acts demonstrate an exclusive

relationship as an exclusive licensee.

### Named Individual Photographer Plaintiffs

Several named plaintiffs own the rights to their photographs outright: Robert Backman,

Anthony Barham, Charles Baus, Andrew Dieb, Manny Flores, Louis Lopez, John Middlebrook,

Christopher Szagola, Duncan Williams.  [56.1 ¶¶ 13-48] These named plaintiffs are

authors/creators of the photographs that are subjects of this litigation. [56.1 ¶¶ 13, 17, 21, 25, 29,

33, 37, 41, 45]

### Plaintiffs Tiyu Beijing Culture Media Co. Ltd. ("Osports") and Action Sports

Plaintiffs OSports owns its respective copyrights by virtue of work-for-hire contracts

with eight photographers: Mao Zhang, Tongzhou Zhang, Ruishi Cheng, Meilin Xiao, Yijiang

Guo, Jiang Wang, Zichen Cao, and Yujun Ruan  [56.1 ¶¶ 247-249]

Plaintiff Action Sports owns its respective copyrights by virtue of employment

relationships with eight photographers: Ashley R. Dickerson, Crystal A. Macleod, Walter G.

Arce, Sr., Stephen A. Arce, Jerome G. Hamilton, Michael G. Dinovo, John F. Moore and Stephen Houchen.  [56.1 ¶¶ 252-254]

### Copyright Registrations of the Photographs

All photographs at issue in this litigation have been registered with the U.S. Copyright Office according to the statutory requirements and are on deposit with the applicable certificates [*See* 56.1 ¶¶ 13-14, 17-18, 21-22, 25-26, 29-30, 33-34, 37-38, 41-42, 45-46; 50-51, 55-56, 60-61, 66-67, 70-71, 75-76, 80-81, 85-86, 90-91, 95-96, 100-101, 105-106, 110-11, 115-16, 120-21, 125-26, 130-31, 135-36, 145-46, 150-51, 154-55, 159-60, 164-65, 169-70, 174-75, 179-80, 184-85, 189-90, 194-95, 199-200, 204-05, 209-10, 214-15, 218-19, 224-25, 228-29, 233-34, 238-39, 243-44; see also Richard Liebowitz Declaration, Exhibits 2 thru 147].

### Unauthorized Copying

It is undisputed that Defendant copied the photographs that are at issue in this litigation in their entirety.  [56.1 ¶¶ 15, 19, 23, 27, 31, 35, 39, 43, 47, 52, 57, 62, 68, 72, 77, 82, 87, 92, 97, 102, 107, 112, 117, 122, 127, 132, 137, 142, 147, 152, 156, 161, 166, 171, 176, 181, 186, 191, 196, 201, 206, 211, 216, 221, 226, 230, 235, 240, 245, 250, 255]  It is further undisputed that Defendant did not have a license for these photographs from any of the Plaintiffs.  [56.1 ¶¶ 16, 20, 24, 28, 32, 36, 40, 44, 48, 53, 58, 63, 73, 78, 83, 88, 93, 98, 103, 108, 113, 118, 123, 128, 133, 138, 143, 148, 157, 162, 167, 172, 177, 182, 187, 192, 197, 202, 207, 212, 217, 222, 226, 231, 236, 241, 246, 251, 256]  It remains uncontested that Defendant did not have permission, consent, nor any other kind of authorization from any of the Plaintiffs to copy, display, distribute, offer to license and/or license any of the photographs at issue here.  [*Id.*]

### Defendant's Purported Defenses

#### Les Walker/ NewSports

For all times pertinent to this action, Les Walker was the President of NewSport Photography Inc. ("NewSport").  [Declaration of Les Walker (hereafter "Decl. Walker"), Walker Exhibit 1, ¶2].  NewSport had agreement with Corbis Corporation ("Corbis") for distribution of its collection.  [Decl. Walker, 6].  While contemplating selling NewSport to prospective buyers, Les Walker worked for Zuma as an independent contractor from September 2011 to January 2013.  [Decl. Walker 12, 14, 22].  At Zuma, Les Walker was responsible for the credentialing of photographers.  During the term of his contract work with Zuma, Zuma uploaded the photographs that are the subjects of this litigation via Newsport path to Corbis' file-transfer-protocol ("FTP") for distribution under the NewSport-Corbis agreement. [Decl. Walker 16].  In October 2011 Walker provided Zuma with the Corbis FTP instructions which allowed Zuma to upload its photographs via NewSport's path to Corbis.  [Decl. Walker 17].

In January 2013 Les Walker and Zuma parted ways when Walker did not receive the requested raise.  Decl. Walker 22.  Soon thereafter, Zuma asked Corbis to remove the photographs submitted via NewSport path.  [56.1, ¶ 3, 4]**.**  Corbis informed Zuma that it needed permission from NewSport in order to remove the photographs. Les Walker also requested that the Zuma photographs be removed from Corbis.  [Decl. Walker 34]. Les Walker understood that the Zuma photographs were removed from Corbis.  [56.1, ¶ 6]

At some point Zuma noticed that there were a few stragglers still displayed on Corbis' website.  [56.1, ¶ 3].  Zuma promptly notified Corbis in hopes that these few photographs were mere exceptions and that Corbis had complied with its requests to remove content that was once uploaded via NewSport path.

**Acquisition of Corbis**

In January 2016, Defendant acquired the rights to license Corbis assets through a straw

purchase by a Chinese company, Victory Glory International Limited ("VCG").   [Defendant's

Memorandum of Law in Opposition to Motion for Leave to Amend the Second Amended

Complaint, Dkt. 47, p.3.]. Defendant hurriedly executed contributor agreements with various

purported representatives of collections it found desirable.   One such contributor agreement was

entered into with Les Walker.   Les Walker understood that only his own images would be

subject to the agreement.  [56.1, ¶ 5, 6]. He had no reason to believe that Zuma's photographs

that were once uploaded via NewSport path to Corbis were still part of NewSport collection.

Despite this fundamental misunderstanding about which photographs were included in the

NewSport collection, Defendant and Les Walker signed the contributor agreement.  Defendant

signed a contributor agreement with Walker, even despite internal memos that placed Les

Walker on the so-called "DO NOT SIGN" list. [56.1, ¶ 12].   Several employees of the

Defendant were aware of Les Walker's placement on this internal list.  Despite ample warnings,

and despite the obvious appearance of the photographs as belonging to Zuma and not to

NewSport or Les Walker, Defendant haphazardly ingested the assets.  [56.1, ¶ 11].   Neither

Les Walker, NewSport nor Corbis had the right to authorize the transfer of this property to the

Defendant.  As soon as May 4, 2016 Zuma notified the Defendant of the infringement.  [56.1, ¶

1].

## **LEGAL STANDARD**

When considering a motion for summary judgment, a court must construe the evidence in

the light most favorable to the nonmoving party, drawing all inferences in that party's

favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (citing *Niagara

Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir. 2003)). "[T]he judge

must ask . . . not whether . . . the evidence unmistakably favors ones side or the other but whether

a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996); *see also Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem,* 38 F.3d 634, 644 (2d Cir.1994) (same).

However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 (emphasis added). To defeat summary judgment, therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001) (internal quotation marks omitted); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir.1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise") (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir.1998).

"In ruling on a motion for summary judgment, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing summary judgment." *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (citing

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

## **ARGUMENT**

### **POINT I:      GETTY HAS FAILED TO PRODUCE ANY EVIDENCE SHOWING THAT IT WAS AUTHORIZED TO USE THE PHOTOGRAPHS**

Getty primarily argues that it is immunized from liability for copyright infringement (and

by extension, for any DMCA violation) because Getty was licensed to re-publish the

Photographs. [D's Memo, Dkt. # 81, pp. 36-37 of 50]. Getty contends that "the claimed

infringements in this case are not actionable because they were licensed."  More specifically,

Getty claims that it "was authorized to ingest and license each of the 47,048 photographs at issue

(the "Photographs") because each of them was added by Zuma to the NewSport collection. [*Id.*

at p. 9 of 50]. And as result of a "subsequent license transaction between NewSport and Getty

Images for NewSport's entire collection, Getty Images lawfully came to possess the rights to

display and license the images…. [D's Memo, Dkt. # 81, p. 6 of 50]

Here's the fatal problem with Getty's license defense: the record shows that Getty never

entered into a licensing transaction with Newsport.  Moreover, when Getty acquired some of

Corbis' assets via its transaction with third party United Glory International Ltd., it elected not to

assume Corbis' contracts.  Instead, Getty opted to enter into novel agreements with direct

contributors, such as Les Walker.  As such, Getty cannot possibly rely on Corbis' contracts with

NewSport to establish its license defense. Having failed to "step into the shoes" of Corbis vis-à-

vis Corbis' relationship with Newsport, and having failed to contract with Newsport (or Zuma)

directly, there is simply no evidence to support Getty's argument that it was authorized to use the

Photographs.

## A.   BECAUSE GETTY'S LICENSE DEFENSE RELIES ON EXCLUSIVITY, IT CAN ONLY BE SUPPORTED BY EVIDENCE OF WRITTEN CONTRACTS

While "it is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work, *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), "[t]he burden of proving that a license exists falls on the party invoking the defense." *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537, 561-62 (S.D.N.Y. 2013) (Cote, J.) (citing *Graham*, 144 F.3d at 236). A nonexclusive license can be granted orally or it can be implied from conduct. *Associated Press,* 931 F.Supp.2d at 561-62.  In contrast, "exclusive license agreements must be in writing." *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) (citing 17 U.S.C. § 204(a)). "Copyright licenses are generally construed according to principles of contract law." *Great Minds v. Fedex Office & Print Servs., Inc.,* 886 F.3d 91, 94 (2d Cir. 2018)

Here, Getty claims that "Getty was granted an exclusive license in April 2016 by Newport to 'distribute, market, sublicense, copy, reproduce, display, exhibit,' etc. the photographs at issue in this litigation." [Dkt. #81, p. 36 of 50]  Further, the Getty-Walker Agreement, which is the primary contract upon which Getty relies to establish its license defense, provides that "All Content submitted to Getty Images is on a Content exclusive basis." [Dkt. # 111-20, Exclusivity Section, p. 2 of 6]  Finally, Getty's principal brief does not argue an implied license, or otherwise suggest that a license can be based on oral representations or implied from conduct.[1]  Because Getty's license defense falls under the ambit of 17 U.S.C. § 204(a), it can only be resolved through the analysis of written contracts on the record.

---

[1]  In any event, the Second Circuit has clarified that "courts have found implied licenses only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.'" *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 211 F.3d 21, 25 (2d Cir. 2000). There are no facts on record to suggest that any of the photographs at issue were created at the behest of Getty.

**B.      GETTY NEVER ENTERED INTO A CONTRACT WITH NEWSPORT**

Getty falsely claims that "Getty was granted an exclusive license in April 2016 by Newsport to 'distribute, market, sublicense, copy, reproduce, display, exhibit,' etc. the photographs at issue in this litigation." [Dkt. #81, p. 36 of 50]  As evidence to support this assertion, Getty cites to a licensing agreement between Getty and an *individual* named Les Walker.  [Dkt. #111-20, Bloom Decl. Ex. T. §4.4] (the "Getty-Walker Agreement").

**1.   The Getty-Walker Agreement Makes No Reference to Newsport**

Newsport Photography, Inc. ("Newsport") was a for-profit business corporation organized under the laws of the State of Florida on July 22, 1999. [Second Declaration of Richard P. Liebowitz, dated July 20, 2018 ("2d Liebowitz Declr."), ¶ 5, Ex. A]  However, an administrative dissolution of NewSport was filed on September 23, 2011. [*Id.*]  There is no reference whatsoever to Newsport Photography, Inc., or its d/b/a NewSport, anywhere on the face of the Getty-Walker Agreement.  For example, the Getty-Walker Agreement's recital section does not state that the contracting party is "Newsport Photography, Inc.," "Newsport," "Les Walker d/b/a Newsport," nor "Les Walker c/o Newsport."  [Dkt. # 111-20, p. 2 of 6] Similarly, the contract's signature line omits any reference to Newsport.  [*Id.*, p. 6 of 6]

The Getty-Walker Agreement's silence with respect to NewSport stands in direct contrast to the three image representation agreements between Corbis and NewSport, each of which contains an express reference to Newsport on the face of the instruments.  *See:* (1) the agreement b/w Corbis and Newsport Photography, Inc., dated January 1, 2005 [Dkt. # 111-6 (COR00037-42)]; (2) the amended agreement b/w Corbis and Newsport Photography, Inc., dated April 3, 2006 [Dkt. # 111-7 (COR00034-36); and (3) the agreement b/w Corbis and Newsport, dated March 2, 2012 [Dkt. # 111-17(COR 17-24)] (collectively, the "Image Representation

11

Agreements"). Unlike the Getty-Walker Agreement, which only lists Getty and Walker as parties to the contract, all three Image Representations Agreements between Corbis and Newsport actually list Newsport or Newsport Photography, Inc. as a party to those contracts. Further, on the face of the Image Represenation Agreements, Les Walker signed on behalf of Newsport (not on behalf of himself).

### 2.  Les Walker Signed the Getty-Walker Agreement in *His Individual Capacity*

"The most obvious indicator of intent is the form of the signature . . . . [W]here individual responsibility is demanded the nearly universal practice is that the officer signs twice - once as an officer and again as an individual." *Israel v. Chabra*, 537 F.3d 86, 97 (2d Cir. 2008) (citation omitted). But where a corporate entity is not disclosed anywhere on the face of the instrument, it must be presumed that the corporate officer has entered into the agreement in his individual capacity. *See, e.g., Allstate Inc. Co. v. Horowitz,* 118 Misc.2d 787, 461 N.Y.S.2d 218 (Civ.Ct. N.Y.1983) (holding that an individual doctor could not bind his professional services corporation to a release signed by, and naming only, the doctor in an individual capacity because the doctor could not be considered representative or derivative of the corporation); *In re Tri-Star Techs. Co., Inc.*, 260 B.R. 319, 327 (Bankr. D. Mass. 2001) ("Although Downes may have had the power to bind the Debtor in a contract with Pitocchelli, Downes signed the 1993 Memorandum in his individual capacity, not in his capacity as agent or corporate officer of the Debtor.")

Here, the form of the signature on the Getty-Walker Agreement [Dkt. #111-20, p. 6 of 6] clearly shows that Les Walker signed the Getty-Walker Agreement as an authorized representative of himself - *solely in his individual capacity.* Les Walker testified that he is a professional photographer in his own right who received a Bachelor's Degree in photography. [Dkt. # 146, Walker Decl., ¶¶ 2-3] Walker also maintains a separate catalog of photographs in

his own name which he took before joining Newsport.  [*Id.* at ¶ 10]  Walker further testified that

he entered into an agreement with Corbis in his individual capacity, separate and apart from

Newsport.  [Dkt. # 146, Walker Declr., ¶ 11]  As such, there is a clear distinction in the

transactional documents between contracting with Les Walker in his individual capacity, on the

one hand, versus contracting with NewSport on the other.  The following table illustrates:

**FORM OF SIGNATURES re: Relevant Contracts**



**Image Representation Agreement b/w Corbis and NewSport Photography, Inc., dated January 1, 2005 [Dkt. #111-6]**



**Amendment to Image Representation Agreement b/w Corbis and NewSport Photography, Inc. , dated April 3, 2006 [Dkt. #111-7]**



13

**Request for Redirection of Royalty Payments b/w NewSport and Zuma, dated November 3, 2011 [Dkt. # 111-25]**

| NewSport | Zuma Press, Inc. |
|---|---|
| By (Authorized Signature) | By (Authorized Signature) |
| Les Walker | Scott McKEEROWN |
| Name | Name |
| 951 - 213 9035 | 948 481 3747    310 780 1552 |
| Phone          Cell | Phone          Cell |
| Email: WAlker @ NewSportPhoto.c. | Email: Scott @ ZUMApress.cn |
| Date: 11/3/11 | Date: 11/4/11 |

COR 00025

**Representation Agreement b/w Corbis and NewSport, dated March 2, 2012 [Dkt. # 111-17]**

Agreed and Accepted:

| CORBIS CORPORATION | MEDIA PARTNER |
|---|---|
| 250 Hudson Street, 4th Floor | NewSport |
| New York, NY 10013 | P.O. Box 4126 |
| Tel: (212) 777-6200 | Idyllwild, CA 92549 |
| Fax: (212) 375-7700 | Email: walkerskyranch@gmail.com |
| | |
| By (Signature) | By (Signature) |
| ANN CAMCIANO | Les WAlker |
| Name (Print) | Name (Print) |
| Director, N&E | President |
| Title | Title |
| 4/9/12 | 3 - 3 - 2012 |
| Date | Date |
| | 65 - 0 93837 |
| | Taxpayer ID Number (Required for U.S. Residents) |
| | 951 213 9035 |
| | Phone          Fax |
| | NewsporT |
| | Preferred Name for Credits |

14

**Getty Images Contributor Agreement b/w Getty and Les Walker, dated April 4, 2016 [Dkt. #111-20]**

COMMERCIAL TERMS

| | |
|---|---|
| Your name and address: | Les Walker located at United States |
| Your email address: | Walkerskyranch@gmail.com |

I have reviewed and agree to the terms of this Getty Images Contributor Agreement v. 5.1:

Les Walker                                                          April 4, 2016

Authorized Representative signature (Digital Signature)    Date (day/month/year)

Les Walker

Print name of Authorized Representative               Print title or capacity signing in if applicable

As the foregoing table illustrates, in every case where NewSport entered into a written agreement, the name NewSport or NewSport Photography, Inc. was expressly identified and disclosed on the face of the instrument at or above the signature line.  The only exception is the Getty-Walker Agreement which makes no reference whatsoever to NewSport. [Dkt. #111-20]

Indeed, Walker himself does not even know whether the Getty-Walker Agreement includes NewSport and surmised that the contract may only cover Walker's individual archive. At Walker's deposition, defense counsel presented Walker with a copy of the Getty-Walker Agreement and asked: "This is the contract you signed with Getty Images for licensing the Newsport archive?"  Walker wasn't certain, answering: "It could be, because there was a confusion between my Les Walker archive and the NewSport archive."  [2d Liebowitz Declr., Ex. C (Walker Dep. Tr. 47:16-21)].  Walker later testified in his deposition that "there was a little bit of confusion basically on my part, too, because I was concerned about my personal images and NewSport images being mixed together." [*Id.* at 59:17-21].  In short, any

15

such confusion must be resolved against Getty, a sophisticated party who would have listed NewSport in the contract had it sought to acquire NewSport assets.

Further, Getty's longstanding employee, Chris Eisenberg, also testified at her deposition that the reason why the Photographs displayed on Getty's website attributed such works to Les Walker (i.e. "Photo by Les Walker"), as opposed to NewSport, is because this attribution was directly correlated to Getty's 2016 contributor agreement with Les Walker, who is himself a photographer.

> Q: How did this line, "Photo by Les Walker/Corbis by Getty Images" appear in this caption?
>
> A: . . . [W]hen we evaluated the database on the test assets that we received from Corbis, and based on what Corbis told us about what was in the data, when we looked at those we represented at the end of the caption <u>the information about the photographer who that contract was linked to.  You will see at top there it says, "Credit Les Walker/contributor." That represents the Getty contract that image is linked to</u>."

[*See* 2d Liebowitz Decl., Ex. F (Eisenberg Tr., p 159:16-160:2)] (underline added). Accordingly, even Getty's own employees admit that the Getty-Walker Agreement was intended to only cover photographs from Les Walker's individual archive.  This is particularly true given that the final attribution used by Getty on its website credited Les Walker as the photographer – <u>not</u> Newsport.

Despite the fact that the Getty-Walker Agreement makes no reference to NewSport, and despite the fact that Les Walker entered into the licensing deal with Getty in his individual capacity, Getty seeks to re-write the contract so as to bind a third-party, Newsport, which was neither a contracting party nor signatory to the Getty-Walker Agreement.  Clearly, if a sophisticated, largescale corporation such as Getty intended to enter into a licensing deal with Newsport in April 2016, it would have insisted that Newsport was listed somewhere on the face

of the contract.  This is particularly true given that there were two separate archives of

photographs, one for Newsport and one for Les Walker. [Walker Dep. Tr. 47:16-21]

By its own terms, the Getty-Walker Agreement is governed by New York law. [Dkt.

#111-20, Bloom Decl. Ex. T. §4.4]  Under New York law, courts are "not free to rewrite into

a contract conditions the parties did not insert by adding or excising terms under the guise of

construction."  *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821

F.3d 297, 307 (2d Cir. 2016) (citing *Slamow v. Del Col*, 174 A.D.2d 725, 726, 571 N.Y.S.2d

335, 336 (2d Dep't 1991)); *see also Moses v. Apple Hosp. REIT Inc.*, No. 14CV3131DLISMG,

2016 WL 8711089, at *6 (E.D.N.Y. Sept. 30, 2016) ("[W]e have stated on a number of

occasions that we do not rewrite contracts to insert provisions that have been omitted by

the parties.").[2]  Accordingly, the Court should decline Getty's invitation to re-write the Getty-

Walker Agreement to insert NewSport as a party to the contract.

### 3.     Even if Les Walker Signed the Getty-Walker Agreement as a Purported Agent of Newsport, There is No Evidence That he Was Authorized to Do So As Of April 2016

"A contract executed by an unauthorized agent, who makes the agreement on behalf of

another, not in his individual capacity, is not enforceable."  *Charles E. Beard, Inc. v. Cameronics*

*Tech. Corp.*, 729 F. Supp. 528, 531 (E.D. Tex. 1989), *aff'd sub nom. Charles E. Beard, Inc. v.*

*McDonnell Douglas Corp.*, 939 F.2d 280 (5th Cir. 1991) (finding agreement unenforceable

where there was no evidence that corporate employees had actual or apparent authority

---

[2] *See also Bar–Ayal v. Time Warner Cable Inc.,* No. 03 CV 9905, 2006 WL 2990032, at * 14 n. 25 (S.D.N.Y. Oct.16, 2006) (stating that under New York law, a court is "not free to alter the plain terms of an agreement or to strain language beyond its reasonable and ordinary meaning."); *In re World Trade Ctr. Disaster Site Litig.,* 2014 WL 2565821, at *6 (2d Cir. June 9, 2014) ("Courts should be 'extremely reluctant,' . . . to imply a term that 'the parties have neglected to specifically include.'"); *Charter Realty & Dev. Corp. v. New Roc Assocs., L.P.,* 293 A.D.2d 438, 439, 739 N.Y.S.2d 456 (N.Y.App. Div.2d Dep't 2002) ("[A] court should not, under the guise of contract interpretation, imply a term which the parties themselves failed to insert . . . ."); *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 92 (S.D.N.Y. 1974) ("A court may not rewrite into a contract conditions the parties did not insert. The intent of the parties must be distilled from the terms of the written agreement itself.").

to bind company to a contract).  Further, "a contract cannot bind a non-party even if it is an intended third-party beneficiary." *International Customs Associates, Inc. v. Ford Motor Co.,* 893 F.Supp. 1251, 1256 n. 3 (S.D.N.Y.1995); *see also Slater v. Emerson*, 60 U.S. 224, 237, 15 L. Ed. 626 (1856) ("The defendant was President of the Boston and New York Central Railroad - a stockholder and a bondholder in the same; but it does not appear that he had any authority to bind the company, as he entered into the contract in his individual capacity.")

Here, Les Walker testified at his deposition that he wasn't sure whether the Getty-Walker Agreement covered the Newsport archive or Les Walker's own individual archive.  [2d Liebowitz Declr., Ex. C (Walker Dep. Tr. 47:16-21)].  However, he states in his declaration that even though he signed the Getty-Walker Agreement in his individual capacity, and even though the Getty-Walker Agreement makes no reference whatsoever to NewSport, he intended to bind NewSport to the Getty-Walker Agreement.  [Dkt. # 146, Walker Declr., ¶ 37]  But there is no evidence that, as of April 2016, Walker had the authority to bind NewSport.  Indeed, the public record shows that NewSport Photography, Inc. was not even an active corporate entity as of April 2016. [2d Liebowitz Declr., Ex. G]  Walker also testified that he left the company in "mid-2016" (even though no such company even existed). [Dkt. # 146, Walker Declr., ¶ 2].  It is plausible, therefore, that Walker left Newsport before he even entered into the Getty-Walker Agreement.

Finally, it is axiomatic that Les Walker cannot convey to Getty more rights than he actually possesses.  *Davis,* 505 F.3d at 99 ("Early in the twentieth century, we stated in the copyright context the venerable principle of the law of property that, while an owner may convey any of his rights to others permanently or temporarily, he may not convey more than he owns.").

**4.    The Getty-Walker Agreement's Merger Clause Bars the Introduction of Parole Evidence Which Seeks to Modify or Contradict the Express Terms of the Contract**

"Principles of contract law are generally applicable in the construction of copyright . . . licenses and other transfers of rights." *Leutwyler v. Royal Hashemite Court of Jordan*, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) (citing 3 *Nimmer on Copyright* § 10.08 (2001)). As is generally the case with contracts, a court may interpret a contract as a matter of law, where the language of the document is unambiguous. *Bourne v. Walt Disney Co.,* 68 F.3d 621, 629 (2d Cir.1995).

Under New York law, a merger clause prohibits parole evidence to modify or contradict the express terms of the agreement. *Brower v. Nydic, Inc.*, 1 F. Supp. 2d 325, 327 (S.D.N.Y. 1998) (citing *Primex Int'l Corp. v. Wal-Mart Stores, Inc.,* 89 N.Y.2d 594, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997)).  Thus, the existence of a merger clause will "bar defendant's attempt to prove oral modification or his 'understanding' with regard to the nature of the obligation" and any "attempt to modify [an] agreement[], by reference to his alleged 'understanding' and oral representations, must be rejected." *Citizens Banking Co. v. McKittrick*, No. 90 CIV. 2532 (JSM), 1991 WL 79153, at *2 (S.D.N.Y. May 6, 1991).

Here, the Getty-Walker Agreement is unambiguous concerning the identity of the parties to the contract. Indeed, there are only two parties identified on the face of the instrument: Getty and Les Walker. Moreover, the Getty-Walker Agreement contains a merger clause which reads in relevant part: "The Agreement supersedes and cancels any previous agreements related to the distribution of Accepted Content.  This Agreement constitutes the entire agreement among the Parties relating to its subject matter and may not be amended, except (a) in writing . . ." [Dkt. # 111-20, § 4.1, p. 5 of 6].  Notwithstanding the existence of a merger clause in Getty's own contract, and despite the fact that the Getty-Walker Agreement makes no reference whatsoever to

19

Newsport, Getty seeks to circumvent the clear and unambiguous terms of the Getty-Walker Agreement by introducing evidence of Les Walker's "understanding" of the Getty-Walker Agreement.

For example, when Les Walker testified that, with respect to the Getty-Walker Agreement, "there was a confusion between my Les Walker archive and the NewSport archive" [2d Liebowitz Decl., Ex. C (Walker Dep. Tr. 47:16-21)], defense counsel followed up with the question: "Your intention was to license the NewSport archive to Getty Images?" Walker answered: "Yes, that's what I believe what I'm signing here." [*Id.* at 47:22-25].  But Walker's understanding of the Getty-Walker Agreement is barred by the parole evidence rule because there is no language appearing within the four corners of the Getty-Walker Agreement which shows that NewSport is a party to the contract.

Based on the foregoing, the Court should conclude that the Getty-Walker Agreement is nothing more than a contract between Getty, on the one hand, and an individual named Les Walker on the other.  Newsport is <u>not</u> a party to the contract.  Thus, Getty's core argument that the Getty-Walker Agreement grants Getty authorization to use photographs within the NewSport collection should be rejected as a matter of law.

## C.     GETTY ELECTED NOT TO ASSUME CORBIS' CONTRACTS WITH NEWSPORT

In its principal brief, Getty makes no attempt to argue that it assumed Corbis' contractual relationships with Newsport, namely the Image Representation Agreements [Dkt. #s 111-6; 111-7, 111-17].  This is because, with limited exceptions not applicable here, Getty intentionally sought to avoid assuming any of Corbis' contractual obligations with contributing photographers or agents.  Rather than "stepping into the shoes" of Corbis by assuming Corbis' obligations under the Image Representation Agreements, Getty sought to initiate its own contractual

relationships with contributors to Corbis.  That's why Getty entered into the Getty-Walker

Agreement in April 2016.

The fact that Getty had no intention of assuming Corbis' obligations is made clear on the

face of the Image Partner Distribution Agreement b/w Getty and United Glory International

Limited, dated January 25, 2016 [Dkt. # 111-19, Bloom Ex. S] (hereinafter, the "Getty-UGI

Agreement").  Under the terms of the Getty-UGI Agreement, UGI was positioned to acquire

ownership of and/or rights to the Corbis Brands and substantially all of the Content licensed

under or associated with the Corbis Platforms. [*Id.,* Recitals, p. 2 of 28].  Getty sought to

transition representation of certain Corbis Content directly to Getty Images.

Section 3 of the Getty-UGI Agreement, entitled "Migration of Content," prescribes a

protocol through which Getty intended to ingest Corbis' assets. The relevant portions of Section

3, which refer to UGI as "Licensor," read as follows (italics provided):

**3.1**     <u>Selection of Content</u>. In furtherance of the Licensor's grant of exclusive rights to Getty
Images in Section 2.1, Licensor and Getty Images will work together in good faith to accomplish, as soon
as possible (but in no event later than 180 days, subject to extension only for an Excused Delay as
provided in Section 3.7) after closing of the Corbis Transaction, *identification and review of all Corbis
Content*, and, to the extent accepted by Getty Images (in its sole discretion) migration of such Content to
Getty Images for placement into one or more Corbis Collections . . . .

**3.4**     <u>Corbis Contracts</u>. Licensor will handle contracts that it assumes or to which it is
otherwise a successor as a result of the Corbis Transaction (and/or will cause the Corbis Parties to handle
contracts that it does not assume or to which it is not otherwise a successor but that relate to the Corbis
Platforms, Corbis Content or related business) as follows:

3.4.1 *Licensor will terminate all Corbis channel partners and other resellers, and all
Corbis agent and representative agreements*, a complete and accurate list of which has been
provided by Licensor and is set forth on the attached Schedule 3.4.1, each as soon after closing of
the Corbis Transaction as possible in accordance with its terms. Licensor will keep Getty Images
updated on steps being followed in such termination.

3.4.2 As soon as reasonable practicable, *Licensor shall identify and use commercially
reasonable efforts to cause all Indirect Contributors to (i) sign-up as Direct Contributors
pursuant to Getty Images standard contributor or image partner agreements* and (ii) terminate
their respective contributor or image partner agreements with Licensor, provided, however, that
Licensor shall retain the right to extend existing agreements and enter into new agreements with
contributors and image partners solely in connection with exploitation outside of the Territory. In

support of such efforts, Licensor shall allow Getty Images staff to perform outreach and meetings, as appropriate, with Indirect Contributors . . . .

**3.8** **Liabilities.** For the avoidance of doubt, *Licensor shall assume and retain all responsibility for any and all liabilities arising from Corbis Content, Contributors, contracts, leases and other assets.* For Third Party contracts that Getty Images expressly assumes, or Contributors, customers or other Third Parties with whom Getty Images contracts directly as part of the transition described in this Section 3, Getty Images will be responsible under the assumed or new contracts on a going-forward basis only, for claims that arise after the applicable date of assumption or effective date of the applicable new contract. Without limiting the foregoing: (a) *Getty Images will have no liability or operational responsibility with regard to any Contributor of Corbis Content until such time as that Contributor becomes a Direct Contributor* (and then only for claims arising under the Getty Images Contributor Agreement after such time); and (b) Getty Images will have no liability with respect to any claims or obligations arising from or associated with the Archives or the related leases on or before assignment of the respective leases (including obligations to locate or return negatives or other materials to Contributors). Licensor will be responsible for all such pre-existing claims and obligations.

[Dkt. # 111-19, pp. 6-7 of 28] (italics added)

In sum, the aforementioned provisions of the Getty-UGI Agreement make crystal clear that Getty did <u>not</u> assume the Image Representation Agreements between Corbis and Newsport. This is because Getty did not want to assume or retain responsibility for Corbis' liabilities under such contracts. So instead, Getty contracted to initiate fresh agreements with Corbis' contributors. The problem, of course, is that Getty failed to enter into a new licensing agreement with Newsport or Newsport Photography, Inc. *See* Point I.A, *supra*. Getty simply entered into a contract with an individual named Les Walker, a photographer in his solo capacity who has no rights to any of the photographs at issue in this litigation.

Significantly, the Getty-UGI Agreement also required Getty to identify and review all photographs offered on Corbis' platform prior to migration of such content to Getty's website. [Dkt. # 111-19, § 3.1] Getty abjectly failed to do so with respect to any of the copyrighted works at issue here. For had Getty conducted such due diligence, as was contractually required, it never would have infringed Plaintiff's copyrights.

### D.    THE NOVEMBER 2011 ROYALTY REDIRECTION AGREEMENT PROVIDES FOR A TERM OF PAYMENT, NOT A GRANT OR ASSIGNMENT OF RIGHTS

Even though Getty elected not to assume Corbis' contracts with Newsport, Getty nevertheless argues that an agreement between Newsport and Zuma entitled Request for Redirection of Royalty Payments, dated November 3, 2011 [Dkt. # 111-25] (the "Royalty Redirection Agreement"), somehow authorized Getty to exploit the photographs at issue in this litigation.  [Dkt. # 81, D's Memo of Law, p. 36 of 50]  However, Getty has failed to show how a redirection of royalty payments amounts to a grant of rights.  Moreover, Zuma terminated the Royalty Redirection Agreement in writing after Les Walker resigned from Zuma.

### 1.    Getty Acquired No Rights Whatsoever By Means of the November 2011 Royalty Redirection Agreement

The Royalty Redirection Agreement between Newsport and Zuma merely provides that all royalty payments under Newsport's 2004 and 2005 Image Representation Agreements [Dkt. #s 111-6 and 111-7] with Corbis be redirected to the attention of Zuma.  This contract does nothing more than instruct Corbis to modify a term or condition of payment.  The Royalty Redirection Agreement does <u>not</u> grant Corbis any substantive rights to *any* photographs, nor does it show that all photographs at issue here were "legally part of the Newsport collection," as Getty claims.

Getty's argument that "all of the Photographs are covered by the rights memorialized in the Redirection Agreement" is based on the following contractual language:

> Notwithstanding the foregoing [redirection of royalty payments from NewSport to Zuma], NewSport reaffirms to Corbis that all images produced under the Contract [Dkt. #s 111-6 and 111-7] shall be personally created by NewSport, or that NewSport has the authority to grant all rights and licenses under the Contract, and all terms of the Contract, which by their nature or context require the personal services or performance of NewSport, shall be personally performed by NewSport.

> [Dkt. # 111-25, p. 2 of 2].

23

NewSport's reaffirmation to Corbis that it had the authority to grant all rights and licenses under Newsport's 2004 and 2005 Image Representation Agreements [Dkt. #s 111-6 and 111-7] does not, in and of itself, demonstrate that Corbis had the rights to all of the photographs *at issue here*.  First of all, Plaintiffs have not conceded that all of the photographs at issue were transmitted to Corbis under the Image Representation Agreements using a NewSport FTP Feed. (Getty's reference to defense counsel's letter, *see* Bloom Decl. Ex. YY, is unsupported by any written stipulation or testimony issued by Plaintiffs or their counsel).  Second, even if the photographs were transmitted to Corbis via Newsport's FTP Feed, it is of no legal consequence because, as set forth in Point I.A *supra*, Getty never assumed Corbis' agreements with NewSport and also failed to independently contract with NewSport (instead opting to contract with Les Walker in his individual capacity).  So there exists no privity of contract between Getty and any of the named plaintiffs.

## 2.    In Any Event, The Royalty Redirection Agreement Was Terminated by Zuma After Les Walker Resigned his Position on January 9, 2013

Getty also argues that the grant of rights by Zuma to NewSport was never terminated. [Dkt. # 81, D's Memo of Law, p. 36 of 50].  But the record evidence says otherwise.  As the following exchange of e-mails demonstrates, Zuma repeatedly notified Corbis *in writing* that the royalty redirection had been terminated after Les Walker resigned from his position at Zuma on January 9, 2013. That same day, Scott McKiernan of Zuma notified Seth Greenberg of Corbis that "anything feed [sic] to you since last January would and should show up on ZUMA payment, not NewSport."

On January 18, 2013, Scott McKiernan of Zuma followed up with Corbis, asking whether the "sports sales are totally off Newsport accounting?" and stating "I cannot have any of our images licensed by Corbis to be paid out to Newsport."  Seth Greenberg of Corbis then

responded: "We corrected the feed . . . You will get a complete list of sales as soon as we can do that so you can work that out."

On February 11, 2013, McKiernan confirmed with Zuma's Press News Director, Ruaridh Stewart, that Zuma fed Corbis under NewSport as long as Les Walker worked for Zuma. But once Walker quit (on January 9, 2013), "the deal is thus over. We stopped taking our percentage same day."

On February 14, 2013, McKiernan again e-mailed Seth Greenberg of Corbis, stating:

"Les Walker, as of January 9th 2013, no longer works for Zuma. Zuma received in its bank account for last year the Les Walker/NewSport account sales while he was our contract labor. <u>We no longer want his personal sales going to ZUMA and I believe the account is no longer pointing to ZUMA's bank account.</u> By same token, no Zuma images should be under his personal account or payments for ZUMA sales should be going to his account as of Jan. 9, 2013. All images should be deleted from Newsport account and moved over to ZUMA account." (underline added)

In short, as of February 14, 2013, both Zuma and Corbis understood that the Royalty Redirection Agreement had been terminated as a result of Les Walker's departure from Zuma on January 9, 2018. Payments from Corbis to NewSport were no longer being redirected to Zuma. Getty has failed to provide any evidence to the contrary.

| | **TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma** |
|---|---|
| 1 | **From:** Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com><br>**Date:** Fri, 03 Aug 2012 13:14:05 -0800<br>**To:** "Seth Greenberg (Corbis-Sports)" <seth.greenberg@corbis.com><br>**Conversation:** Sports to Corbis<br>**Subject:** Sports to Corbis<br><br>Hi Seth, hope your surviving over there !<br><br><mark>I'd like to update our sports feed to have it go through the ZUMA Press Sports feed to Corbis,</mark><br><br><mark>Currently it goes through a Newsport channel</mark> -- The one in red below<br><br>221.corbis_clean - Zuma.Press.Clean.10590:Zumapres@upload.corbis.com/<br>222.corbis_dirty - Zuma.Press.10590:Zum427Pre&@upload.corbis.com/<br>225.corbis_clean_spo - **Newsport.9995:Sportnews@upload.corbis.com/**<br>223.corbis_arc - Zuma.Press.Archive.10590:Zumpre123@upload.corbis.com/<br><br>Can you send me what the FTP co-ordinates should be for ZUMA sports to Corbis, or do I just start to send it to the ZUMA Clean feed ? |

| | TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma |
|---|---|
| | [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00352)] |
| 2 | **From:** "Julie Mason - CFO at ZUMA Press, Inc." <Julie@ZUMAPRESS.com><br>**Date:** Wednesday, January 9, 2013 8:23 AM<br>**To:** Scott Mc Kiernan - ZUMA <scott@zumapress.com><br>**Subject:** Re: Les Walker 2013<br><br>He sent me an invoice w/ the 5% increase and then called me.  I told him I didn't think the increase would happen now, maybe in March.  He then said well then the Corbis payments would stop.  ==He said Newsport still has the Corbis contract and he can have them change the bank account info back to his account.== |
| | [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00345)] |
| 3 | **From:** Scott Mc Kiernan - ZUMA Founder/CEO <Scott@ZUMAPRESS.com><br>**Date:** Wednesday, January 9, 2013 at 8:32 AM<br>**To:** Seth Greenberg <Seth.Greenberg@corbis.com><br>**Cc:** Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com>, "Julie Mason - CFO at ZUMA Press, Inc." <Julie@ZUMAPRESS.com><br>**Subject:** ZUMA pictures showing up on Newsport royalties<br><br>==Seth, hope you are well.==<br>==I asked Ruaridh to reach out to 7 months ago + before the Olympics and make sure that all the ZUMA photos we had feed into you the sports feed, stopped showing up in our Newsport check.==<br><br>==Yet they still are.==<br><br>==HELP!==<br><br>==This is really important to get fixed.==<br>==Ruaridh can help you understand the codes that are purely ZUMA's.==<br><br>==But it is pretty easy, basically anything feed into you since last January would and should show up on ZUMA payment, not Newsport's.== |
| | [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00350)] |
| 4 | **From:** Scott Mc Kiernan - ZUMA [mailto:Scott@zumapress.com]<br>**Sent:** Friday, January 18, 2013 9:24 AM<br>**To:** Seth Greenberg; Julie Mason - ZUMA CFO<br>**Cc:** Ruaridh Stewart - ZUMA News<br>**Subject:** Re: Corbis - Attached, Royalty Statement covering December, 2012 for 1059010590<br><br><br>Seth hope you are well.<br><br><br>==our sports sales are totally off newsport accounting?==<br><br><br>Seth important we still get the newsports report. Incase you still are accidentally paying les and Newsport for ZUMA licenses. |
| | [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00279)] |

| | **TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma** |
|---|---|
| 5 | **From:** Scott Mc Kiernan - ZUMA [mailto:Scott@zumapress.com]<br>**Sent:** Friday, January 18, 2013 10:22 AM<br>**To:** Seth Greenberg<br>**Cc:** Julie Mason - ZUMA CFO; Ruaridh Stewart - ZUMA News<br>**Subject:** Re: Corbis - Attached, Royalty Statement covering December, 2012 for 1059010590<br><br>We told you about moving material back to us, before Olympics.<br><br>I can not have any of our images licensed by Corbis to be paid out to Newsport.<br><br>Les quit without notice and reopen Newsport at same time.<br><br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00281)] |
| 6 | **From:** Ruaridh Stewart - News Director at ZUMA Wire Service [mailto:Ruaridh@zumapress.com]<br>**Sent:** Friday, January 18, 2013 10:50 AM<br>**To:** Scott Mc Kiernan - ZUMA Founder/CEO; Seth Greenberg<br>**Subject:** FW: Sports to Corbis<br>**Importance:** High<br><br>Hi Seth, FYI, I know it was a busy time for you, but I called and talked about changing the feed going through Newsport in July, and then followed up with this email in August 2012.<br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00287)] |
| 7 | From: Seth Greenberg <Seth.Greenberg@corbis.com><br>Date: Friday, January 18, 2013 10:54 AM<br>To: Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com>, Scott Mc Kiernan - ZUMA Founder/CEO <scott@zumapress.com><br>Cc: Anil Ramchand <Anil.Ramchand@corbis.com><br>Subject: RE: Sports to Corbis<br><br>Hi Ruaridh,<br>I know. We corrected the feed. I don't believe I was ever asked to change or move the archive back to ZUMA until now. You will get a complete list of sales as soon as we can do that so you can work that out.<br>-Seth<br><br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00287)] |

| | **TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma** |
|---|---|
| 8 | **From:** Seth Greenberg <Seth.Greenberg@corbis.com> <br> **Date:** Friday, January 18, 2013 at 10:55 AM <br> **To:** 'Scott Mc Kiernan - ZUMA' <Scott@zumapress.com>, Julie Mason -ZUMA CFO <Julie@ZUMAPRESS.com> <br> **Cc:** "Ruaridh Stewart :: ZUMA Press News Director" <ruaridh@zumapress.com> <br> **Subject:** RE: Corbis - Attached, Royalty Statement covering December, 2012 for 1059010590 <br><br> Hi Scott, <br><br> Since you notified me last week of the need to move the archive I have found <br><br> The images from 2012 that need to be moved to the ZUMA contract. <br><br> I can do this in pieces and have already moved the first portion. I should be done by early next week. <br><br> I can forward you the reports as long as I have approval to do so internally. <br><br> -Seth <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00279)] |
| 9 | **From:** Seth Greenberg <Seth.Greenberg@corbis.com> <br> **Date:** Friday, January 18, 2013 at 11:26 AM <br> **To:** 'Scott Mc Kiernan - ZUMA' <Scott@zumapress.com> <br> **Cc:** Julie Mason -ZUMA CFO <Julie@ZUMAPRESS.com>, "Ruaridh Stewart :: ZUMA Press News Director" <ruaridh@zumapress.com> <br> **Subject:** RE: Corbis - Attached, Royalty Statement covering December, 2012 for 1059010590 <br><br> I can't find any record of being notified about moving images back to the ZUMA contract last year. <br><br> I was asked to make sure that the feed was changed and we did that. <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00284)] |
| 10 | From: Scott Mc Kiernan - ZUMA Founder/CEO <Scott@ZUMAPRESS.com> <br> Date: Friday, January 18, 2013 at 11:44 AM <br> To: Seth Greenberg <Seth.Greenberg@corbis.com>, Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com> <br> Cc: Anil Ramchand <Anil.Ramchand@corbis.com>, "Julie Mason - CFO at ZUMA Press, Inc." <Julie@ZUMAPRESS.com> <br> Subject: Re: Sports to Corbis <br><br> Seth, <br><br> All help on straightening this out asap, is appreciated. <br><br> What is most pressing, is did any of our money go to Les on his current statement? <br> If not, then we are goode. <br><br> If he was paid OUR money, then… <br> Did he get this week's statement pay out or did ZUMA still get as we have for over a year? <br><br> The last five months, since we asked to have this changed, we took care of it. <br> We got the check and gave Les his portion of old Newsport activity. <br> But Julie can no longer fix it, if you paid him directly on the current one. <br> scott <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00351)] |

| | TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma |
|---|---|
| 11 | **From:** Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com> <br> **Date:** Tuesday, January 29, 2013 at 1:39 PM <br> **To:** "Les Walker > ZUMA Press > Sports & General Assignment Editor" <Walker@ZUMAPRESS.com> <br> **Subject:** Website and Newsport <br><br> Hey Les, <br><br> Good talking yesterday, thanks for confirming you will call Seth to switch the ZUMA zaf images back to ZUMA's account. Let me know when you confirm the switch with Corbis. <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00319)] |
| 12 | **From:** Scott Mc Kiernan - ZUMA <Scott@ZUMAPRESS.com> <br> **Date:** Monday, February 11, 2013 at 11:12 AM <br> **To:** "Ruaridh Stewart :: ZUMA Press News Director" <ruaridh@zumapress.com> <br> **Cc:** Julie Mason -ZUMA CFO <Julie@ZUMAPRESS.com> <br> **Subject:** Re: Info <br><br> None of this is worth talking about, till he cc's you on an email to Seth , that is first step. <br> seth email straightening out our material under his flag on Corbis, mist be ccd to ypu to confirm he did it. he lied to you and all of us numerous times. <br> We feed corbis under newsport as long as he worked for ZUMA, he quit. deal is thus over. We stopped taking our percentage same day. <br><br> This has gone on too long! <br> Need copy of his email to seth by Wednesday. <br><br> Next step is copyright lawyer at 5k an image. <br><br> Use the Corbis sport codes and tell me how many were feed under Newsport.... <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00292)] |
| 13 | **From:** Scott Mc Kiernan - ZUMA [mailto:scott@zumapress.com] <br> **Sent:** Thursday, February 14, 2013 10:26 AM <br> **To:** Seth Greenberg <br> **Subject:** FW: ZUMA imagery on Corbis under Newsport Account <br><br> Seth, <br><br> Les Walker, as of January 9th 2013, no longer works for ZUMA. <br> ZUMA received in its' bank account for last year the Les Walker/Newsport account sales while he was our contract labor. <br><br> We no longer want his personal sales going to ZUMA and I believe the account is no longer pointing to ZUMA's bank account. By same token, no ZUMA images should be under his personal account or payments for ZUMA sales should be going to his account as of Jan 9, 2013. <br> All images should be deleted from Newsport account and moved over to ZUMA account. <br> Please confirm. <br><br><br> Where do we stand? <br> Has this been taken care off? <br> Do you need anything from us or any help sorting this out? <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00343)] |
| 14 | From: Seth Greenberg <Seth.Greenberg@corbis.com> <br> Date: Thursday, February 14, 2013 at 5:33 PM <br> To: Scott Mc Kiernan - ZUMA Founder/CEO <Scott@ZUMAPRESS.com> <br> Cc: Anil Ramchand <Anil.Ramchand@corbis.com> <br> Subject: RE: ZUMA imagery on Corbis under Newsport Account <br><br> Hello Scott, <br><br> While I understand that Les no longer works for ZUMA I cannot move any images that carry the NewSport contract number, which were submitted through the NewSport FTP, without written consent from NewSport. NewSport must request this change in writing for me to move the images. <br><br> [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00343)] |

| | **TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma** |
|---|---|
| 15 | **From:** Scott Mc Kiernan - ZUMA Founder/CEO <Scott@ZUMAPRESS.com><br>**Date:** Monday, June 3, 2013 at 3:14 PM<br>**To:** Seth Greenberg <Seth.Greenberg@corbis.com><br>**Cc:** "Julie Mason - CFO at ZUMA Press, Inc." <Julie@ZUMAPRESS.com>, Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com><br>**Subject:** Followup on our conversation of removal of ZUMA content on Corbis<br><br>==Seth, as a followup to our phone conversation, ZUMA and ZUMA photographers are very concerned , as we have become aware that on Corbis sales portal, there are 50K+ worth of our images under Newsport. We are not now nor ever been represented by Newsport.==<br>==We need those images down asap.==<br>Ideally a week, worst case a month. Please give me an ETA.<br><br>We started feeding sport to Corbis on **Oct 4, 2011**<br><br>**So per your suggestion, here are the ZUMA codes which of the CAT : SPO need to come down ASAP.**<br><br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00353)] |
| 16 | **From:** Scott Mc Kiernan - ZUMA Founder/CEO <Scott@ZUMAPRESS.com><br>**Date:** Tuesday, June 11, 2013 at 1:48 PM<br>**To:** Seth Greenberg <Seth.Greenberg@corbis.com><br>**Subject:** Re: Russian Look<br><br>Seth,<br><br>Hope you are well.<br>Ruaridh is on vacation (Grand Canyon).<br>we have taken Russian Look out of our feed to you.<br><br>PS: ==never heard back from you on deleting our content from Newsport on Corbis.==<br><br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00355)] |

| | |
|---|---|
| | **TABLE #1: E-Mails re: Termination of Royalty Redirection Agreement and Migration of Zuma Images From NewSport Back to Zuma** |
| 17 | **From:** Scott Mc Kiernan <Scott@ZUMApress.com><br>**Date:** Tuesday, April 15, 2014 at 4:27 PM<br>**To:** Seth Greenberg <Seth.Greenberg@corbis.com><br>**Cc:** Julie Mason <Julie@ZUMApress.com><br>**Subject:** ZUMA pictures with Newsport credit on Corbis<br><br>Seth, hope you are well.<br><br>Have a few  ZUMA represented image stranglers that are on Corbis portal under Newsport.<br><br>Please take down asap! And confirm.<br><br>SCOTT DAVIS 7 pictures and<br>ZAK NOYLE 1 picture<br><br>Any sales on these?<br>They need to be reported to ZUMA.<br><br>Anyway you can search and confirm no others are floating around?<br><br>[2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00371)] |

### E.   EVEN IF GETTY ENTERED INTO A CONTRIBUTOR AGREEMENT WITH NEWSPORT (WHICH IT DID NOT), THE PHOTOGRAPHS AT ISSUE IN THIS LITIGATION WERE NOT INCLUDED IN THE NEWSPORT COLLECTION AS OF APRIL 2016

Even if it were determined that Getty contracted with NewSport (rather than Les Walker) as of April 2016, the evidence on record conclusively demonstrates that none of the Photographs at issue in this litigation were actually included in the NewSport archive as of the time Walker contracted with Getty in 2016.  Indeed, the e-mail exchange listed in Table #1 above between Zuma and Corbis shows that Zuma's images, which were initially fed to the NewSport channel in 2011, were redirected back to Zuma in 2013.

Beginning in August 2012, Zuma's Press News Director, Ruardih Stewart, e-mailed Corbis: "I'd like to update our sports feed to have it go through the ZUMA Press Sports feed to Corbia, Currently it goes through a Newsport channel."  [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00352)]  Then on January 9, 2013, Scott McKiernan, Zuma's CEO, e-mailed Seth

31

Greenberg of Corbis to follow up on the previous e-mail from August 2012, and stated "I asked Ruaridh to reach out to 7 months ago + before the Olympics and make sure that all the ZUMA photos we had feed [sic] into you the sports feed, stopped showing up in our Newsport check. Yet they still are.  HELP!  This is really important to get fixed."  [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00350)]

On January 18, 2018, at 10:54 a.m., Greenberg responded stating "We corrected the feed. I don't believe I was ever asked to change or move the archive back to ZUMA until now." Later that same day, Greenberg write: "Since you notified me last week of the need to move the archive I have found . . . The images from 2012 that need to be moved to the ZUMA contract.  I can do this in pieces and have already moved the first portion.  I should be done by early next week [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00279)] . . . I was asked to make sure that the feed was changed and we did that." [2d Liebowitz Decl., Ex. H (Bate Stamp No. ZUM00284)]

The deposition testimony bolsters the evidence provided by the aforementioned e-mails that the Zuma photographs had been removed from the NewSport collection.  Scott McKiernan stated: "All I know is whatever images were still in Newsport had been moved."  [2d Liebowitz Declr., Ex. A (McKiernan Tr. 131:16)].  Les Walker also confirmed his understanding that the Zuma images had been removed from the NewSport collection in 2013, testifying that he told Greenberg: "Any images tagged 'ZUMA' should no longer be in the NewSport archive.  And I assume that was taken place . . . my assumption is that they copied those images."  [2d Liebowitz Decl., Ex. C (Walker Tr.)]

In short, given Corbis' written confirmation that "the feed was changed" from Zuma-Newsport back to Zuma-Corbis, there can be no dispute that Zuma's photographs were no longer

included in the NewSport collection as of April 2016, almost three years after Corbis confirmed that the Zuma photographs had been removed from the NewSport collection and re-routed back to Corbis.

## F.   THERE IS NO EVIDENCE THAT GETTY IS A SUB-LICENSEE OF NEWSPORT

Getty appears to argue that it is both a direct licensee as well as an authorized sub-licensee of Newsport vis-à-vis the Getty-Walker Agreement. [Dkt. # 81, p. 36 of 50]. But Getty's sub-license argument fails because the underlying Image Representation Agreements between Corbis and NewSport do not expressly grant Corbis the right to sublicense content to other stock photography agencies such as Getty. Rather, the Image Representation Agreement, dated January 1, 2005, only grants Corbis the right to license to "end-users." [Dkt. # 111-6, p. 2 of 7]. Getty is not an "end-user."

Furthermore, the Image Representation Agreements are silent with respect to sub-licensing.  But "[i]t is well established in patent and copyright law that a patent or copyright licensee may not sub-license his licensed intellectual property rights without express permission from the licensor." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 (9th Cir. 2006).  Further, "[t]he consent necessary to properly effectuate a sublicense must be express or explicit, however, not loosely implied from the circumstances." *L.A. Printex Industries, Inc. v. G&G Multitex, Inc.*, No. 09-cv-3812 –ODW, 2010 WL 11520186, at *4 (C.D. Cal. Sept. 13, 2010).

The law presumes that a registered copyright holder will seek to control publication of his works and thus will <u>not</u> grant the right to sub-license unless he knows of the identity of the sub-licensee.  Accordingly, any attempt by Getty to ground its license defense on an implied sub-license fails as a matter of law.

### G.   COPYRIGHT INFRINGEMENT IS A STRICT LIABILITY OFFENSE

Finally, it should be emphasized that "[c]opyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability." *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *see also Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir.1986) ("intent or knowledge is not an element of infringement.").

Here, even if Getty had the best of intentions in the migration of Corbis' assets over to Getty (and for sake of clarity, Getty lacked *bona fide* good faith intentions), such intentions would have no bearing on the question of Getty's liability for copyright infringement. The bottom line is that Getty was <u>not</u> authorized to publish or display the Photographs and, thus, Getty should be held liable under Count I regardless of its knowledge or intent respecting the ingestion of Corbis' assets.

### <u>POINT II</u>:   GETTY'S ESTOPPEL DEFENSE FAILS AS A MATTER OF LAW

To establish an estoppel defense in the copyright context, a defendant must show that: (1) plaintiff had knowledge of the defendant's infringing conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions suggesting authorization, or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its detriment. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F.Supp.2d 167, 194 (S.D.N.Y.2009) (quoting *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F.Supp.2d 497, 509 (S.D.N.Y.2001)) (brackets omitted).

Courts warn that "[e]stoppel is a drastic remedy and must be utilized sparingly. Clearly, a successful application of this remedy requires the party asserting estoppel to use due care and not fail to inquire as to its rights where that would be the prudent course of conduct." *Keane Dealer Serv., Inc. v. Harts,* 968 F.Supp. 944, 948 (S.D.N.Y. 1997); *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d at 129.  In fact, estoppel applies "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 292 (2d Cir.2002) (citation omitted).

Essential to any finding of estoppel is "detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 400 (2d Cir.2011). Reliance is not justifiable if the party invoking estoppel "had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means." *In re Becker,* 407 F.3d 89, 99 (2d Cir.2005) (citation omitted) (Emphasis omitted.) *See Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 565 (S.D.N.Y. 2013). Here, Getty has failed to present evidence to support the elements of an estoppel claim.

<u>First</u>, Plaintiffs did not learn of the infringements until on or about May 4, 2016. Accordingly, Getty's estoppel defense must be based on alleged representations that were made by Plaintiffs - and Getty's conduct in reliance on such alleged representations - at some point after May 4, 2016.  But Getty's estoppel analysis is *wholly* based on events or alleged representations that took place long before Plaintiffs learned of Getty's infringing activities. [Dkt. # 81, p. 38 of 50 (referring to the Image Representation Agreements dating back to 2005)] For that reason alone, the estoppel defense fails.

35

Second, there is no evidence that Plaintiffs either (a) intended that Getty rely on Plaintiffs' alleged acts or omissions suggesting authorization; or (b) acted or failed to act in such a manner that Getty had a right to believe it was intended to rely on Plaintiffs' conduct.  Indeed, there is no evidence that Plaintiffs knew anything about Getty's intent to migrate NewSport assets from Corbis to Getty.  Once again, Plaintiffs only learned of Getty's infringement (i.e., Getty's unauthorized migration of assets) on or about May 4, 2016 when one of Zuma's exclusive photographers, Aristidis Vafeiadakis, discovered his images on Getty's website under Les Walker's name.

Furthermore, Getty's argument that "Corbis continued to have the right under the NewSport Contract to license the Photographs" is patently false.  As Table #1 E-mails, *supra*, demonstrates, Zuma repeatedly notified Corbis that Zuma's NewSport channel was terminated as soon as Les Walker resigned in January 2013.  [2d Liebowitz Decl., Ex. H]  Getty's claim that "Zuma never warned Getty that the Photographs were included in the NewSport collection" is equally absurd.  Zuma had no such obligation, particularly given Zuma had no knowledge of Getty's intentions.  Moreover, it was Getty's contractual obligation to carefully vet Corbis' assets before taking steps to migrate any photograph onto Getty's site.  [Dkt. # 119-19, § 3.1, p. 6 of 28]  So Getty cannot be heard to complain that Zuma (which had nothing to do with Getty's migration plans) had a duty to warn Getty about the status of the NewSport collection.

Third, Getty cannot claim that it was ignorant of the true facts, because as stated above, it was Getty's contractual obligation to carefully vet Corbis' assets before taking steps to migrate any photograph onto Getty's site.  [Dkt. # 119-19, § 3.1, p. 6 of 28].  Having failed to conduct any due diligence, and having haphazardly entered into a contract with Les Walker (who was on

an internal "do not sign" list) rather than NewSport, Getty cannot plausibly claim ignorance of the facts.

Fourth, there is no evidence to support Getty's claim that it relied on any representations made by Plaintiffs *at any time*. As demonstrated in the e-mail table below, Plaintiffs' communications with Getty following the May 4, 2016 discovery of the infringements were limited to discussions of how to resolve the issue. At no time did Plaintiffs make any representations to Getty concerning Getty's purported authorization to publish the Photographs. Quite to the contrary, the communications between Plaintiffs and Getty presupposed that Getty had no authorization whatsoever. On May 5, 2016, Getty's initial "knee-jerk" response to Zuma's concerns was to immediately remove the Photographs from Getty's website. Had there been any reliance by Getty, then the opposite would have been true: Getty would have kept the photographs on its website in reliance on Plaintiff's alleged representations that Getty was entitled to do so.

Moreover, the record shows that Getty had placed Les Walker on an infamous "do not sign list." [2d Liebowitz Declr., Ex. K, Q]. On that same Excel Spreadsheet Getty indicated that Corbis Contract Exclusivity was "not provided" for Les Walker. [2d Liebowitz Declr., Ex. Q] Moreover, Walker was listed as an "individual photographer" rather than as the President of NewSport, giving further support to the fact that Getty never contracted to acquire the NewSport archive in April 2016 – it only contracted to obtain Les Walker's individual archive. [*Id.*]

The fact that Walker was on a "do not sign" list demonstrates that Getty acted with willful blindness when it contracted with Walker in April 2016, thereby defeating any reliance. [2d Liebowitz Declr., Ex. K]



In short, Getty's estoppel claim is objectively unreasonable as there is no factual evidence

to support a single element of the defense.

| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 1 | **From:** Aristidis Vafeiadakis <photoaris@yahoo.gr><br>**Reply-To:** Aristidis Vafeiadakis <photoaris@yahoo.gr><br>**Date:** Wednesday, May 4, 2016 at 11:36 AM<br>**To:** Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com><br>**Subject:** Aristidis Vafeiadakis<br><br>Hi Ruaridh,<br>I saw many of my pictures in Getty images after Corbis closed but the credit is "Les Walker" can you contact with Getty because I did it and they did not response to me. You can see my pictures in Getty if you write at the search engine my name.<br>Thank you in advance<br>Aristidis<br><br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00376)] |

| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 2 | From: Ruaridh Stewart - ZUMA News Director<br>Date: Wednesday, May 4, 2016 at 6:05 PM<br>To: Travis Lindquist<br>Cc: Scott Mc Kiernan<br>Subject: ZUMA Images on Getty….<br><br>Hi Travis,<br><br>hoping you can help here – so this does not grow into a bigger problem -  I'm seeing a bunch of ZUMA Press images on the Getty site, via  Corbis – - we never agreed to have images go to Getty.<br><br>Can you let me know how many ZUMA images you have on Getty ? The one below is credited to Les Walker Newsport. Who never had rights to distribute out images.  Caption clearly states: (Cr<br><br>This is a serious violation which we need to have dealt with immediately.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00378)] |
| 3 | **From:** Travis Lindquist <Travis.Lindquist@gettyimages.com><br>**Date:** Thursday, May 5, 2016 at 2:11 AM<br>**To:** Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com><br>**Cc:** Scott Mc Kiernan <Scott@ZUMApress.com><br>**Subject:** Re: ZUMA Images on Getty…..<br><br><br>Ruaridh,<br><br><br>I'm not the correct person to know the status of this, but I will escalate internally and see what is happening.<br><br><br>Thanks<br><br><br>Travis<br><br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00378)] |



| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 4 | From: Ruaridh Stewart - ZUMA News Director [mailto:ruaridh@zumapress.com]<br>Sent: Thursday, May 05, 2016 1:28 PM<br>To: Travis Lindquist <Travis.Lindquist@gettyimages.com><br>Cc: Scott Mc Kiernan <Scott@ZUMApress.com>; Elodie Mailliet <elodie.mailliet@gettyimages.com>; Pancho Bernasconi <Pancho.Bernasconi@gettyimages.com><br>Subject: Copyright Infringement *URGENT*<br>Importance: High<br><br>Hi Travis,<br><br>I cc'd Elodie as she was dealing with Scott and knows that we are not being represented by Getty. Also cc'ing Pancho Bernasconi as he is familiar with our content.<br><br>We are seeing a bunch of ZUMA Press images on the Getty site, via  Corbis News – - we never agreed to have images go to Getty.<br><br>Can you let me know how many ZUMA images you have on Getty ?<br><br>This is a serious violation which we need to have dealt with immediately. We need to have any and ALL ZUMA Press images on Getty removed ASAP.<br><br>We need to answer to the many ZUMA photographers we represent.<br><br>Can someone please get back to me today about this ? Or at latest tomorrow – Friday May 6th.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00301)] |
| 5 | From: Elodie Mailliet <elodie.mailliet@gettyimages.com><br>Date: Thursday, May 5, 2016 at 2:12 PM<br>To: Pancho Bernasconi <Pancho.Bernasconi@gettyimages.com>, Scott Mc Kiernan <Scott@ZUMApress.com>, Elodie Mailliet <elodie.mailliet@gettyimages.com>, Pancho Bernasconi <Pancho.Bernasconi@gettyimages.com>, Travis Lindquist <Travis.Lindquist@gettyimages.com>, Ruaridh Stewart - ZUMA News Director <Ruaridh@ZUMAPRESS.com><br><br>https://mail.google.com/mail/u/0/?ui=2&ik=330ba8a39&jsver=icV4ZT=eD6E.en.&view=pt&msg=15fa09a6f3fckpk&q=Ruaridh%40zumapress.com&qs=true&search=query&simk=15fd26d45f6c.k4<br><br>1/29/2018  Gmail - Getty Copyright Violation<br>Cc: Lisa Willmer <Lisa.Willmer@gettyimages.com>, David Wojtczak <David.Wojtczak@gettyimages.com><br>Subject: Re: Copyright Infringement *URGENT*<br><br>Hi Ruaridh,<br><br>Thanks so much for pointing this to us. This is clearly a technical issue as they are two bylines on the images.<br><br>We are looking at solving this issue ASAP and will remove the images as soon as we can.<br><br>In the mean time, don't hesitate to reach out if you have any further questions.<br><br>Very best,<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00303)] |

| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 6 | From: Ruaridh Stewart - ZUMA News Director [mailto:ruaridh@zumapress.com]<br>Sent: Wednesday, May 18, 2016 4:38 PM<br>To: Elodie Mailliet <elodie.mailliet@gettyimages.com>; Pancho Bernasconi <Pancho.Bernasconi@gettyimages.com>; ; Scott Mc Kiernan <Scott@ZUMApress.com>; Travis Lindquist <Travis.Lindquist@gettyimages.com><br>Cc: Lisa Willmer <Lisa.Willmer@gettyimages.com>; David Wojtczak <David.Wojtczak@gettyimages.com><br>Subject: Re: Copyright Infringement *URGENT*<br>Importance: High<br><br>Hi Elodie,<br><br>Its been 2 weeks I have not had update from anyone at Getty about this issue.<br><br>I am very concerned, this is an urgent matter.<br><br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00307)] |
| 7 | --------- Forwarded message ---------<br>From: David Wojtczak <David.Wojtczak@gettyimages.com><br>To: Ruaridh Stewart - ZUMA News Director <ruaridh@zumapress.com>, Elodie Mailliet <elodie.mailliet@gettyimages.com>, Pancho Bernasconi <Pancho.Bernasconi@gettyimages.com>, *; Scott Mc Kiernan* <Scott@zumapress.com>, Travis Lindquist@gettyimages.com>, Travis<br>Cc: Lisa Willmer <Lisa.Willmer@gettyimages.com><br>Bcc:<br>Date: Thu, 19 May 2016 17:25:02 +0000<br>Subject: RE: Copyright Infringement *URGENT*<br><br>Hi Ruaridh,<br><br>All ZUMA Press images that were identified via the double bylines were immediately pulled from the Getty website on May 5th.  I apologize for the delay in confirming removal.  We have had multiple teams researching this issue since your initial inquiry and we are continuing to treat it as a high priority. Please let me know if you would like to set up a time for a quick call.  My availability is wide open today and tomorrow.  I will be in the office until 5:30 PM PST this evening or we can speak any time after 9:30AM PST tomorrow.<br><br>Once again, I apologize for the delay in providing an update.  You can work directly with me on this issue moving forward.<br><br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00264)] |
| 8 | **Dave Wojtczak** <David.Wojtczak@gettyimages.com>               Tue, Jul 19, 2016 at 6:48 PM<br>To: Richard Liebowitz <RL@liebowitzlawfirm.com><br><br>Hi Richard,<br><br>Thanks again for your time today.  Per our conversation, attached is a list of the 47,048 assets that we have identified to date as having migrated from Corbis to Getty via the Les Walker/NewSport Corbis contract. The team that is handling the Corbis migration was able to grab the original Corbis ID for each of these images.  If your client still has prior Corbis/NewSport asset information, these asset numbers (2nd column) should line up with their original records.<br><br>As we discussed, 45,000 of these assets appear to have completed the migration process and went live on our website.  While a Getty Master ID was created for 2,048 of these images (as part of the migration process), those assets do not appear to have been published to our website (blocked after asset ID was created but prior to completion of migration).  I'm still waiting for final verification on this data but once I have confirmed the status of all images, I will be able to provide an updated report on which assets actually went live.  I figured your client would want the other 2,048 asset IDs either way.<br><br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00383)] |

| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 9 | **Dave Wojtczak** <David.Wojtczak@gettyimages.com>                    Wed, Jul 20, 2016 at 2:37 PM<br>To: Richard Liebowitz <RL@liebowitzlawfirm.com><br><br>Hi Richard,<br><br>Just a quick update – I now have the complete License and Download report for all of the identified assets. There are a few areas that now need to be sent off to our finance team for revenue reporting.   I will do my best to have this completed prior to my long weekend (out of office Friday and Monday).  If that fails, we should have a completed report for you by end of next Tuesday.  I'll update you further on the status when we speak tomorrow.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00385)] |
| 10 | **Dave Wojtczak** <dave.wojtczak@gettyimages.com>                    Thu, Jul 28, 2016 at 11:41 AM<br>To: Richard Liebowitz <RL@liebowitzlawfirm.com><br><br>Hi Richard,<br><br>Things are stabilized with my father (already discharged) and I am headed into the office a little later this morning.  I apologize for the unexpected delay in providing the data that we discussed.  I will follow up once I've finished compiling the data for you.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00388)] |
| 11 | From: Dave Wojtczak<br>Sent: Friday, July 29, 2016 10:19 AM<br>To: 'RL@liebowitzlawfirm.com' <RL@liebowitzlawfirm.com><br>Subject: Zuma Press, Inc. | Your reference 000107CN<br><br>Richard,<br><br>Per our conversation last week, attached is the license and download report which includes corresponding total revenue ($3,826.65 USD) for these transactions.  As I mentioned previously, this is not a complete picture yet.  This should represent a majority of the revenue that we've received prior to content removal, however, I do anticipate that there will be some additional revenue associated with feeds and possibly a few uses that have not yet been reported to us.  I would recommend that we run another report sometime in mid-August.<br><br>After you have had a chance to review, please let me know when you would like to set up a time for another call.  I have wide open availability the rest of today if that works for you.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00390)] |

| | **TABLE #2: E-Mails Re: 2016 Discovery of Infringement** |
|---|---|
| 12 | **Dave Wojtczak** <dave.wojtczak@gettyimages.com>                    Mon, Aug 1, 2016 at 2:17 PM<br>To: "Richard Liebowitz (RL@liebowitzlawfirm.com)" <RL@liebowitzlawfirm.com><br><br>Hi Richard,<br><br>Things are somewhat back to normal with my father and I anticipate being in the office all week.  Please let me know when you want to set up a time to speak further.  If you are still reviewing things with your client, we can schedule this at your convenience anytime later in the week.  Just let me know.<br><br>[2d Liebowitz Declr., Ex. I (Bate Stamp No. ZUM00381)] |

## POINT III:   A REASONABLE JURY COULD FIND THE REQUISITE INTENT TO ESTABLISH GETTY'S VIOLATION OF SECTION 1202 OF THE DMCA

The DMCA prohibits, among other things, 'intentionally remov[ing] or alter[ing] any copyright management information.'" *Zalewski v. Cicero Builder Dev., Inc.,* 754 F.3d 95, 107 (2d Cir. 2014) (*quoting* 17 U.S.C. § 1202(b)) (alteration in the original). To establish a violation under subsection 1202(b) for removal and/or alteration of copyright management information ("CMI"), a plaintiff must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F.Supp.2d 596, 609 (S.D.N.Y. 2010) (collecting cases)).

Alternatively, a plaintiff can show that the defendant "distribute[d] . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . " *Janik v. SMG Media, Inc.*, No. 16-civ-7308-JGK-AJP, 2018 WL 345111, at *12 (S.D.N.Y. Jan. 10, 2018) (*quoting* 17 U.S.C. § 1202(b)(3); *see also Friedman v. Live Nation Merch., Inc.,* 833 F.3d 1180, 1187 (9th Cir.

2016) ("The statute does prohibit the intentional removal of CMI. But [plaintiff] could also prevail upon a showing that [defendant] distributed his works with the <u>knowledge</u> that CMI had been removed, even if [defendant] did not remove it.")

Section 1202(a) "establishes a general prohibition against intentionally providing false copyright management information ..., and against distributing or importing for distribution false copyright management information." 17 U.S.C. § 1202(a). "There are two prerequisites that must be met for these prohibitions to be violated: (1) the person providing, distributing or importing the false [copyright management information] must know the [copyright management information] is false, and (2) the person providing, distributing, or importing the false [copyright management information] must do so with the intent to induce, enable, facilitate or conceal an infringement of any right under title 17." *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002).

Because both claims under section 1202 involve Defendant's state-of-mind, Courts are instructed to be "lenient in allowing scienter issues ... to survive motions to dismiss." *In re DDAVP Direct Purchaser Antitrust Litig.,* 585 F.3d 677, 693 (2d Cir. 2009) (quotation omitted); *accord Fischer v. Forrest*, No. 14 Civ. 1304 (PAE), 2015 WL 195822, at *9 (S.D.N.Y. Jan. 13, 2015); *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.),* 585 F.3d 677, 692–93 (2d Cir.2009) (reversing the district court's grant of a motion to dismiss because "scienter issues ... are appropriate for resolution by the trier of fact").

A.   <u>Element #1</u>: As a Matter of Law, A Credit Byline Which Attributes the Name of the Photographer Qualifies as CMI

The DMCA defines CMI as "any of the following information conveyed in connection with copies . . . of a work or performances or displays of a work, including in digital form":

(1) The title and other information identifying the work, including the information set forth on a notice of copyright.

(2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

17 U.S.C. § 1202(c).

"The CMI must be attached to, depicted in, or broadly 'conveyed in connection' with a copyrighted or copyrightable 'work.' *Fischer*, 286 F. Supp. 3d at 608–09 (citing 17 U.S.C. §1202(c)). "The works on which CMI removal claims are based commonly consist of photographs, *see, e.g.*, *Playboy Enterprises Int'l Inc. v. Mediatakeout.com LLC*, 2016 WL 1023321, at *4 (S.D.N.Y. Mar. 8, 2016)." *Id.*

"CMI exists to inform the public that a work is copyrighted and by whom." *Id.; see also Pers. Keepsakes, Inc. v. Personaliziationmall.com, Inc.*, No. 11-CV-5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) ("[T]he point of CMI is to inform the public that something is copyrighted and to prevent infringement."). "The DMCA exists, in part, to protect that notice." *Fischer*, 286 F.Supp. 3d at 608-609; *see also* S. Rep. No. 105-190, at 16 (1998) (defining CMI to include "such items as the title of the work, the author, the copyright owner, and in some instances, the writer, performer and director.").

Courts in this Circuit have consistently held that the attribution of photographs with credit lines which identify the name of the photographer constitutes CMI under the statute. *See Agence France Presse v. Morel*, 769 F. Supp.2d 295, 305–06 (S.D.N.Y. 2011) ("Morel's allegations that AFP labeled his photos with the credit lines 'AFP/Getty/ Daniel Morel' and "'AFP/Getty/Lisandro Suero' are sufficient to plead falsification of CMI" and finding that "the notations 'Morel,' 'daniel morel,' and 'photomorel' fall within the scope of CMI under the plain

45

language of the statute"); *Janik,* 2018 WL 345111, at *12 ("Janik's name on the contact sheet was 'conveyed in connection with [the] cop[y]' of the Guccione Photograph and qualifies as CMI under the DMCA."); *Hirsch v. CBS Broad. Inc.*, No. 17 CIV. 1860 (PAE), 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017) ("Review of the Episode clearly reveals a cropping out of Hirsch's gutter credit from the Photo. The amount of material cropped out was minimal, and within it, Hirsch's photo credit was prominent. It is therefore fairly inferred, at the pleading stage, that the CBS employee(s) who excised Hirsch's photo credit did so aware that a photo credit was being eliminated and that the photo as cropped would therefore appear on a televised episode."); *accord Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) ("the mere fact that Murphy's name appeared in a printed gutter credit near the Image rather than as data in an 'automated copyright protection or management system' does not prevent it from qualifying as CMI or remove it from the protection of § 1202); 17 U.S.C. § 1202(c) (defining CMI to include "[t]he name of ... the author of a work").

　　To establish a violation of section 1202, Plaintiff need not show that the CMI appeared directly on the photograph itself. *See, e.g.*, *Morel*, 769 F. Supp.2d at 305–06 ("the DMCA defines CMI as information 'conveyed *in connection with* copies' of a work — it does [not] require the CMI to appear on the work itself. 17 U.S.C. § 1202(c) . . . . It is implausible that a viewer of Morel's photos would not understand the designations 'Morel' and 'by photomorel' appearing next to the images to refer to authorship."); *accord Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014) ("[I]t is 'implausible' that a viewer of the record album would not understand that the credit line 'Photography: Don Levey, Don Levey Studio' on the back of the album also referred to authorship of the photo on the cover of the album."); *see also* S. REP. 105-190 at 35 (1998) ("The term 'conveyed' is used

in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed.").[3]

Here, there is no dispute that the Photographs as originally displayed by Zuma contain qualifying CMI, i.e., the name of the photographer and a copyright symbol notice adjacent to the photograph.  Thus, for example, a photograph by plaintiff Robert Backman of an NCAA 2011 football game has a credit byline which reads: "Credit Image: © Robert Backman/Cal Sport Media/ZUMAPRESS.com" [2d Liebowitz Declr., Ex. N]

**B.     ELEMENT #2: GETTY DISTRIBUTED THE INFRINGING WORKS HAVING REASON TO KNOW THAT CMI WAS REMOVED OR ALTERED**

With respect to the second element of the DMCA claim, Plaintiffs need not show that Getty actually removed the CMI, but rather that Getty distributed the infringing works having reason to know that CMI was removed or altered. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011).  "The statute does prohibit the intentional removal of CMI. But [plaintiff] could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it." *Fischer,* 2017 WL 2992663, at *17 (quoting *Friedman*, 833 F.3d at 1187).

Here, there is no question that when Getty re-published the Photographs on Getty's website without Plaintiffs' authorization, the CMI had been altered in three important ways. First, the copyright notice symbol ("©") was replaced with two question mark symbols ("??"). Second, Getty added a separate byline which reads "Photo by Les Walker/Corbis via Getty Images."  Third, Getty placed a "Getty Image" watermark directly on each photograph.

---

[3] Finally, "the terms 'metadata' and 'CMI' are not interchangeable; photo metadata often includes information that does not qualify as CMI." *Fischer*, 2017 WL 2992663, at *17.

Getty argues that the aforementioned alterations to the CMI were "inadvertent anomalies in the metadata associated with the Photographs as they appeared on the Getty Images website that derived from the [Getty-Walker] Contributor Agreement and the automated nature of the mass migration of photographs from Corbis." [Dkt. # 81, D's Memo, p. 42 of 50]  However, a reasonable jury can infer that if Getty's alterations of the CMI were generated by an automated system, then such automated system was designed and engineered by Getty to enable infringement by removing the copyright symbol, adding false attributions, and applying a Getty watermark so as to create the false impression that Getty had rights to license the Photographs (when it actually did not).  Thus, the disputed fact that Getty used an automated system to apply credit attributions does not, in and of itself, shield Getty from violation of the DMCA.

Moreover, Getty's monumental size, experience in the field and level of sophistication in providing attributions to photographers contradict Getty's argument that the alterations to the CMI were merely "inadvertent."  A reasonable jury could infer that Getty's maintenance of copyright management information necessarily operates at the highest level of expertise and thus any claim of "inadvertence" lacks credulity.

**Example #1:** The following table illustrates a side-by-side comparison between a Robert Backman photograph as it appeared on Zuma's website versus the identical Robert Backman photograph as it appeared on Getty's website, as altered.  [2d Liebowitz Declr., Ex. N]

[next page]

48

**Robert Backman's Photograph as Displayed on <u>Getty's Website [Altered CMI]</u>**



**Robert Backman's Photograph as Displayed on <u>Zuma's Website [Original CMI]</u>**



49

**Example #2:** The following table illustrates a side-by-side comparison between a Louis Lopez photograph as it appeared on Zuma's website versus the identical Louis Lopez photograph as it appeared on Getty's website, as altered.  [2d Liebowitz Declr., Ex. O]



**Example #3:** The following table illustrates a side-by-side comparison between a Chris Szagola photograph as it appeared on Zuma's website versus the identical Chris Szagola photograph as it appeared on Getty's website, as altered.  [2d Liebowitz Declr., Ex. P]



Further, there is ample evidence showing that Getty distributed the Photographs having reason to know that CMI had been removed or altered.  For example, on May 5, 2016, Eve Toomey, a former employee of Getty, indicated that "that credit line is totally suspicious." [2d Liebowitz Declr. Ex. J]  Chris Eisenberg, a current employee of Getty, responded at 10:38 a.m. that "other than the caption, there is no indication in the Corbis data that these belong to Zuma." At 10:42 a.m., Eisenberg also states that the credit by-line was a "manual setup" which belies Getty's assertion that the entire process was automated. Finally, at 1:18 p.m., Eisenberg states that "For the Zuma thing, it's making us look bad though because we are not displaying the photographer info like Corbis and that makes it look like we're trying to hide something." [*Id.*]

**Communications b/w Getty's Employees re: Credit Attribution** [2d Liebowitz Declr. Ex. J]



**Communications b/w Getty's Employees re: Credit Attribution** [2d Liebowitz Declr. Ex. J]



  As illustrated below, Getty also altered the CMI on thumbnail images that were displayed on Getty's website.  These are the images that consumers who visit Getty's website would click-

thru in order to access the main page of a given photograph available for license.  On the

thumbnails page, Getty credited Les Walker rather than Robert Backman for Backman's

photograph of the 2011 NCAA game. [2d Liebowitz Declr., Ex. N]

**THUMBNAIL IMAGES DISPLAYED ON GETTY'S WEBSITE** [2d Liebowitz Declr., Ex. N]
**(Which Credited "Les Walker/Corbis News" *Rather* Than Robert Backman)**



Deposition testimony by Getty's employee Jamin Kortegard also demonstrates that Getty had knowledge of the alteration of CMI.

**Q:** Was someone looking at the attribution column and also the Corbis metadata to see if the attribution column was the same on that chart compared to in the Corbis metadata?

**A:** I honestly don't know if anybody was doing that. I do know that the people that were filling out the table that contained the attribution line knew that the attribution line was going to be used for the caption credit that we were going to - we were going to use that, so that was well-known. So they knew what the purpose of that column was. I'm not sure what the due diligence was outside of that.

[2d Liebowitz Declr., Ex. E, Kortegard Tr. 57:7-19]

**Q:** Well, I'm just looking at in terms of the migration, looking at and seeing the caption or the photo credit in the Corbis metadata, was that part of your duties to make sure that it was the proper -- that it was going to be the proper credit on the Getty website?

**A:** It was part of our responsibility, not the whole team -- not just me, but everybody at Getty Images, everybody at Corbis, to plan and execute this migration project so that we moved all of the metadata that they assembled -- so that we moved all of the metadata and images that they assembled for us as correctly as we possibly could and as expediently as we could.

[2d Liebowitz Declr., Ex. E, Kortegard Tr. 78:12-19]

Finally, as illustrated by an internal e-mail between Getty's employees, Les Walker also believed that the ZUMA credit had been intentionally "stripped off" by Getty. [2d Liebowitz Declr., Ex. L]



55

## C.   <u>ELEMENT #3</u>: GETTY HAD REASONABLE GROUNDS TO KNOW THAT REMOVAL WOULD FACILITATE OR ENABLE COPYRIGHT INFRINGEMENT

The third element of the DMCA claim requires Plaintiffs to show that Getty's removal of Plaintiffs' CMI "was done intentionally." *Banxcorp*, 723 F. Supp. 2d at 609-610.  Alternatively, Plaintiffs could show that Getty had "reasonable grounds to know that such removal or alteration would induce, enable, facilitate, or conceal a copyright infringement." *Reilly v. Commerce*, No. 15CV05118PAEBCM, 2016 WL 6837895, at *6 (S.D.N.Y. Oct. 31, 2016).  Of course, "whenever state of mind is at issue, direct proof of one's specific wrongful intent is rarely available and so recourse to circumstantial evidence is most often necessary." *Friedman*, 833 F.3d at 1189.

*In Friedman*, 833 F.3d at 1189, the Ninth Circuit sustained a DMCA claim under section 1202 on grounds that a reasonable jury could infer from circumstantial evidence that defendant Live Nation, who was sophisticated about copyright law, knew that its distribution of photographs would facilitate or enable infringement.

Here, Getty is one of the world's leading distributors of premium digital content. [Getty's 56.1 Statement, ¶ 1; Declaration of Travis Lindquist, dated 6/29/18, ¶ 3]  Given the wide-ranging breadth and depth of Getty's involvement in exploiting photographs on the internet, a strong inference can be drawn that Getty is sophisticated about copyright law and licensing procedures.  *See Friedman*, 833 F.3d at 1188 ("a reasonable jury could certainly conclude that Live Nation had knowledge that photographs are often copyrighted").  Accordingly, not unlike LiveNation in the *Friedman* case, Getty must be charged with the utmost knowledge of U.S. copyright law, including applicable provisions of the DMCA.

Further, Getty is particularly knowledgeable about section 1202 of the DMCA because it was found liable for violating section 1202 within three years prior to the commencement of this

lawsuit.  On December 10, 2013, judgment was entered against Getty in the amount of

$1,220,000.00, a portion of which was awarded due to Getty's violation of the DMCA.  [2d

Liebowitz Declr., Ex. R (*Morel v. Agence France Press, Getty Images, Inc.*, 10-cv-2730 (AJN))]

Having already unsuccessfully defended against DMCA violations prior to Getty's migration of

Corbis' assets in 2016, a jury may reasonably conclude that Getty was highly knowledgeable of

and sensitive to the legal protocols necessary to avoid such violations at the time of the

infringement.

      Indeed, even after learning of the infringement on May 5, 2016, Getty continued to

display the Photographs on Getty's website.  [Declaration of Ruaridh Stewart, 84:1-8 ("And then

to our shock, I think it was two weeks later, two or three weeks later, the images were still up

there.")].  Internal e-mails between Getty employees also show that, as of May 24, 2016, Zuma's

images had still not been removed by Getty from Getty's website.  Katey Schuyler wrote to a

large team of fellow Getty colleagues re: "Les Walker Zuma", stating "Looks like there are

additional images to pull." [2d Liebowitz Declr., Ex. M (Bate Stamp No. GETT00047142)]



The fact that Zuma's images remained on Getty's website almost three weeks after being notified of the infringement shows Getty's reckless disregard of the copyright holders' rights and thus adds weight to Plaintiff's position that Getty's conduct was designed to facilitate infringement.

This undisputed evidence of Getty's sophistication in the field of exploiting copyrighted material, its recent history of being held liable for violating the DMCA, Getty's evident knowledge that CMI was altered, and Getty's unwillingness to take the Photographs down after learning of the infringement, when take together in the light most favorable to Plaintiffs, are sufficient to create a triable issue of fact as to whether Getty had the intent to enable infringement of the Photographs at issue.  Accordingly, Getty's motion to dismiss the DMCA claims should be denied.

**POINT IV:**   **WITH RESPECT TO ANY PHOTOGRAPH THAT PLAINTIFFS HAVE NOT PRODUCED EVIDENCE OF OWNERSHIP AS PART OF THEIR PRINCIPAL BRIEF, PLAINTIFFS WITHDRAW SUCH CLAIMS WITHOUT PREJUDICE**

In response to Getty's argument that Plaintiffs lack standing to assert ownership to 13,587 photographs [Dkt. # 81, D's memo, p. 41 of 50], Plaintiffs aver that for purposes of the present action, they only claim ownership with respect to those photographs referenced in Plaintiffs' principal brief in support of their own motion for summary judgment. [Dkt. #72]

With respect to Photographs not referenced in Plaintiffs' principal motion for summary judgment [Dkt. #72], Plaintiffs hereby reserve all rights.

**<u>CONCLUSION</u>**

Based on the foregoing, the Court should DENY Defendant Getty Images (US), Inc.'s

Motion for Summary Judgment in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**<u>/richardliebowitz/</u>**
Richard Liebowitz
Yekaterina Tsyvkin
James H. Freeman
Joseph A. Dunne
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for All Plaintiffs*