# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ZUMA PRESS, INC., ACTION SPORTS
PHOTOGRAPHY, INC., TIYU (BEIJING)
CULTURE MEDIA CO. LTD., MANNY
FLORES, ANDREW DIEB, CHRISTOPHER
SZAGOLA, LOUIS LOPEZ, CHARLES BAUS,
DUNCAN WILLIAMS, ROBERT BACKMAN,
JOHN MIDDLEBROOK, and ANTHONY
BARHAM,

Case No.: 1:16-cv-06110 (AKH)

                              Plaintiffs,

                    v.

GETTY IMAGES (US), INC.

                              Defendant.

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

I.      PLAINTIFFS' CONTENTION THAT GETTY IMAGES DID NOT ACQUIRE
RIGHTS TO THE NEWSPORT COLLECTION HAS NO MERIT ...................................2

      A.     The Contributor Agreement Covered the NewSport Collection.............................2

      B.     Les Walker Had the Authority to License the NewSport Collection......................5

      C.     Zuma Conveyed Rights to NewSport and Corbis by Submitting
Photographs Under the NewSport-Corbis Contract................................................6

      D.     The Photographs Were Never Removed From the NewSport Collection ..............7

      E.     Getty Images Also Acquired the Right to Distribute Corbis Assets Via
VCG .......................................................................................................................9

II.     PLAINTIFFS FAIL TO RAISE ANY TRIABLE ISSUES CONCERNING
GETTY IMAGES' EQUITABLE ESTOPPEL DEFENSE ................................................10

III.    NO REASONABLE JURY COULD FIND THAT GETTY IMAGES
VIOLATED SECTION 1202 .............................................................................................12

IV.    THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO WITHDRAW
WITHOUT PREJUDICE CLAIMS THEY CANNOT PROVE .......................................14

CONCLUSION.............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*313-315 W. 125th Street L.L.C. v. Arch Specialty Ins. Co.*,
   138 A.D.3d 601 (1st Dep't 2016) ..............................................................................3

*Baiting Hollow Properties LLC v. Knolls of Baiting Hollow LLC*,
   89 A.D.3d 776 (2d Dep't 2011) ..............................................................................3

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010)...................................................................................13

*Int'l Media Films, Inc. v. Lucas Entm't, Inc.*,
   703 F. Supp. 2d 456 (S.D.N.Y 2010)....................................................................15

*Keane Dealer Servs., Inc. v. Harts*,
   968 F. Supp. 944 (S.D.N.Y. 1997).........................................................................11

*Parnes v. Receivable Mgmt. Servs. LLC*,
   489 F. App'x 510 (2d Cir. 2012) ...........................................................................15

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009)....................................................................................3

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015)......................................................................4-5

*Stevens v. CoreLogic, Inc.*,
   893 F.3d 648 (9th Cir. 2018) .................................................................................14

*T St. Dev., L.L.C. v. Dejere & Dejere*,
   No. Civ.A. 05-524(GK), 2005 WL 3466651 (D.D.C. Dec. 19, 2005) .....................6

*White v. Dvorak*,
   78 Wash. App. 105 (1st Div. 1995) .........................................................................6

**Statutes**

Fla. Stat. §§ 607.1405(2)(a), (g) ....................................................................................6

Fla. Stat. § 607.1420(1)(a) .............................................................................................6

Fla. Stat. §§ 607.1421(4), (5)..........................................................................................6

**Other Authorities**

Fed. R. Civ. P. 41 .................................................................................................................15

Fed. R. Civ. P. 56 ...................................................................................................................1

Local Rule 56.1 .......................................................................................................................1

3 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 10.03[A]………..…………5

Defendant Getty Images (US), Inc. ("Getty Images") submits this reply memorandum of law in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

## PRELIMINARY STATEMENT

In its opening brief, Getty Images demonstrated that it is entitled to judgment as a matter of law on Plaintiffs' copyright infringement claims because Getty Images was authorized to offer the photographs at issue for licensing and, in any event, Plaintiffs should be equitably estopped from arguing otherwise because plaintiff Zuma Press, Inc. ("Zuma") caused the claimed infringement to occur.  Getty Images also showed that Plaintiffs' section 1202 claims fail as a matter of law because any alleged alteration of copyright management information ("CMI") by Getty Images was not done intentionally in order to cause or conceal infringement.

Plaintiffs' opposition—echoing their deceptively vague complaint—indulges at length their propensity to misrepresent or suppress relevant facts.  They*, inter alia*, repeat allegations as fact even though discovery showed them to be false; ignore evidence that refutes their assertions, including testimony of their own witnesses; contradict themselves as to key facts; advance untenable readings of the pertinent agreements; and dispute facts that they have already admitted. This reply sets the record straight and confirms the absence of any genuine issues of material fact that would preclude summary judgment for Getty Images.

Neither the length of Plaintiffs' opposition brief nor the detailed story of how the photographs came to Getty Images should obscure the absence of any genuine issue of material fact as to Plaintiffs' causes of action or the relevant defenses.  The record, fairly viewed, leaves no doubt as to: (i) Getty Images' authorization to use the photographs at issue and its good faith in acquiring and exercising its rights in them; (ii) Zuma's previously undisclosed role in causing the claimed infringement; or (iii) the lack of any evidence of knowing or intentional alteration of

1

CMI by Getty Images for the purpose of inducing, enabling, or concealing infringement.  The stark contrast between Plaintiffs' portrayal of Getty Images' conduct and the record evidence underscores that this case is an effort to extract a windfall recovery from a blameless defendant for the consequences of Zuma's own irresponsible conduct.  It should now come to an end.

## ARGUMENT

## I.   PLAINTIFFS' CONTENTION THAT GETTY IMAGES DID NOT ACQUIRE RIGHTS TO THE NEWSPORT COLLECTION HAS NO MERIT

In its opening brief, Getty Images demonstrated that its use of the photographs at issue was authorized, and thus not infringing, by virtue of (i) Zuma's conveyance of licensing (and sublicensing) rights to NewSport and Corbis by submitting the photographs for distribution under the NewSport-Corbis Contract, as affirmed in the Redirection Agreement; (ii) Getty Images' acquisition of distribution rights to former Corbis assets from VCG; and (iii) the Contributor Agreement Getty Images entered into with NewSport (via its principal, Les Walker) for the NewSport collection.  *See* Dkt. 81 at 31-32; Dkt. 148 at 9.  None of Plaintiffs' challenges to Getty Images' licensing rights has merit.

### A.   The Contributor Agreement Covered the NewSport Collection

Plaintiffs' opposition hinges on the easily disproved claim that Getty Images never obtained rights to the NewSport collection but instead only obtained rights to the personal photographs of NewSport's President, Les Walker.  Dkt. 151 at 11-17.  The basis for this claim is that Walker completed Getty Images' form contributor agreement using his name rather than "NewSport."  This inadvertent error has no bearing on the proper construction of the agreement, which both parties understood to relate to the NewSport collection available on Corbis.

*First*, Plaintiffs, as neither parties nor (by their own lights) privies to or third-party beneficiaries of the Contributor Agreement, lack standing to enforce an interpretation of the

agreement contrary to the parties' own interpretation.  *See* Dkt. 148 at 19-20; *Premium Mortg.*
*Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by
New York law lacks standing to enforce the agreement in the absence of terms that 'clearly
evidence[] an intent to permit enforcement by the third party' in question.") (citation omitted).

*Second*, even if Plaintiffs had standing to advocate their preferred conception of the
licensor, Walker's insertion of his own name instead of "NewSport" was at most an inadvertent
error of the type that courts routinely excuse when it contravenes the parties' understanding of
their agreement.  *See, e.g.*, *313-315 W. 125th Street L.L.C. v. Arch Specialty Ins. Co.*, 138
A.D.3d 601 (1st Dep't 2016) (reforming to correct for mistaken insertion of wrong entity as
"owner" in form agreement); *Baiting Hollow Props. LLC v. Knolls of Baiting Hollow LLC*, 89
A.D.3d 776 (2d Dep't 2011) (holding that trial court erred in denying motion seeking
reformation to correct scrivener's error where it was established that incorrect denomination of
grantor of rights was a mistake).  As the *313-315 W. 125th Street* court noted, moreover, parol
evidence "may be used . . . and reformation is an appropriate remedy where the wrong party was
named in the contract."  138 A.D.3d at 602.  Thus, Plaintiffs' reliance on the Contributor
Agreement's merger clause and the parol evidence rule, *see* Dkt. 151 at 19, is misplaced.

The principle that what the record shows was an inadvertent error should not be enforced
against the will and understanding of the parties requires rejection of Plaintiffs' insistence on a
blindered reading of the agreement as "nothing more than a contract between Getty . . . and an
individual named Les Walker." Dkt. 151 at 20.[1]  Plaintiffs concede that Walker "intended to bind
NewSport to the Getty-Walker Agreement," *id.* at 18, 20, and that Getty Images had no interest

---

[1] Getty Images does not "seek[] to re-write the contract so as to bind a third-party, NewSport,
which was neither a contracting party nor signatory." Dkt. 151 at 16.  Getty Images merely asks
the Court to construe the agreement as it was construed by the parties: as a license for the
NewSport collection previously available through Corbis.

in licensing Walker's personal collection. *Id.* at 7; *see also* Dkt. 91 (Lindquist Decl.) ¶¶ 9-10 (testifying to same); Dkt. 148 at 12.[2]  These concessions are corroborated by Walker's testimony that the agreement covered the NewSport collection, *see* Dkt. 96 (Walker Decl.) ¶¶ 37-41, as well as by contemporaneous evidence such as Walker following up with Getty Images to ensure the "Newsport (sic) photo agency content" from Corbis transferred over to Getty Images.  Dkt. 111-38 (Bloom Decl. Ex. LL) at GETT00047204; Dkt. 111-5 (Walker Deposition (Bloom Decl. Ex. E)) 48:11-49:4; Dkt. 81 at 19.

*Third*, the Contributor Agreement conveyed rights to "all Content that you have previously submitted and, in the future, will submit, that is accepted for distribution by Getty Images." Dkt. 111-20 (Bloom Decl. Ex. T) at GETT00051389.  Because both parties understood that the Contributor Agreement related to the NewSport collection, *the NewSport collection is the content that was submitted to and ingested by Getty Images under that contract*.  In other words, the migration of the NewSport collection comported with and was covered by the plain language of the Contributor Agreement.

Plaintiffs' argument that Getty Images did not have a valid written agreement authorizing the migration of the NewSport collection, *see* Dkt. 151 at 11-16, is, in any event, a red herring. Getty Images' license defense does not depend on proof of an exclusive license, as Plaintiffs' suggest, *see* Dkt. 151 at 10; a nonexclusive license is an equally valid defense to copyright infringement.  *See, e.g.*, *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y.

---

[2] The assertion that "Getty's own employees admit that the Getty-Walker Agreement was intended to only cover photographs from Les Walker's individual archive," Dkt. 151 at 16, is not true.  The testimony of Getty Images' Chris Eisenberg that the "Credit Les Walker/contributor" caption information represented "the Getty contract that image is linked to," Dkt. 152-6 (Eisenberg Deposition) 159:15-160:9, was on its face simply an explanation of how the credit information was compiled; it did not constitute, and cannot be construed as, a representation by Eisenberg of what content the agreement was intended to cover.

2015).  Thus, even if the Court were to find that Getty Images did *not* have a written agreement with NewSport, it would mean only that Getty Images acquired a nonexclusive license to the NewSport collection, which Plaintiffs acknowledge (correctly) can be granted orally or implied from conduct.  *See* Dkt. 151 at 10; *see generally* 3 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 10.03[A].

     **B.**    **Les Walker Had the Authority to License the NewSport Collection**

     Plaintiffs also try to undermine the Contributor Agreement by claiming that in April 2016 Walker was no longer an authorized agent of NewSport.  *See* Dkt. 151 at 17-18.  They cite no evidence for this assertion, and it is contradicted by Plaintiffs' admission that Walker was the President of NewSport until mid-2016, *see* Dkt. 153 ¶ 25, and by Walker's testimony that he was invited to sign the NewSport-Getty Images Contributor Agreement "in [his] capacity as President of NewSport."  Dkt. 96 (Walker Decl.) ¶ 37.  Plaintiffs further claim that NewSport did not "even exist[]" in 2016 because "an administrative dissolution of NewSport was filed on September 23, 2011."  Dkt. 151 at 11, 18 (citing Dkt. 152-7 (2d Liebowitz Decl. Ex. G)).  This is a strange argument, as Plaintiffs do not contend that there was any change in NewSport's administrative status at any point during the period from October 2011, when Zuma began submitting photographs to Corbis under NewSport's contract, to the present.  On November 3, 2011, moreover, Zuma signed the Redirection Agreement affirming that NewSport had "the authority to grant all rights and licenses under the Contract," Dkt. 111-25 (Bloom Decl. Ex. Y), and Plaintiffs benefitted financially from that representation.  Plaintiffs should be estopped from claiming the opposite now that they are suing the successor to NewSport's and Corbis' licensing rights in the photographs.  *See* Dkt. 81 at 32-33 (stating equitable estoppel standard).

     Furthermore, an administrative dissolution does not mean that the entity's contracts are unenforceable.  Under Florida's Business Corporations Act, missing a deadline to file an annual

report authorizes the Florida Department of State to commence a proceeding to "administratively dissolve" the corporation.  Fla. Stat. § 607.1420(1)(a).  However, such dissolution "does not . . . [t]ransfer title to the corporation's property" or "[t]erminate the authority of the registered agent of the corporation."  *Id*. at §§ 607.1405(2)(a), (g); *see also id.* at § 607.1421(5).  Moreover, the subsequent entry into contracts unrelated to the winding up of the business or liquidation of assets "does not invalidate the [] contract[s]."  *See, e.g., T St. Dev., L.L.C. v. Dejere & Dejere*, No. Civ.A. 05-524(GK), 2005 WL 3466651, at *4-5 (D.D.C. Dec. 19, 2005) (applying presumption that all parties to contract intend to be bound against counterparty to contract with non-existent corporation); *White v. Dvorak*, 78 Wash. App. 105, 114-15 (1st Div. 1995) ("when a third party enters into a contract with a person purporting to act as a corporation, the third party is bound").  For present purposes, the administrative dissolution simply means that Walker may be "personally liable for the debts, obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution."  Fla. Stat. § 607.1421(4).  In short, under Florida law, NewSport retained its interests in the photographs at issue, and, as NewSport's registered agent, Walker retained his authority to contract on its behalf with respect to those photographs.

### C.   Zuma Conveyed Rights to NewSport and Corbis by Submitting Photographs Under the NewSport-Corbis Contract

Plaintiffs fare no better with their attempt to walk away from the express language of the Redirection Agreement (Dkt. 111-25 (Bloom Decl. Ex. Y)) and from the legal consequences of Zuma's submission of photographs for distribution under the NewSport-Corbis Contract.  *See* Dkt. 151 at 13-24.  They contend that Getty Images has failed to show "how a redirection of royalty payments amounts to a grant of rights" and that the Redirection Agreement "does not grant Corbis any substantive rights to *any* photographs," Dkt. 151 at 23 (emphasis in original),

but the Redirection Agreement contains the written representation that with respect to "all images produced under the [NewSport] Contract" NewSport "has the authority to grant all rights and licenses under the Contract." Dkt. 111-25 (Bloom Decl. Ex. Y).  Plaintiffs also ignore the fact that the NewSport-Corbis Contract contains not only a grant of rights to all photographs submitted thereunder but also the rights to assign the contract and to sublicense any of the rights to affiliates, partners, or subagents.  Dkt. 111-17 (Bloom Decl. Ex. Q) at COR 00018; *see also* Dkt. 111-6 (Bloom Decl. Ex. F) §§ 2, 13.2.  Zuma's grant of rights to NewSport and, in turn, to Corbis when it submitted photographs under the NewSport-Corbis Contract was the *quid pro quo* for Zuma's ability to earn the higher royalty rate paid by Corbis to NewSport and to receive royalty payments directly.

As for Plaintiffs' claim that they "have not conceded that all of the photographs at issue were transmitted to Corbis under the Image Representation Agreement using a NewSport FTP Feed," Dkt. 151 at 24, they made this very concession three times elsewhere in their papers.  *See* Dkt. 151 at 6 (admitting that "Zuma uploaded the photographs that are the subjects of this litigation via Newsport path (sic) to Corbis' file-transfer protocol ('FTP') for distribution under the NewSport-Corbis agreement"); Dkt. 130 at 4-5 (same); Dkt. 153 ¶ 35.  It is also confirmed by the record evidence.  *See, e.g.*, Dkt. 87 (Eisenberg Decl.) ¶ 12 (noting that all photographs at issue were linked to the Corbis contract number for NewSport); *id.* ¶ 15.

### D.    The Photographs Were Never Removed From the NewSport Collection

Plaintiffs next dispute Getty Images' showing that the "grant of rights by Zuma to NewSport was never terminated."  Dkt. 151 at 24.  They claim that after Walker resigned from Zuma on January 9, 2013, Zuma "repeatedly notified Corbis *in writing* that the royalty redirection had been terminated," *id.* (emphasis in original), and they cite a series of emails as a result of which, they claim, "[p]ayments from Corbis to NewSport were no longer being

redirected to Zuma." *Id.* at 25.  But these communications did not even address, let alone

terminate, Corbis' or NewSport's rights in the photographs, and, notably, Zuma never asserted

claims against Corbis.  The cited emails concern the resumption of a Zuma feed for *new*

photograph submissions and the disposition of royalties on previously submitted photographs;

they do not purport to rescind the licensing rights granted to Corbis via NewSport with respect to

photographs that already had been submitted via the NewSport FTP path for distribution under

the NewSport-Corbis Contract.

     As to Zuma's effort to persuade Corbis to remove those photographs from the NewSport

collection, the record is clear:  (i) Corbis insisted on receiving written consent *from NewSport*—

conceded by Zuma to be the authorized rights holder under the Redirection Agreement—to

remove the photographs from the NewSport collection, consistent with the provision in the

NewSport-Corbis Contract that termination could be effectuated "by either party [i.e., Corbis or

NewSport] by written notice" (Dkt. 111- 17 (Bloom Decl. Ex. Q) at COR 00019); Dkt. 111-6

(Bloom Decl. Ex. F) at COR 00037; Dkt. 151 at 29 (Table #1 entry 14 (Greenberg email stating

"I cannot move any images that carry the NewSport contract number, which were submitted

through the NewSport FTP without written consent from NewSport.")); (ii) no such written

request was ever received from NewSport (Dkt. 111-1 (Greenberg Deposition (Bloom Decl. Ex.

A)) 68:12-24 (NewSport "never provided the required consent")); and (iii) the photos were never

removed from the NewSport collection (*see* Dkt. 81 at 17; Dkt. 148 at 10-11).  That is why all of

the photographs at issue migrated from Corbis to Getty Images as part of the NewSport

collection.  *See* Dkt. 87 (Eisenberg Decl.) ¶¶ 12, 15.

     Plaintiffs' claim that "Zuma's images, which were initially fed to the NewSport channel

in 2011, were redirected back to Zuma in 2013," Dkt. 151 at 31, conflates the issue of which FTP

path Zuma used to supply photos to Corbis with the distinct issue of whether images associated

with Zuma were removed from the NewSport collection (the record shows that they were not).

Plaintiffs try to muddy the waters by pointing to Greenberg's January 18 email in which he

stated, in response to Zuma's request to "move the archive," that he had "already moved the first

portion," Dkt. 151 at 32, but they ignore Greenberg's admission that *he had not, in fact, moved*

*any part of the archive*.  He explained that he "did not have the written consent from NewSport"

but "wanted [Zuma] to think I was doing what they requested," so he made that statement to

Zuma even though it "[was] not literally correct." Dkt. 111-1 (Greenberg Deposition (Bloom

Decl. Ex. A)) 76:2-18.  Contrary to what Plaintiffs attempt to suggest, moreover, neither

Mc Kiernan nor Walker testified that the photos had been moved.  *See* Dkt. 81 at 17; Dkt. 111-5

(Walker Deposition (Bloom Decl. Ex. E)) 43:4-8 ("Q: Do you know what, if anything, Corbis

actually did to disassociate the [Zuma] photos from the NewSport collection? A:  No.")); Dkt.

111-3 (Mc Kiernan Deposition (Bloom Decl. Ex. C)) 111:1-111:23 (testifying he did not know if

Corbis separated the images associated with Zuma from the NewSport photos)).

> **E.**     **Getty Images Also Acquired the Right to Distribute Corbis Assets Via VCG**

Plaintiffs have no answer for the separate chain of authority that Getty Images acquired

via VCG.  Plaintiffs concede, as they must, that "[Getty Images] acquired the rights to license

Corbis assets" through its transaction with VCG.  Dkt. 151 at 6-7; *see also* Dkt. 153 ¶¶ 46-47.

Their contention that Getty Images "intentionally sought to avoid assuming any of Corbis'

contractual obligations with contributing photographers or agents," *see* Dkt. 151 at 20-22, is

irrelevant.  It is uncontested that VCG assumed Corbis' contracts and thus "stepped into the

shoes" of Corbis.  Because those contracts expressly authorized distribution through partners,

affiliates, and subagents,[3] VCG was entitled to, and did, pass on licensing rights to Getty Images. *See* Dkt. 111-19 (Bloom Decl. Ex. S) § 2.1 (granting Getty Images a license to all VCG content, "including, without limitation, Corbis Content").  That VCG and Getty Images decided, as between them, that VCG would retain the liabilities under the contracts assigned to it by Corbis, *see id.* § 3.8, has no bearing on the validity of the license VCG granted to Getty Images to distribute the images.[4]

## II.   PLAINTIFFS FAIL TO RAISE ANY TRIABLE ISSUES CONCERNING GETTY IMAGES' EQUITABLE ESTOPPEL DEFENSE

Getty Images has explained that Plaintiffs should be equitably estopped by Zuma's conduct from claiming that Getty Images' use of the photographs was not authorized.  *See* Dkt. 81 at 32-35.  In response, Plaintiffs claim—illogically—that because Zuma purportedly did not know about the infringements until May 4, 2016, they cannot be estopped based on anything that occurred before that date.  Dkt. 151 at 35.  This misapprehends Getty Images' argument, which is that the claimed infringement *would not have occurred* but for Zuma's intentional intermingling of its photographs with the NewSport collection.  The relevant conduct by Zuma occurred *prior* to the claimed infringement; the date of its discovery is irrelevant.

If Plaintiffs' argument is that Zuma could not have caused infringement it did not know about, *see* Dkt. 151 at 36, they overlook the facts that (i) by virtue of the Corbis-VCG and VCG-Getty Images transactions, Getty Images stands in the shoes of Corbis, which Zuma authorized to

---

[3]  Plaintiffs' argument that VCG (post-assignment from Corbis) could not have sublicensed the photographs to Getty Images because the NewSport-Corbis Image Representation Agreements "do not expressly grant Corbis the right to sublicense content to other stock photography agencies such as Getty," Dkt. 151 at 33, is simply wrong:  The NewSport-Corbis Contract expressly authorized the use of subagents.  *See* Dkt. 111-17 (Bloom Decl. Ex. Q) at COR 00018.

[4]  Plaintiffs' emphasis on a protocol that contemplated termination of Corbis representative agreements by VCG, *see, e.g.*, Dkt. 151 at 21, is unavailing.  They offer no evidence of any such termination by VCG of the relevant agreements (and there was none).

license the photographs under the NewSport-Corbis contract, including through subagents; and (ii) Getty Images informed Zuma's CEO in January 2016 about Getty Images' acquisition of Corbis' licensing business.  *See* Dkt. 93 (Mailliet Decl.) ¶ 6.  As case law cited by Plaintiffs makes clear, the estoppel-causing conduct need not have involved direct contact between Zuma and Getty Images.  *See Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947-48 (S.D.N.Y. 1997) (plaintiff equitably estopped from bringing infringement action where plaintiff stood in shoes of party who knew of and did not stop defendant's use of software).

Nor, as *Keane* also illustrates, must estoppel arise from an affirmative misrepresentation, as Plaintiffs suggest incorrectly; silence or inaction can suffice.  *See* Dkt. 81 at 33 (citing *Keane* and other cases).  That should be true of Zuma's failure to undo its opportunistic intermingling of its assets with NewSport's on the Corbis system.  That failure eventually led to the migration of the photographs from Corbis to Getty Images with "nothing to indicate to [Getty Images] that [it was] unauthorized to use" them.  *Keane*, 968 F. Supp. at 948; *see also* Dkt. 148 at 14.

Plaintiffs are left to argue (erroneously) that Getty Images could not have been "ignorant of the true facts" of Zuma's conduct because it had a "contractual obligation to carefully vet Corbis' assets before taking steps to migrate any photograph onto Getty's site." Dkt. 151 at 36 (citing VCG-Getty Images contract).  In addition to the fact that, although manual review of every photo was impracticable, Getty Images unquestionably *did* take reasonable and appropriate steps to ensure that it had the necessary rights to migrate and publish the Corbis assets, *see* Dkt. 81 at 18-19; Dkt. 148 at 15, the VCG-Getty Images agreement contains no such obligation to vet; the cited paragraph merely refers to Getty Images having a "right to review."  Dkt. 111-19 (Bloom Decl. Ex. S) § 3.1.  Moreover, Plaintiffs fail to explain how Getty Images would have learned through additional vetting that Zuma had submitted photographs for distribution under

11

the NewSport-Corbis Contract and that it would attempt to recant its express license authorizations after years of acquiescing in Corbis' licensing of the photographs with metadata attribution to NewSport.

## III.   NO REASONABLE JURY COULD FIND THAT GETTY IMAGES VIOLATED SECTION 1202

As Plaintiffs acknowledge, their section 1202 claims require a showing that Getty Images altered CMI intentionally and knowing, or having reason to know, that it would induce, enable, facilitate, or conceal infringement.  *See* Dkt. 151 at 43-44.  In the face of a record that so clearly vindicates Getty Images' good-faith conduct in connection with the migration of the NewSport collection, *see* Dkt. 81 at 39-44, Plaintiffs' effort to make such a showing is woefully deficient.

*First*, Plaintiffs do not even present competent evidence of the CMI alterations of which they complain.  The comparisons Plaintiffs provide to illustrate the purported violations show certain photos as they were displayed on *Zuma's* website and as they appeared on Getty Images' website.  *See* Dkt. 151 at 13, 49-51.  These comparisons have no probative value because the undisputed record shows that: (i) Getty Images acquired the photographs (and their associated metadata) *from Corbis*, not from Zuma, and (ii) the metadata provided by Corbis was different from the metadata as it appears in the examples from Zuma's website, most notably in that NewSport—not Zuma—was credited by Corbis as the source of each photograph at issue.  *See* Dkt. 87 (Eisenberg Decl.) ¶ 12; Dkt. 111-52 (Bloom Decl. Ex. ZZ) (photo on Corbis with credit "© Zak Noyle/NewSport/Corbis").  There is no evidence that Getty Images ever even saw CMI as it appeared on Zuma's (password-protected) website.

*Second,* Plaintiffs are wrong that a reasonable jury could infer that Getty Images' automated system for adjusting metadata during the (authorized) migration of millions of images from Corbis "was designed and engineered by Getty to enable infringement . . . so as to create

the false impression that Getty had rights to license the Photographs (when it actually did not)." Dkt. 151 at 48.  It is well-settled that "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted),[5] and there are no facts from which a reasonable jury could draw the inference that Plaintiffs desire.  To the contrary, Jamin Kortegard, the Getty Images Manager of Software Engineering who designed the system, testified without contradiction that the "double byline" of which Plaintiffs complain was "not generated knowingly by Getty Images" and that he was "very surprised" to see it after this case was filed.  Dkt. 81 at 27 (quoting Dkt. 89 (Kortegard Decl.) ¶ 24); *see also* Dkt. 153 at 26 (admitting in response to paragraph 84 of Getty Images' Rule 56.1 Statement that Getty Images never saw metadata captions with references to Zuma prior to investigating Zuma's complaint).

As against the record evidence describing Getty Images' meticulous design and execution of the Corbis migration, *see* Dkt. 87 (Eisenberg Decl.) ¶¶ 4-9; Dkt. 89 (Kortegard Decl.) ¶¶ 5-13, and the fact that this case represents the only CMI dispute to arise from the entire migration, *see* Dkt. 89 (Kortegard Decl.) ¶ 13, the assertion that a reasonable juror could infer that the system was *designed to enable infringement* is frivolous.  Indeed, Plaintiffs effectively concede the lack of intent to infringe by ascribing the claimed infringement to a "fundamental misunderstanding" as to whether the photographs were part of the NewSport collection.  Dkt. 151 at 7.

*Third*, there is no merit in Plaintiffs' suggestion that a reasonable jury could infer an intent to infringe from Getty Images' asserted "monumental size, experience in the field and level of sophistication." Dkt. 151 at 48.  These general characteristics of Getty Images are no

---

[5] Plaintiffs' observation that courts are lenient in allowing scienter issues to survive *motions to dismiss*, *see* Dkt. 151 at 44, is unavailing.  More is required at this stage than the hope that a jury will simply disbelieve uncontroverted evidence concerning a party's intent.

substitute for evidence of intentional alteration of CMI done in order to cause infringement. *See Stevens v. CoreLogic, Inc.*, 893 F.3d 648, 654-55 (9th Cir. 2018) (defendant must "possess the mental state of knowing . . . that his actions 'will induce, enable, facilitate, or conceal' infringement"). Likewise, Plaintiffs' potshots at Getty Images, *see, e.g.,* Dkt. 151 at 7 (Getty Images "hurriedly executed contributor agreements," ignored "ample warnings," and "haphazardly ingested the assets") are not only a gross misrepresentation of the record but, in any event, sound in negligence, not intentional infringement. *See* Dkt. 81 at 43-44.[6]

*Finally*, Plaintiffs do not create a genuine issue of material fact as to Getty Images' intent by repeating their disproven allegation that Getty Images "continued to display the Photographs on Getty's website" after Zuma complained. Dkt. 151 at 57. This contradicts Plaintiffs' acknowledgment earlier in their brief that Getty Images "immediately remove[d] the Photographs from [its] website," Dkt. 151 at 37, and is false. *See* Dkt. 81 at 20-24.

## IV.   THE COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO WITHDRAW WITHOUT PREJUDICE CLAIMS THEY CANNOT PROVE

In its June 29, 2017 order, the Court stated: "If, after discovery, it turns out that Zuma does not have an exclusive agreement with respect to a particular photograph, Getty may move for summary judgment with respect to that photograph." Dkt. 33 at 7. Plaintiffs concede that they have failed to come forward with evidence of ownership for many thousands of the works in which they alleged that they held such rights in four different versions of the complaint. *See* Dkt. 151 at 58.[7] With discovery complete and Getty Images' motion for summary judgment now

---

[6] Statements made by Getty Images' employees concerning the anomalous credit line on the photographs while they were investigating Zuma's complaint (which included the false claim that NewSport was never authorized to distribute the photographs), *see* Dkt. 151 at 52, are not evidence that any CMI alterations were done intentionally. They were not. *See* Dkt. 81 at 25-27.

[7] Plaintiffs make no effort to establish ownership of 13,592 works, Dkt. 148 at 31, and fail to come forward with competent evidence as to thousands of others. *See id.* at 31-35.

fully briefed, the Court should dismiss claims arising out of these works with prejudice.  *See, e.g.*, *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, 703 F. Supp. 2d 456, 466 (S.D.N.Y 2010) (granting summary judgment based on failure to prove copyright ownership).

The Federal Rules of Civil Procedure do not permit Plaintiffs to simply withdraw claims without prejudice at this late stage of the proceeding, *see* Fed. R. Civ. P. 41, and the Court should reject Plaintiffs' attempt to do so.  Plaintiffs do not make any showing at all under the relevant factors for voluntary dismissal, let alone proffer a reasonable excuse for their evidentiary failures.  *See, e.g.*, *Parnes v. Receivable Mgmt. Servs. LLC*, 489 F. App'x 510 (2d Cir. 2012) (identifying five-factor test for voluntary dismissal under Rule 41 and affirming dismissal with prejudice).  There is no reason at this late stage of the case to deprive Getty Images of finality as to works for which Plaintiffs have long been on notice of their burden to prove ownership.

## CONCLUSION

For the foregoing reasons, and those set forth in Getty Images' motion papers, Getty Images' motion for summary judgment should be granted in its entirety with prejudice.

Dated:  New York, New York
       August 3, 2018

Respectfully submitted,

By:  /s/ Benjamin E. Marks
    Benjamin E. Marks
    Jonathan Bloom

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Tel:  (212) 310-8000
Fax:  (212) 310-8007

*Attorneys for Defendant Getty Images (US), Inc.*