UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

ZUMA PRESS, INC., ACTION SPORTS PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE MEDIA CO. LTD., MANNY FLORES, ANDREW DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ, CHARLES BAUS, DUNCAN WILLIAMS, ROBERT BACKMAN, JOHN MIDDLEBROOK, and ANTHONY BARHAM,

                                      Plaintiffs,

-against-

GETTY IMAGES (US), INC.,

                                      Defendant.

------------------------------------------------------------- X

**ORDER AND OPINION GRANTING SUMMARY JUDGMENT TO DEFENDANT**

16 Civ. 6110

17 Civ. 5832

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED 10/4/18

ALVIN K. HELLERSTEIN, U.S.D.J.:

This is an action by Zuma Press, Inc. ("Zuma"), nine individual photographers, and two photograph licensing agencies against defendant Getty Images (US), Inc. ("Getty") for copyright infringement under the Copyright Act, 17 U.S.C. § 501, and for violation of integrity of copyright management information under Section 1202 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, alleging that Getty offered for licensing on its website 47,048 images owned by, or exclusively licensed to, plaintiffs (the "Accused Images"), and intentionally altered the copyright attribution information embedded in these images. The parties cross-move for summary judgment, and defendant raises a defense of equitable estoppel, arguing that plaintiffs are equitably estopped from asserting their claims since they induced Getty's alleged unlawful actions. The undisputed facts show that Zuma, on behalf of itself and the other plaintiffs, caused Getty to confuse Zuma's images with images that Getty had been authorized to use. I grant summary judgment, and dismiss the complaint with prejudice.

## BACKGROUND

*Procedural History*

Zuma, a press agency representing photographers on exclusive and non-exclusive bases, initiated this action on August 1, 2016, filing a First Amended Complaint ("FAC") on December 16, 2016, alleging copyright infringement and other causes of action against Getty for copying the Accused Images and placing them on Getty's website. Following Getty's motion to dismiss the FAC, the Court on June 29, 2017 dismissed the contributory copyright infringement claims; the claims under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125; the false advertising claims under Section 349 of New York's General Business Law; and the New York common law claims for unfair competition. The Court maintained the copyright infringement claims as to images registered before August 1, 2016, the date the action was filed, *see* 17 U.S.C. § 411(a), and maintained also the claims under DMCA, 17 U.S.C. § 1202, for violation of the integrity of copyright information. Standing was premised on the allegations that Zuma had exclusive license agreements as to all of the Accused Images. None of the Accused Images had been registered before August 1, 2016.

On July 28, 2017, plaintiffs filed a Second Amended Complaint ("SAC") with a single cause of action under 17 U.S.C. § 1202 for violating the integrity of copyright information. Three days later, on August 1, 2017, plaintiffs filed a complaint in a new action, Docket Number 17 Civ. 5832, with the same parties and allegations, except adding a claim for copyright infringement as to images registered as of August 1, 2017 (instead of August 1, 2016). The Court consolidated the two cases under the original Docket Number 16 Civ. 6110, and subsequently administratively closed Dkt. No. 17 Civ. 5832. All images at issue in this litigation have been registered by August 1, 2017, the date of the Complaint in Dkt. 17 Civ. 5832.

*Facts*

There is no dispute that, in the weeks between April and May of 2016, Getty displayed and offered for commercial use thousands of images that Zuma once owned or had license to, crediting these images to "Les Walker," not to Zuma or the photographers Zuma represented. Upon Zuma's request to Getty on May 4, 2016, Getty removed the images and initiated an investigation as to the source of these questionable images, which earned in total less than $100 in revenue for Getty. Zuma has nobody to blame but itself for how Getty came to possess these images, though. Zuma comingled its images with the collection of Les Walker in 2011, and Getty later purchased the rights to Walker's collection. Getty did not know, and could not reasonably have been expected to know, that, in displaying Walker's collection, it was also displaying images originating from photographs Zuma represented.

The path of the Accused Images from Zuma to Getty is circuitous but identifiable, summarized by the following illustration.



The story begins in 2010, when Zuma entered into a "Representation Agreement" with an image-licensing company called Corbis, which granted Corbis the right to distribute Zuma's images in exchange for partial remittal of royalties received. Zuma submitted images to Corbis through its file transmission protocol ("FTP"), linking the images to Zuma's contract and rates, and Corbis remitted to Zuma at the negotiated rate of 40%. Corbis also entered into an agreement with

3

NewSport, a company like Zuma that possessed a portfolio of images. NewSport had a remittal rate of 50% under contract #9995.

At some point, and in order to receive higher royalty payments, Zuma decided to submit images through NewSport's FTP. Zuma hired Les Walker, the president of NewSport, as an independent contractor on September 26, 2011 and, to take advantage of NewSport's higher remittal rate, Zuma began feeding images through NewSport's FTP. To accomplish the partnership between Zuma and NewSport, Zuma and NewSport entered into a "Redirection Agreement" with Corbis, signed by Zuma and by NewSport (via Walker) on November 3-4, 2011, which provided that Corbis would remit royalty payments to Zuma for the images submitted via the NewSport FTP. The Agreement required that "NewSport reaffirms to Corbis that all images produced under the Contract shall be personally created by NewSport, or that NewSport has the authority to grant all rights and licenses under the Contract." Bloom Decl. Ex. Y. The "Contract" referred to here is the agreement between NewSport and Corbis, which also provided that NewSport represented that it was the owner or had appropriate rights in the images submitted under its contract, that Corbis was now the exclusive licensor of the images, and that Corbis could assign its rights in the images. Bloom Decl. Ex. F.[1] By this scheme and Redirection Agreement, Zuma thus mixed its images into a collection otherwise associated with Walker and NewSport.

Corbis kept records on each image submitted to it, or "metadata" about the source and rights associated with images, and this metadata identified the relevant photographer and agency. By comingling its images with NewSport, Zuma caused "NewSport" to now be labeled in the "Credit" line of the metadata that Corbis kept on its images. For example, in the following

---

[1] NewSport, a Florida Corporation, was administratively dissolved on September 23, 2011, before Walker began working for Zuma. Such a dissolution, however, does not invalidate the corporation's contracts. Fla. Sta. §§ 607.1405(2)(a), (g).

4

screenshot from Corbis' website, "NewSport" is found in the "Credit" line of an image submitted by Zuma to Corbis (specifically, "Zak Noyle/NewSport/Corbis"):



*See* Dkt. No. 111 Ex. ZZ.

Zuma is, however, referenced in the caption of the image. The "caption" refers to the free-text portion of the image (meaning, any text can be written in it), which typically includes a description of the image. Before submitting its images via NewSport's FTP, Zuma modified the free-text captions of its images to include the following representative parenthetical: "Credit Image" © [Photographer]/[Additional Agencies]/ZUMAPRESS.com." Thus, as seen in the example above, there is an added parenthetical in the caption following the description of the image stating: "Credit Image: © Zak Noyle/[]/ZUMAPRESS.COM."

Zuma ultimately stopped utilizing NewSport's FTP in April 2012, and Walker resigned from Zuma on January 9, 2013. Knowing that many of its images were still associated with the NewSport contract, Zuma requested that Walker speak with Corbis's Seth Greenberg to switch the images back to the Zuma account. *See, e.g.*, Dkt. No 111, Bloom Decl. Ex. EE (January 30, 2013 email request from Zuma's Ruaridh Stewart to Walker); Dkt. No. 146, Walker Decl., at

5

¶ 33 ("As part of the discussions concerning unwinding our prior arraignment, Stewart asked me several times to call Seth Greenberg ("Greenberg") at Corbis to instruct Corbis to switch the images fed by Zuma Press to Corbis under the NewSport contract out of the NewSport collection to the Zuma Press Account."). Walker, however, appears to have rebuffed Zuma's request, emailing Stewart back on January 31, 2013: "As for the images feed (sic) through my contract with Corbis, we will have to come to some agreement, as there was never one in place. If we can not (sic) come to an agreement Newsport will pay those photographers directly for sales through that contract (sic)." Ex. EE.

Apparently frustrated by Zuma's inability to gain Walker's consent, Zuma's CEO Scott McKiernan messaged Stewart on February 11, 2013, "[t]his has gone on too long! Need a copy of [Walker's] email to [S]eth by Wednesday." *See* Ex. EE. Later that day, Stewart again requested from Walker that Zuma "be cc'ed on an email to Seth Greenberg to have the Images switched back to the ZUMA account by Wednesday Feb 13th, this week," to which Walker responded with his refusal: "As for those images feed (sic) through NewSports account, NewSport will represent those images and payment will be made as any Newsport does with any of it[s] other associate agencies feeding that account." *See* Ex. DD. According to Walker, "Stewart and I also had some discussions about whether to transfer photographs that Zuma Press had transmitted to Corbis under the NewSport contract out of the NewSport collection. I did not think the terms Zuma Press was offering were reasonable, and we did not come to an agreement." Dkt. No. 146, at ¶ 29.

In a final attempt at retrieving images Zuma claims to have owned, McKiernan emailed Greenberg directly on February 14, 2013, "We no longer want [Walker's] personal sales going to ZUMA and I believe the account is no longer pointing to ZUMA's bank account. By same token, no ZUMA images should be under his personal account or payments for ZUMA sales should be going to his account as of Jan. 9, 2013." *See* Bloom Decl. Ex. GG. Greenberg,

6

however, maintained his inability to act until Walker approves: "While I understand that Les no longer works for ZUMA I cannot move any images that carry the NewSport contract number, which were submitted through the NewSport FTP, without written consent from NewSport. NewSport must request this change in writing for me to move the images." *Id. See also* Bloom Decl. Ex. A, Greenberg Depo., at pp. 65–76 (same).

No written consent was ever provided by Walker to Corbis. The Accused Images therefore remained as part of the NewSport collection. Aside from two emails from McKiernan to Greenberg on June 3 and June 11 of 2013, again requesting that its "50k+ worth of our images under Newsport" be taken "down asap," *see* Ex. HH; Ex. H, there is no evidence that Zuma spoke further with Walker or Corbis about this issue, or pursued any legal action against Corbis or Walker. There is conflicting evidence in the record as to whether Walker thought that the images had been removed from the NewSport collection. *Compare* Dkt. No. 146, at ¶¶ 34–35 (Walker declaring that he "discussed" removing the images with Greenberg, but that he did "not know if Corbis actually took steps to remove Zuma Press images from the NewSport archive"), *with* Dkt. No. 152-3 (Walker testifying that he thought the images were removed). Notwithstanding Walker's understanding, it is clear that Zuma's McKiernan knew that Greenberg required written consent and that no written consent was in fact provided.

Little seems to have happened with respect to the Accused Images from 2013 until 2016, when the Accused Images and the library that housed them were acquired by United Glory International Limited. In January of 2016, Corbis sold its image portfolio to Unity Glory, which in turn, through an affiliate, entered into an agreement with Getty, permitting Getty to distribute the portfolio in the United States.

While Getty had the right to succeed all of Corbis' contracts, Getty preferred to enter into agreements directly with the photographers and agencies who had contributed their photos to Corbis. Getty reviewed the Corbis database, and reached out directly to contributors to sign

7

agreements with them. After signing such an agreement, Getty would "migrate" the images, or transfer the images from the Corbis' database to Getty's database. The migration process included over 7 million images associated with Corbis contracts, and was largely automated, carried out by computer code scripts written by Corbis and Getty data engineers. The computer scripts categorized photos according to the relevant metadata associated with each photo. The data engineers at Getty who wrote the script testified that their script relied on the reasonable assumption that copyright management information did not appear in the free-text caption of the images.

After acquiring the rights to Corbis' database, Getty reached out to Les Walker, as the authorized representative of NewSport, and, on April 4, 2016, entered into a licensing agreement with Walker. *See* Bloom Decl. T (contributor agreement between Walker and Getty). "Les Walker," not "NewSport," is the stated party and signatory to the agreement, but the evidence shows, contrary to plaintiffs' insistence otherwise, that NewSport was the intended counterparty of the Walker-Getty agreement, and that Walker signed the agreement in his capacity as president of NewSport. In preparation for signing the agreement, emails between Getty and Walker consistently refer to the "NewSport" account, *see* Bloom Decl. Ex. LL, JJ, KK, and Walker testified that his intention was to act in his capacity as president of NewSport. *See e.g.*, Dkt. No. 146, Walker Declaration, at ¶ 38; Bloom Decl. Ex. E (Walker stating his intention to license the NewSport archive to Getty). Thus, following the Walker-Getty agreement, Getty believed that it had the right to distribute NewSport's collection.

Following the signing of this agreement, Getty proceeded to migrate the entire NewSport collection to Getty's database. Since the Accused Images claimed by Zuma were part of the NewSport collection, and since the metadata associated with the Accused Images indicated that NewSport was the licensing agency, Getty migrated the entire NewSport collection, including the Accused Images. The computer script did not look at the free-text portion of the Accused

8

Images (where Zuma was referenced), but to the metadata which identified "NewSport" as the source of the images. All parties agree that the Accused Images were migrated to Getty as part of the NewSport collection. *See e.g.*, Dkt. 151, Memo. in Opposition to Def.'s Motion for Summary Judgment, at 6; Dkt. No. 87, Eisenberg Decl., at ¶ 12. McKiernan also acknowledged that Zuma did not need permission from its contributors to submit their photographs to Corbis via the NewSport contract. Bloom Opp. Decl. A, at 76.

As part of this migration process, Getty also appended its own copyright management information to its images. Since "Les Walker" was the signatory of the contributor agreement, his name was identified in a parenthetical in the caption as the source of right—"Photo by Les Walker/Corbis via Getty Images." The following screenshot from Getty's website illustrates the point:



*See* Dkt. No. 152 Ex. N. The images, however, contained an anomaly. As evident in the above example, the caption had contradictory parentheticals one after the other—one an addition by

9

Getty, as described, and a second an artifact from Corbis' caption which included Zuma's added parenthetical. In some cases (as in the above example) the character "©" in Zuma's parenthetical was displayed as "??" as placeholder for a character not recognized by the computer script. Rather than hiding or removing references to Zuma, Getty in fact mistakenly included contradictory credits, not realizing that Zuma had previously inserted its name into the caption. Getty also appended watermarks and other copyright information appearing on the image when users viewed the images on Getty's website.

On May 4, 2016, shortly after the Walker-Getty agreement was signed and after the NewSport collection began to go live, Zuma discovered and notified Getty that many of Zuma's images were on Getty's website and were being offered for commercial license and use. The next day, Getty removed 26,000 images that had references to Zuma in the free-script captions, and initiated an investigation. Getty confirmed with Zuma on May 19 that all images referencing Zuma had been removed. The migration of Corbis photos was on a rolling basis, and on May 24, Getty discovered additional photos with references to Zuma associated with Corbis Contract #9995. Getty promptly removed them as well.

## DISCUSSION

### I. Zuma is Estopped from Arguing that Getty Engaged in Unauthorized Use or Modification of the Accused Images

The defense of equitable estoppel bars Zuma from suing Getty for unauthorized display or modification of the Accused Images on its website. "Whether applied to contract actions under New York law or copyright infringement actions under federal law, equitable estoppel requires proof that (1) plaintiff had knowledge of defendant's conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its

10

detriment." *DeCarlo v. Archie Comic Publications, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y.), *aff'd*, 11 F. App'x 26 (2d Cir. 2001).

Here, the undisputed evidence shows that Zuma comingled its photographs with the NewSport collection, knowing that "NewSport" would be labeled by Corbis as the "source" and licensor of the images. The documentary evidence shows that Zuma attempted to retrieve these images, but did not succeed because NewSport did not give its written consent. Unsuccessful at switching the images to its account, and knowing that its images were now inextricably mixed with the NewSport collection, Zuma made no further efforts to retrieve its images. Getty reasonably believed, because of Zuma's actions, that it had the rights to use and license all the photographs acquired from NewSport, including the photographs that Zuma had comingled with the NewSport photographs.

## II. Getty Lacked the Requisite Intent to Violate § 1202

The claims under § 1202 are barred by the defense of estoppel. *See supra.* The claims also fail since Getty lacked the requisite intent required to state a claim under § 1202. Section 1202(a) makes it unlawful "with the intent to induce, enable, facilitate, or conceal infringement" to provide false "copyright management information" or "distribute or import for distribution copyright management information that is false." *See* 17 U.S.C. § 1202(a). Section 1202(b) provides that no person shall "intentionally remove or alter any copyright information" knowing that "it will induce, enable, facilitate, or conceal an infringement of any right under this title." *See* 17 U.S.C. § 1202(b). The undisputed facts show that Getty had no knowledge that Zuma's images were comingled with the NewSport collection. Getty utilized an automated process to migrate the NewSport collection and, by that process, appended copyright management information referring to NewSport and Getty under the reasonable assumption that the images were owned by NewSport and licensed to Getty. There is no evidence that Getty intended to induce or facilitate infringement.

11

### III. Images at Issue in This Case

Of the 47,048 Accused Images, plaintiffs submitted evidence that 31,733 are the subject of valid copyright registrations. The 31,733 images comprise 19,556 owned by the nine individual plaintiffs; 4,045 represented by and subject to Zuma's exclusive relationship; 782 owned by plaintiff OSports; and 7,350 owned by Action Sports. *See* Dkt. No. 160, at 1 (summary by counsel for plaintiffs).

With respect to a portion of these images (8,259 out of 31,733), defendant challenges plaintiffs' standing to bring their claims. These challenges are moot in light of my granting summary judgment to defendant on the basis of the equitable estoppel defense.

### CONCLUSION

For the reasons stated above, I deny plaintiffs' motion and grant defendant's motion for summary judgment, dismissing the Second Amended Complaint in 16 Civ. 6110, Dkt. No. 36, and the Complaint in 17 Civ. 5832, Dkt. No. 1. The Clerk shall enter judgment for defendant, dismissing the two actions against it, with costs to be taxed by the Clerk. The Clerk shall terminate the motions (Dkt. Nos. 72, 78), and mark the case closed.

SO ORDERED.

Dated: October __, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge